Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile (671) 646-1223

Attorneys for Defendant LeoPalace Resort



**FILED**
DISTRICT COURT OF GUAM

AUG 2 2 2007

JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT
OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>vs.<br><br>LEO PALACE RESORT,<br><br>Defendant.<br><br>JENNIFER HOLBROOK, VIVIENE VILLANUEVA and ROSEMARIE TAIMANGLO,<br><br>Plaintiff-Intervenors,<br>vs.<br><br>MDI GUAM CORPORATION dba LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10,<br><br>Defendants. | CASE NO. 1:06-CV-00028<br><br>**REPLY TO THE EEOC'S MEMORANDUM IN OPPOSITION TO LEOPALACE'S:**<br><br>**(1) MOTION TO COMPEL TESTIMONY AND PRODUCTION OF DOCUMENTS, OR IN THE ALTERNATIVE, TO DISMISS EMOTIONAL DISTRESS CLAIMS;**<br><br>**(2) MOTION TO EXTEND DISCOVERY COMPLETION DEADLINE;**<br><br>**(3) MOTION FOR INDEPENDENT MEDICAL EXAMINATION.** |

### A. The Court Has the Power to Dismiss All Emotional Distress Claims.

LeoPalace acknowledges that an order compelling discovery is generally a prerequisite for dismissal for failure to cooperate with discovery. However, contrary to the EEOC's allegation, Plaintiff-Intervenors have in fact been uncooperative and obstructionist. Without notice to defendant LeoPalace, they revoked their HIPAA waivers and ordered their therapists to withhold



ORIGINAL

relevant information shortly before the depositions of the therapists. In its pending motion, LeoPalace has moved for an order compelling discovery or, in the alternative, dismissal of the emotional distress claims. As noted in LeoPalace's opening brief, a plaintiff must choose between cooperating with discovery into the medical conditions they have placed at issue or withdrawing the claims based on those conditions. *See* Hodge v. City of Long Beach, 2006 U.S. Dist. LEXIS 28955, *9-*10 (E.D.N.Y.). The law does not require idle or futile acts. *See* 20 GCA §15124; Taylor v. West Oregon Electric Cooperative, Inc., 2005 U.S. Dist. LEXIS 27825, *7 (D. Or.). If Plaintiff-Intervenors make it clear at the hearing on the motion to compel that they will continue to order their therapists to resist relevant discovery no matter what the Court orders, then dismissal is appropriate at this time.

    **B.**    **The Court Should Grant Leopalace's Motion to Extend the Discovery Completion Deadline to Allow Leopalace to (1) Obtain Plaintiff-Intervenors' Medical Records, and (2) Retain a Medical Expert**

        **1.**    **Leopalace Has Not Violated Rule 26(a) or (e) of the Federal Rules of Civil Procedure. Rule 37(c)(1) is Inapplicable.**

The EEOC's entire opposition to Leopalace's motion for additional time to retain medical expert is based on Rules 26(a) and 37(c) of the Federal Rules of Civil Procedure. Rule 26 requires the disclosure of known experts; Rule 37(c)(1) gives this Rule "teeth" by prohibiting non-disclosed experts from testifying at trial. But Leopalace has not violated Rule 26. Leopalace did not have an expert when it made its initial disclosures on December 14, 2006. Presumably, neither did the EEOC, which is why no such experts were listed in their December 11, 2006 disclosures. Roberts Dec., ¶ 1. Instead, the EEOC did not disclose any experts or deliver any expert reports until July 30,

2007, which was three (3) days before the 90 day pre-trial deadline for disclosing and delivering expert experts set forth in the federal rules. Id.

Nor does Leopalace have an expert today. Rule 37(c)(1) specifically states that when a party "fails to disclose information required by Rule 26(a) or 26(e)(1)", that party is not, under certain circumstances discussed below, "permitted to use as evidence at a trial any witness or information not so disclosed." As seen, it is only a violation of Rule 26 that can trigger exclusion under Rule 37(c)(1). Leopalace has not violated any provision of Rule 26, so no provision of Rule 37 applies to the pending motion.

