Dooley Roberts & Fowler LLP
Suite 201, Orlean Pacific Plaza
865 South Marine Corps Drive
Tamuning, Guam 96913
Telephone (671) 646-1222
Facsimile (671) 646-1223

Attorneys for Defendant Leopalace Resort

**FILED**
DISTRICT COURT OF GUAM

AUG 2 2 2007 

JEANNE G. QUINATA
Clerk of Court

IN THE DISTRICT COURT
OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> vs. <br><br> LEO PALACE RESORT, <br><br> Defendant. <br><br>——————————————<br><br> JENNIFER HOLBROOK, VIVIENE VILLANUEVA and ROSEMARIE TAIMANGLO, <br><br> Plaintiff-Intervenors, <br> vs. <br><br> MDI GUAM CORPORATION dba LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10, <br><br> Defendants. | CASE NO. 1:06-CV-00028 <br><br><br><br><br><br><br><br><br> **REPLY TO PLAINTIFF-INTERVENORS' MEMORANDUM OPPOSITION TO:** <br><br> **(1) MOTION TO COMPEL TESTIMONY AND PRODUCTION OF DOCUMENTS, OR IN THE ALTERNATIVE, TO DISMISS EMOTIONAL DISTRESS CLAIMS;** <br><br> **(2) MOTION TO EXTEND DISCOVERY COMPLETION DEADLINE;** <br><br> **(3) MOTION FOR INDEPENDENT MEDICAL EXAMINATION.** |

### A.  Introduction.

For the first time in this lawsuit, Plaintiff-Intervenors' counsel has objected to the production of his clients' medical records. Until now, Plaintiff-Intervenors' counsel has never objected to producing these documents. Plaintiff-Intervenors' response to Leopalace's first Request for Production of Documents was served on March 16, 2007. No objection to producing the

**ORIGINAL**

medical records were interposed by Plaintiff-Intervenors' counsel. Declaration of Tim Roberts, ¶ 5, Exhibit 1. Instead, in response to the request for medical records, Plaintiff-Intervenors said that they were "still compiling other documents and will immediately provide those to Defendant upon receipt." Id. These "other documents" can only have referred to the medical re cords, since the "summaries" are addressed in the following paragraph. Roberts Dec., ¶ 5, Exhibit 1.

Had counsel for Leopalace known on March 16, 2007 that Plaintiff-Intervenors were going to object to the production of their medical records, an immediate motion to compel would have been filed. Roberts Dec., ¶ 5. Instead, Leopalace understood, at the time of Plaintiff-Intervenors' depositions in mid-March, based on their attorney's letter of March 5, 2007 to their Therapists enclosing their executed HIPAA waivers, that Plaintiff-Intervenors' attorney intended to obtain their medical records for Leopalace. Roberts Dec., ¶ 4, 5, 6. That continued to be the understanding of Leopalace's counsel when no objection or motion for a protective order was filed by Plaintiff-Intervenors' counsel (or by the EEOC's counsel) when subpoenas *duces tecum* were served on the Therapists in July of 2007. Roberts Dec., ¶ 6. When the time for producing the therapists' records via subpoenas *duces tecum* on July 24, 2007 came and went without any records, it came as a complete surprise to counsel for Leopalace. Id. It was not until the next day, July 25, 2007, counsel for Leopalace was informed for the first time - - by the Therapists, not by Plaintiff-Intervenors' counsel - - that Plaintiff-Intervenors had revoked their HIPPA waivers and were now refusing to turn over their medical records. Id.

Civil discovery is not supposed to be a shell game. At all appropriate stages of this litigation, Leopalace has acted promptly and diligently to obtain Plaintiff-Intervenors medical

records, so far without success, but through no fault of its own, it has been denied access to documents that are basic and essential to its defense in this case. The Court should grant Leopalace all of the leeway it requests.

### B. The Medical Records are Discoverable.

In their brief, Plaintiff-Intervenors focus primarily on the motion to compel. In its opening brief, Leopalace set forth the standard rule that once a plaintiff places her mental and emotional health at issue defendants are entitled to discovery and medical records for previous treatment of similar, pre-existing mental and emotional problems. *E.g.*, Potter v. West Side Transportation, Inc., 188 F.R.D. 362, 365 (D. Nev. 1999); EEOC v. Danka Indus., Inc., 1990 F. Supp. 1138, 1142-43 (E.D. Mo. 1997); Lowe v. Philadelphia Newspapers, Inc., 101 F.R.D. 296, 298 (E.D. Pa. 1983). Plaintiffs intervenors have responded by discussing distinguishable cases where discovery was not permitted.

Plaintiffs intervenors place primary reliance upon Jaffee v. Redmond, 518 U.S. 1 (1996). As noted above, Leopalace relies upon a body of case law holding that a plaintiff claiming damages for emotional distress waives the therapist-patient privilege as to similar pre-existing conditions, the existence of which might lessen damages recoverable from the defendant. The Jaffee case involved a completely different situation. In Jaffee, the *plaintiff* administrator of an estate sought the medical records of a *defendant* police officer who had received counseling after a fatal shooting. The plaintiff apparently wanted to go on a fishing expedition in the hopes that the defendant had made incriminating statements to the social worker. In Jaffee, unlike the current case, the party on the receiving end of discovery into her therapy had not placed her mental condition at issue. "The

Jaffee court did not specifically address the issue of whether a person can waive the psychotherapist-patient privilege by initiating a legal action in which she claims damages for emotional distress. LeFave v. Symbios, Inc., 2000 U.S. Dist. LEXIS 22278, *8 (D. Colo.). Even a precedent cited by Plaintiff-Intervenors themselves later in their opposition brief recognized that the psychotherapist-patient privilege upheld in Jaffee does not apply if the patient relies on her mental or emotional condition as an element of her claim. Fritsch v. City of Chula Vista, 196 F.R.D. 562, 569 (S.D. Cal. 1999). Thus the Jaffee decision has no relevance for the current motion.