The EEOC relies on the wrong cases and the wrong Federal Rules. In Lore v. City of Syracuse, 2005 U.S. Dist. LEXIS 30328, 4-5 (D.N.Y. 2005), the court held, citing 7 Moore's Federal Practice at S 37.60[1] (2000), that the "preclusion sanction may not come into play unless there first has been a violation of a disclosure obligation imposed by Rule 26(a) or 26(e)(1)." That is, "(e)xclusion under Rule 37(c)(1) is a form of a sanction, designed to encourage compliance with the disclosure requirements of the Rules and the Court" ... Rule 37(c)(1) prevents a party who fails to disclose that information without substantial justification from using that evidence at trial, unless the failure to disclose is harmless." In short, there "must be a violation of Fed.R.Civ.P. 26(a) or 26(e)(1) in order for there to be a preclusion sanction." Id. See also, Depew v. Shopko Stores, Inc., 2006 U.S. Dist. LEXIS 1918 (D. Idaho 2006) (sanctions under Rule 37(c)(1) apply only when a party "fails to disclose information required by . . . Rule 26(e)(1).") That has not happened here. Leopalace has not violated any part of Rule 26. The EEOC can ask for why that is.

The EEOC also appears to seize upon Leopalace's admittedly imprecise use of the word "rebuttal" in connection with the pending motion and the expert it seeks judicial authority to retain. The EEOC claims that Leopalace is not entitled to a "rebuttal" witness because there is nothing to rebut, in that the EEOC and Plaintiff-Intervenors did not disclose any medical expert in their Rule 26 disclosures. EEOC Opp. Memo., at p. 8:17-20. In its moving papers, however, Leopalace used the word "rebuttal" in its generic sense, not in its Rule 26 sense. In this litigation, Leopalace needs an expert to "contradict", i.e., "rebut", what the Therapists intend to testify about, namely that two of the three Plaintiff-Intervenors are suffering from "Post Traumatic Stress Disorder".[1]

In opposing Leopalace's motion for additional time to retain a medical expert, the EEOC also argues that the Therapists were only disclosed "as fact witnesses not expert witnesses." EEOC Opp. Memo., at p. 8:21. According to the EEOC, the Therapists are "expected to testify on their treatment and personal observations of Plaintiff-Intervenors and accordingly are fact witnesses." EEOC Opp. Memo., at p. 8:22-23. Surely the word "disingenuous" is among the law's most clichéd, but it fits here. This is because the Therapists will almost certainly try to render expert opinion testimony at trial. (For one thing, lay witnesses are not commonly permitted to testify in trial that they used psychotherapy to diagnose someone as suffering from "Post Traumatic Stress Disorder" ("PTSD"). The Advisory Committee Notes to the 1993 amendments to Rule 26 state that "[a] treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report" on the ground that she is not

---

[1] Merriam-Webster's online website defines "rebut" as including to "drive or beat back", to "repel", "to contradict or oppose by formal legal argument, plea, or countervailing proof", "to expose the falsity of", and to "refute".

"retained or specially employed to provide such testimony in the case." Accordingly, according to one court, a "treating physician may testify -- without triggering Rule 26 -- regarding diagnosis, treatment, causation, and prognosis so long as that testimony is 'related to the care and treatment of the patient.'" Lamere v. New York State Office for the Aging, 223 F.R.D. 85, 89 (N.D.N.Y. 2004). The following quote from the Lamere case illustrates the approach many courts take on this issue:

> (C)ourts that have considered this issue recognize that a treating physician often forms opinions and makes determinations during the various stages of the course of treatment. Santoro v. Signature Constr., Inc., 2002 U.S. Dist. LEXIS 17286, 2002 WL 31059293, at *4 (N.D.N.Y. Sept. 16, 2002). With this in mind, these courts have permitted a treating physician to testify to a host of opinions and determinations. Bujnicki v. Am. Paving & Excavating, Inc., 2004 U.S. Dist. LEXIS 8869, 2004 WL 107136, at *21 (Feb. 25, 2004) (treating physician can testify to everything learned during the course of treatment); Santoro v. Signature, 2002 U.S. Dist. LEXIS 17286, 2002 WL 31059292, at *4-5 (treating physicians have routinely been permitted to testify to determinations made and the opinions formed during the course of providing treatment, including cause of an injury and the severity); Zanowic v. Ashcroft, 2002 U.S. Dist. LEXIS 3857, 2002 WL 373229, at *3 (treating physician can express "an opinion as to the cause of any medical condition present in a patient, the diagnosis, the prognosis and the extent of the disability); Giladi v. Strauch, 2001 U.S. Dist. LEXIS 4645, 2001 WL 388052 (S.D.N.Y. Apr. 16, 2001) (a treating physician can testify as to opinions formed during the course of treatment and not with regard to Rule 26(a)(2)(B)); Greenfield v. Mem.'l Sloan Kettering Hosp., 2000 WL 351395, at *6 (S.D.N.Y. Apr. 5, 2000) (treating physician can testify to anything that comes within their professional care such as probable causes, past and present conditions and future treatment, and further, such testimony can include explanations of technical medical terms); McEachion v. Glans, 1999 WL 33579331, at *4 (treating physician can testify or be deposed on life expectancy and pain and suffering, if reflected in the medical records); Brundidge v. City of Buffalo, 79 F. Supp. 2d at 224-25 (treating physician can give