Next, Plaintiff-Intervenors rely upon Kunstler v. City of New York, 2006 U.S. Dist. LEXIS 61747 (S.D.N.Y.). The Kunstler decision is actually extremely favorable to Leopalace. As Plaintiff-Intervenors note, the Kunstler court held, "If the plaintiff contends that he has suffered a serious psychological injury -- that is, the inducement or aggravation of a diagnosable dysfunction or equivalent injury -- he will typically be deemed to have waived the privilege." *Id.* at *27. As noted in Leopalace's opening memorandum, Plaintiff-Intervenors are not alleging "garden variety" emotional distress. They are seeking phenomenal damages for post-traumatic stress disorder, a seriously disabling psychological disorder.

The next case that Plaintiff-Intervenors cite to on substantive issues is Pierson v. Miller, 211 F. 3d 57 (3rd Cir. 2000). The Pierson case, like Jaffee, is plainly distinguishable because it involves a plaintiff seeking to compel discovery of a defendants' mental health history, not a defendant seeking discovery from a plaintiff who has voluntarily placed her own mental and emotional state at issue.

Plaintiff-Intervenors also cite <u>Fritsch v. City of Chula Vista</u>, 196 F.R.D. 562 (S.D. Cal. 1999). In <u>Fritsch</u>, a plaintiff seeking damages for alleged severe emotional distress in an employment discrimination case sought to prevent discovery of mental health medical records. The <u>Fritsch</u> court held as follows:

> In this case, Fritsch has elected to recover damages for severe emotional distress in connection with her statutory and tort claims. . . . Specifically, she claims $ 1,000,000 damage to her emotional health. . . . To recover such damages, Fritsch must prove that her employer's conduct proximately caused her specific injury. . . . Thus, her emotional health, near the time of the defendants' alleged misconduct, is an issue in the litigation. Fritsch elected to seek monetary relief from the defendants to compensate her for "emotional pain, suffering, loss of self esteem, and mental anguish"; consequently, Fritsch is relying on her emotional state to make her case. . . . Fritsch can testify to her emotions near the incident, and defendant is free to cross examine her about the depth of her emotional damage and other factors in her life at that time. But to insure a fair trial, particularly on the element of causation, the court concludes that defendants should have access to evidence that Fritsch's emotional state was caused by something else. Defendants must be free to test the truth of Fritsch's contention that she is emotionally upset because of the defendants' conduct. Once Fritsch has elected to seek such damages, she cannot fairly prevent discovery into evidence relating to the element of her claim.
>
> The court's decision is based primarily on its concern that the discovery process be fair to both parties, so that each side is able to present an effective and complete case to the jury. The rule adopted by this court does not operate to "balance" the patient's privacy interest against the defendant's need for the information. Rather, it recognizes that if the patient desires the jury to compensate her for damage to her emotional condition, then defendant is entitled to explore the circumstances caused that injury. Nor does the rule adopted by this court let the "usefulness" of the information control the "scope" of the privilege. The court recognizes that Fritsch has a privilege to keep confidential all of her conversations with her therapist; instead, the court holds that Fritsch waived that privilege by seeking compensatory damages for injuries to her emotional health. . . .
>
> [T]he plaintiff has the choice to keep his communications with his therapist private by controlling the particular relief sought in the litigation. For

> example, the employee may seek injunctive relief and back pay without seeking mental anguish damages. . . . [T]his may diminish the possibility that the jury will compensate the patient for the full harm inflicted by the wrongdoer. The choice, however, is the patient's to make. It may be a difficult choice for a plaintiff, but it does allow the patient to protect the communications with the therapist. Conversely, it fairly allows the employer to test the truth of the patient's claim that the employer caused her mental suffering in those instances when the patient attributes her emotional pain to her employer's conduct.

*Id.* at 568-69.

The final case upon which Plaintiff-Intervenors rely in order to prevent or limit discovery is Vasconcellos v. Cybex Int'l, Inc., 962 F. Supp. 701 (D. Md. 1997). While the Vasconcellos court did limit discovery somewhat on the particular facts of that case, it did so at least in part because the plaintiff had volunteered to undergo a psychiatric evaluation. *Id.* at 709. In the current case, Plaintiff-Intervenors have opposed an independent medical examination. Furthermore the limiting approach taken in Vasconcellos was rejected in Scott v. United Corp., 2006 U.S. Dist. LEXIS 37418, *8-*12, 47 V.I. 703, 708-11 (D.V.I.).

### C. Conclusion.

Plaintiff-Intervenors' conduct is without precedent. The Court should grant Leopalace all the relief it requests.

Dated this 22nd day of August, 2007.

DOOLEY ROBERTS & FOWLER LLP

By _____
**TIM ROBERTS**
Attorneys for Defendants