> an opinion based upon the knowledge acquired or developed during the course of treatment and can give an opinion as to the cause of injury); Quarantillo v. Consol. Rail Corp., 106 F.R.D. 435, 437 (W.D.N.Y. 1985) (the court directed a deposition with further instructions that the doctor was not precluded from providing testimony with respect to examination, diagnosis, findings, and opinions regarding the patient's back conditions).[2]

To sum this all up, at trial the Therapists are probably not going to limit their testimony to say that they "visited" with Plaintiff-Intervenors and that they seemed "upset". They will be asked to testify that they professionally consulted with the Plaintiff-Intervenors, professionally counseled them, and professionally diagnosed two of them as suffering from Post Traumatic Stress Disorder. This would be expert testimony. Leopalace is entitled to an expert, too, after it obtains Plaintiff-Intervenors' medical records.

Finally, the EEOC writes that Leopalace "could have timely retained and disclosed a medical expert pursuant to Rule 26(a)(2) and then supplemented the expert's report upon receipt of the therapy records." Leopalace asks: "retain a medical expert to say what?" Ms. Holbrook, Ms. Taimanglo, and Ms. Villanueva have thwarted all of Leopalace's efforts to obtain their medical records. Insofar as LeoPalace may seek an expert to contradict the opinions of Plaintiffs-Intervenors' treating physicians, LeoPalace and its expert would be "in the impossible situation of attempting to rebut something that it had not yet seen." 103 Investors I, L.P. v. Square D Co., 372 F. 3d 1213, 1216 (10th Cir. 2004). Counsel for Leopalace does not routinely assume that his

---

[2] Cf. Principi v. Survivair, Inc., 231 F.R.D. 685, 692 (D. Fla. 2005); United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (if not necessary to treatment, treating physicians may not opine as to the cause of a particular medical condition).

retained experts will say anything he pays them to say. The usual way to retain an expert is to obtain necessary records, turn the records to an expert, ask if the expert has an opinion, and if so, what that opinion is. If the opinion is favorable, the expert will be retained and disclosed as a testifying expert. If the opinion is unfavorable, the expert's name will never be turned over to the other side, because he is then merely a consulting expert, and disclosure is not required. *See* FRCP 26(a)(2)(A) ("a party shall disclose to other party the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence").

It would also be folly <u>disclose</u> an expert's identity and even a preliminary report before obtaining all records necessary for that expert to formulate an informed opinion. If the expert's opinion turned out to be unfavorable after all medical records had been received, and if an attorney thereafter decided not to call the expert as a witness, the information thus disclosed would presumably be retroactively non-discoverable. *See* FRCP 26(b)(4)(B); <u>Plymovent Corp. v. Air Technology Solutions, Inc.</u>, 2007 U.S. Dist. LEXIS 55860, *13-*15 (D.N.J.); <u>Moore U.S.A., Inc. v. The Standard Register Co.</u>, 206 F.R.D. 72, 75 (W.D.N.Y. 2001). Of course, by then it would do little good to close the barn door after the horses were out. A party's mere decision to withdraw the expert and the report after the additional records were received would be a red flag.

At their depositions, the Therapists testified that their interview notes and other medical records probably contain their specific diagnostic findings with respect to each Plaintiff-Intervenor. Perez-Iyechad Depo., pp. 33:21 – 38:25; Babauta Depo., pp. 20:6 – 21:17. They also admitted that psychotherapists cannot diagnose someone as having PTSD unless each and every one of the required diagnostic criteria is found to be present. Id. Finally, they readily admitted that their

sanitized "summaries" supplied to Leopalace did not contain any of this information. Id. All the summaries say is that two of the three Plaintiff-Intervenors have PTSD, without listing each required diagnostic criteria prerequisite to that determination. Without access to the Therapists' records, no medical expert could possibly form any professional opinion on whether the Therapists' diagnosis of PTSD for two of the three Plaintiff-Intervenors was accurate. And as shown above, Leopalace cannot even retain, let alone disclose an expert without these records.

The Yeti by Molly Ltd. case cited by the EEOC, 259 F.3d 1101, 1106-07 (9th Cir., 2001), does not apply to this case. There, one party sat on its own expert's report for two and half years, disclosing the expert report only 28 days prior to trial. In this case, Leopalace does not yet have an expert, precisely because Ms. Holbrook, Ms. Taimanglo and Ms. Villanueva unilaterally quashed Leopalace's ability to hire one. Additionally, Yeti by Molly Ltd., defendant had an expert report, by the EEOC, "defendants could have (disclosed the) preliminary report to be supplemented" after the final report was completed, "or they could have asked for an extension of the discovery deadline." Id. At 1106. Here, Leopalace has no preliminary reports to be modified, thanks to the Plaintiffs-Intervenors, and it has, in fact moved for an extension of the discovery deadline, filing the motion prior to the expiration of the August 6, 2007 discovery cut off deadline.

Unlike the facts in the Yeti by Molly case, the fact that Leopalace has not disclosed a medical expert does not derive from a desire to obfuscate. Rather, it derives from an inability to retain an expert. That inability derives solely from the Plaintiff-Intervenors' conduct. Yeti by Molly is inapplicable here.

//

### 2. Exclusion is Unwarranted Even if Rule 26 Was Violated.

#### (a). Leopalace's delay in retaining an expert is "substantially justified".

Assuming for the sake of argument that there had been a Rule 26 violation, which by definition there hasn't been, Rule 37(c)(1) itself provides relief to Leopalace under the undisputed facts of this case. It is only a party who refuses to disclose an expert or an expert report pursuant to Rule 26(a), 26(e)(1) or 26(e)(2) "without substantial justification" who is subject the exclusion sanction. See, Fed. R. Civ. P. 37(c)(1). See also, Campos v. Shasta Bevs., Inc., 2006 U.S. Dist. LEXIS 4935 (D. Kan. 2006) ("In ruling on a motion to exclude under Rule 37, "the Court first must determine whether 'substantial justification' for failing to make the required disclosures exists," citing Rule 37(c)(1)).

Leopalace's failure to retain an expert has not been "without substantial justification." Leopalace does not have an expert because Ms. Holbrook, Ms. Taimanglo and Ms. Villanueva sabotaged Leopalace's efforts to obtain their medical records by clandestinely revoking their March, 2007 HIPAA consents as soon as their therapists were subpoenaed July of 2007. Two of them did not even sign their revocations until <u>after</u> 10:00 a.m. on July 24, 2007, the time and date their therapists were ordered to produce their records. Ms. Holbrook, Ms. Taimanglo and Ms Villanueva then sealed their skullduggery by ordering their therapists to limit their deposition testimony to certain areas that had been pre-approved by Plaintiff-Intervenors.

"Substantial justification" was found in Bosch v. Title Max, Inc., 2004 U.S. Dist. LEXIS 30162 (D. Ala. 2004). There, a motion for class certification had been "hotly contested" by both

sides. The court found that Plaintiffs had a "reasonable basis for waiting until a ruling on their motion for class certification before filing a final expert disclosure." 2004 U.S. Dist. LEXIS 30162 at *14. Filing a final expert report in that case, under that case's circumstances, would have been "wasteful or possibly redundant," and the pending motion for conditional class certification would have "rendered any information included in an expert report uncertain at best." Id. "Hence, there was a reasonable justification for filing such an incomplete report." Id. Leopalace has a similar "reasonable basis." It needs Plaintiff-Intervenors' medical records before it can do much of anything at all.

      (b)    <u>Leopalace's failure to disclose an expert is "harmless."</u>

Under Rule 37(c)(1), the failure to disclose information required by Rule 26(a), 26(e)(1), or 26(e)(2) may preclude later use of that information unless the failure is "harmless." See, Rule 37(c)(1), remembering that Rule 37(c)(1) "is clearly aimed at deterring a party from holding on to information that should be disclosed in order to gain an unfair advantage." <u>Hess Fence & Supply Co. v. United States Fid. & Guar. Co.</u>, 2006 U.S. Dist. LEXIS 74369 at *14 (D. Pa. 2006). No one has made that claim here.

The EEOC has suffered no harm. When Leopalace obtains Plaintiff-Intervenors' medical records, it will promptly retain an expert. That expert will be required to prepare a report. Then, if the EEOC chooses, it can promptly take the expert's deposition. In <u>Gagnon v. Teledyne Princeton, Inc.</u>, 437 F.3d 188, 197 (1st Cir. 2006), the appellate court urged trial courts to look at the totality of the circumstances in connection with the "harmlessness" issue rather than the bare fact of a missed deadline. In doing so, trial courts should engage in "balancing of fairness, burden, and case

management needs" and a full "consideration of the issue." This is because "lack of prejudice is a specific caveat in Rule 37(c)(1), and preclusion is the death knell" of a party's case. Id.

Many courts look to the following factors in determining whether a failure to disclose is harmless: "(1) prejudice or surprise to party against whom evidence is offered; (2) ability of party to cure prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness involved in not complying with the disclosure rules." Hess Fence & Supply Co. v. United States Fid. & Guar. Co., supra; Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir. 1995) (citing Bronk v. Ineichen, 54 F.3d 425, 432 (7th Cir. 1995)). The Third Circuit has also considered the importance of the evidence to the proffering party's case. Astrazeneca AB v. Mutual Pharmaceutical Co., Inc., 278 F. Supp.2d 491, 504 (E.D.Pa. 2003). All of these factors weigh in favor of Leopalace.

### (c). Exclusion is too harsh a remedy under the circumstances of this case.

Exclusion is too harsh of a remedy under the circumstances present here, again assuming Rule 26 has been violated, which it has not been. "The 1993 Advisory Committee Notes (to Rule 37) make clear that 'unduly harsh penalties' can and should be avoided. Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations …". Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., 2002 U.S. Dist. LEXIS 17502 (D.N.Y. 2002).

When a party fails to comply with Rule 37(c)(1), "automatic preclusion for undisclosed evidence is still considered a drastic remedy and will apply only in situations where the failure to

disclose represents a flagrant bad faith and callous disregard for the rules." Bhagwant v. Kent Sch. Corp., 453 F. Supp. 2d 444, 448 (D. Conn. 2006). "Precluding relevant expert testimony under Rule 37(c) is a serious step, not undertaken where the other party is not severely disadvantaged by the inadequacy or delay in disclosure." Bosch v. Title Max, Inc., 2004 U.S. Dist. LEXIS 30162 (D. Ala. 2004). Leopalace is not guilty of "callous disregard for the rules." Plaintiff-Intervenors are. And no one has been "severely disadvantaged" in this case except Leopalace.

### (d).     **Exclusion is not the only remedy permitted by Rule 37(c)(1).**

Exclusion is not the only available remedy for a violation of Rule 26. Rule 37(c) (1) provides that "(i)n addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." Id. See, Miller v. Prairie Ctr. Muffler, Inc., 2004 U.S. Dist. LEXIS 24753 (D. Kan. 2004). There are plenty of remedies short of preclusion, assuming there has been a Rule 26 violation, which again there hasn't been.

### C.     **Leopalace's Motion for an Independent Medical Examination is Both Timely and Procedurally Sufficient.**

#### 1.     **The motion is timely.**

There is no time limit set by FRCP 35 itself for a motion for an independent examination. Furlong v. Circle Line Statue of Liberty Ferry, 902 F. Supp. 65, 70 (S.D.N.Y. 1995). In any event, Plaintiff-Intervenors should have turned over their medical records last February. If they had, there would never have been a timeliness issue in connection with the Rule 35 motion.

### 2. **The Motion is Procedurally Sufficient.**

Rule 35 of the Federal Rules of Civil Procedure states that "the order" for an independent medical examination "shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Rule 35 does not state that "the motion" for such an order must specify anything; it says "the order" must. The court can satisfy the requirements of Rule 35 in its order, should the motion be granted, as the matters listed in the Rule are within the Court's discretion. *See* Ziemba v. Armstrong, 2004 U.S. Dist. LEXIS 6590, *3 (D. Conn. 2004). As a practical matter, many of the details listed in Rule 35 can best be resolved by agreement of the parties after consultation, as opposed to, for example, having the movant arbitrarily specify a time in its motion when that time may be impractical for the party to be examined.

### D. **Conclusion.**

Plaintiff-Intervenors' conduct is scandalous, and the EEOC should be bound by it. The Court should grant Leopalace all the relief it requests.

Dated this 22nd day of August, 2007.

DOOLEY ROBERTS & FOWLER LLP

By _____
**TIM ROBERTS**
Attorneys for Defendants

F:\Documents\Thomas L Roberts (07.04)\M108\M108.330 EEOC\Pleadings\M108-330.Mtn to Compel-Reply Memo (EEOC opp)