

# LEOPALACE
# RESORT
# EMPLOYEE
# HANDBOOK



EXHIBIT
4

# LEOPALACE RESORT
## NEW EMPLOYEE
## HANDBOOK

| | | Page |
|---|---|---|
| 1. | DISCLAIMER | 1 |
| 2. | MANAGEMENT RIGHTS | 1 |
| 3. | EMPLOYMENT-AT-WILL | 1 |
| 4. | IMAGE AND PERSONAL APPEARANCE | 1 |
| 5. | YOUR EMPLOYMENT STATUS | 2 |
| 6. | ATTENDANCE | 2 |
| 7. | STANDARD WORK WEEK AND OVERTIME | 2 |
| 8. | EMPLOYEE UNIFORMS/ LOCKERS | 2 |
| 9. | NAME-TAGGING OF UNIFORMS | 3 |
| 10. | TIME CARDS | 3 |
| 11. | TIMEKEEPING | 3 |
| 12. | BADGE | 4 |
| 13. | EMPLOYEE EVALUATION PERIOD | 4 |
| 14. | UNAUTHORIZED EMPLOYEE VISITORS IN THE WORKPLACE IS NOT ALLOWED | 4 |
| 15. | EMPLOYEE PARKING | 4 |
| 16. | DROP OFF/ PICK UP | 4 |
| 17. | VEHICLE DECAL/ TEMPORARY PASS | 5 |
| 18. | CHANGES IN PERSONAL INFORMATION | 5 |
| 19. | PERSONAL MAIL AND USE OF THE TELEPHONES | 5 |
| 20. | PACKAGE/ PROPERTY PASS PROCEDURES | 5-6 |
| 21. | RULES OF CONDUCT | 7-8 |
| 22. | SECURITY | 9 |
| 23. | RESTRICTED AREAS | 9 |
| 24. | CONFLICT OF INTEREST | 9-10 |
| 25. | ACCEPTANCE OF GIFTS | 10 |
| 26. | SEXUAL HARASSMENT | 11 |
| 27. | OUTSIDE EMPLOYMENT AND ACTIVITIES | 11 |
| 28. | EMPLOYMENT OF RELATIVES | 12 |
| 29. | ACCESS TO COMPANY FACILITIES/ EQUIPMENT | 12 |
| 30. | SOLICITATION AND DISTRIBUTION | 12 |
| 31. | UNIONS | 13 |
| 32. | POINTS TO REMEMBER ABOUT THE UNION AUTHORIZATION CARD | 13-14 |
| 33. | DISCIPLINARY PROCEDURES | 14 |
| 34. | LAYOFFS, RESIGNATIONS & TERMINATION | 15 |

## DISCLAIMER

Since business judgements and needs may change from time-to-time, the policies described herein are offered as guidelines reflecting current policies and are not intended to create a contact between you and MDI Guam Corporation. We reserve the right to change or delete any policy, practice or benefit (including benefits for which an employee is eligible but not yet entitled to be paid) at any time, with or without notice.

## MANAGEMENT RIGHTS

MDI Guam Corporation reserves all the normal and customary rights of management, such as the right to supervise and control all operations, direct all work, interpret, change or cancel all personnel policies with or without notice, and to hire, schedule, fire, layoff, transfer, promote, reward, discipline, or otherwise deal with our employees and select the manner, method, and means of operation. These rights are not limited or waived by any provision in this handbook, or in any other statements or documents.

## EMPLOYMENT-AT-WILL

We operate under the traditional employment theory that employees have no contractual obligation or right, expressed or implied, to remain in our employ. Both MDI Guam Corporation and you, the employee, can terminate the employment relationship with, or without cause. If you have any questions about the policy, please see the General Manager. No one except the General Manager of MDI Guam Corporation may enter into any agreement or make any agreements contrary to this policy.

It should be further understood that information provided with the intent of securing employment must be complete and accurate. Failure to disclose any information or providing false or misleading information could lead to immediate termination. Information reference checks could also be used to determine and employee's eligibility or qualifications for employment.

## IMAGE AND PERSONAL APPEARANCE

The image of our company and its employees is very important. We must all look neat and observe the highest standards in grooming, dress and hygiene. All employees required to wear uniform on duty must show up at the start of work wearing a clean, neat uniform with name tag and ID badge in place, and clean shoes. It is the responsibility of the employee to make sure that a clean set of uniform is ready for the following work day. If you work in an office and are not uniformed you are expected to dress neat and commensurate with the area you are assigned to work. No blue jeans and sandals allowed. This applies to front and back offices.

Male employees are to wear well-groomed hair cut with length at chin level or shorter. Female employees may wear hair in any length but must be neatly groomed and properly fixed.

Male employees are **NOT** to wear earrings or any other body jewelry while in the work place . Female employees are also, **NOT** allowed to wear body piercing jewelry other than earrings while in the work place.

1

LPR 00333

## YOUR EMPLOYMENT STATUS

Temporary Full-Time Employees - If you are regularly scheduled for 32 or more hours of work per week and if you have 1000 or more hours in the past 6 months, you are considered to be a full-time employee.

Temporary Part-Time Employee - If you work less than 32 hours per week, you are a part-time employee.

## ATTENDANCE

Your supervisor will assign your working hours. You are expected to be on the job, appropriately attired and ready for work, at the beginning of your scheduled shift. If you cannot come to work as scheduled, advise your supervisor at the earliest time possible in advance of the time you are scheduled to report to work if you are unable to contact your supervisor, notify the Human Resources Department. Please do not leave messages or communicate with your fellow employees.

## STANDARD WORK WEEK AND OVERTIME

Our standard work week begins at 12:00 am each Sunday and ends at 11:59 p.m. each Saturday. This standard work week sets the seven consecutive day period during which overtime pay is calculated. Overtime pay is paid to non-exempt employees for time worked in excess of 40 hours weekly. Overtime hours worked without specific approval of your supervisor will not be paid.

Since the badge is also a time card, it does not mean that its only purpose is for timekeeping for those who use the Kronos clock. The equally important use of the badge is to wear it for guests to identify the employees/workers from their fellow guests, for employees to recognize fellow employees and for security to distinguish employees from guests.

The Supervisor/Managers are responsible to check that their staff are wearing the badge and is properly worn. Anyone not wearing the employee badge will bot be permitted to work nor allowed to remain within the premises. As a reminder, hours not worked will not be paid.

## EMPLOYEE UNIFORMS/LOCKERS

Employees who are required to wear uniforms must be in uniform while on duty. Wearing of the uniforms, where required, is part of the job and therefore the employee is paid to wear the uniform in conjunction with the performance of the job.

It is the responsibility of the employee to report to work in complete uniform and make sure a clean set of uniform is ready for the following work day. The Supervisors/Managers must ensure that staff wear the regulation uniform and decent working attire for those who do not wear uniforms. If your uniform needs repair or replacement see your immediate Supervisor.

Employee lockers may be provided for you to change at work. Acceptance of a locker assignment also gives our consent for security personnel, accompanied by a management representative, to open and inspect your locker at regular intervals with or without notice.
Lockers should be kept in neat order and free of trash, debris, contraband, alcohol, and narcotics    (except prescription drugs). Company equipment, tools and other supplies should not be stored in individual employee lockers. Weapons of any type are strictly prohibited. Lockers are provided for your convenience. Please do not store valuables or leave your locker unsecured.

2

## NAME-TAGGING OF UNIFORMS

The uniforms get mixed up when turned in for laundry service resulting to employees getting the wrong uniform. Something like this is bound to happen due to various reasons.

Name-tagging the uniform is assigned as a responsibility of the employee. Be sewing a piece of white cloth with your name on it, to the garment will ensure that what you turned in for laundry will be returned to you. Use only indelible or permanent marker to print your name on the cloth. Please use durable piece of cloth that till not fray, which can withstand several washing or dry cleaning. Please check with Housekeeping for further instructions.

## TIME CARDS

Federal and Guam Laws require non-exempt employees to record daily hours worked. You must record only YOUR OWN TIME and may not record time for another employee. Alterations, changes and other tampering with the time cards is strictly prohibited. Please see your supervisor, or the Human Resources Office, if something needs to be corrected on your time record. Any discrepancies on the time cards that require adjustment of your pay must be brought to the attention of your supervisor and the Human Resources Department immediately.

## TIMEKEEPING

It is important that you know how to use the time clock for accurate timekeeping. You are to time in/out in accordance with the work schedule.

The time sheets are printed every Monday morning for review by the Department Supervisor or Manager to double check the entries and make sure that the entries are in conformance with the work schedule assigned and authorized. No one other than the Supervisor or the Manager is to review the time sheets, Anyone caught tampering with the time sheets is in violation of the rules of conduct.

Tardy (late) or time-cutting is determined at seven minutes. If you clocked in at seven minutes or more after the start of your shift, this is considered late. Likewise, if you clocked in at seven minutes or more before the end of your shift, this is considered time-cutting. Either way, it is the Manager's discretion to exempt, but if done repeatedly, it becomes an unacceptable practice and warrants a disciplinary action.

Remember, you are only going to be paid for hours authorized and worked. Early "in" punches and "late" off punches not authorized by the Supervisor or Manager will not be paid. If you had to punch out later than scheduled, please let your Supervisor know the justification before the time sheets are submitted for payroll processing.

Meal breaks are scheduled by each department Supervisor or Manager and is presently scheduled at 30 minutes or one-hour. You are to punch out and punch back in after your break.

Any issues/questions regarding work time must be discussed between the employee and his/her Department Supervisor or Manager.

3

## BADGE

With the exception of the Executive General Manager, all MDI employees and MDI contract workers must wear the badge at all times while on and off duty, as long as you're within the premises of LeoPalace Resort. It must be worn with the photo showing.

## EMPLOYEE EVALUATION PERIOD

The evaluation report shall be completed by the employee's immediate Supervisor/Manager (or the rater) and to be submitted to Human Resources Department with the recommendation of the Department Head or the individual who overseas the particular department and reviews/checks the daily performance of the employee being evaluated. Any recommendations for pay adjustment (increase or decrease), suitability for promotion, transfer, demotion, or dismissal may be included in this report.

## UNAUTHORIZED EMPLOYEE VISITORS IN THE WORKPLACE IS NOT ALLOWED

Please advise relatives or friends that unauthorized employee visitors are not allowed in the workplace. In case if urgent need to talk to the employee, the relative or friend must be directed to proceed to Human Resources Department and the employee shall be contacted by the HR office staff.

Security is authorized to stop or expel any unauthorized entry in the work area. If you do not want to follow company regulations, please discuss this with the HR Department Manager. Non-compliance to company directives is an unacceptable conduct and can lead to disciplinary action.

## EMPLOYEE PARKING

Several areas have been designated "Authorized Employee Parking". These are designated for your convenience and guest satisfaction. You should park ONLY in these areas. The stalls marked "G" are for guests only. If you park in guest parking areas or other reserved parking spaces, your vehicle may be towed away. Please secure your vehicle at all times. Employee parking is provided free of charge and MDI Guam Corporation is not responsible for damages or losses to any vehicle while parked in employee parking areas. Vandalism or other such occurrences should be reported to your insurance company.

## DROP OFF/PICK UP

The designated location for drop off and pick up is at the parking lot. Drop Off/ Pick Up at the Rotunda between the parking lot and the Clubhouse is not allowed. Parking at the Rotunda is not allowed even if the driver of the vehicle is present.

Parking and/or Drop Off/Pick Up Temporary Pass is required for all vehicles, please inquire at the Human Resources Department.

4

LPR 00336

## VEHICLE DECAL/TEMPORARY PASS

All vehicles that are being used by an employee whether they are being dropped off, picked up or driving themselves must have a temporary pass or a decal. A temporary pass is issued to all new employees until such time that their employment status has been changed to regular full-time status and provided that the vehicle is registered to the employee then a decal will be issued Either the temporary pass or the decal must be posted on the lower left of the vehicle's windshield.

## CHANGES IN PERSONAL INFORMATION

For administration and emergency purposes, it is vital that we maintain accurate and current personnel records. It is your responsibility to notify your Supervisor and Human Resources Department of any change in your residence address, phone number, marital status, or other necessary personal information.

## PERSONAL MAIL AND USE OF THE TELEPHONES

Our mail and telephone systems are designed to accommodate our business transactions and communications. Employees are asked to refrain from using company telephones for non-emergency personal calls and use of company address for personal mail. Please have your personal phone calls directed to your residence and personal mail forwarded to your own mailing address.

## PACKAGE/PROPERTY PASS PROCEDURES

To protect the company and employees from false accusations of pilferage or stealing, employees are to obtain a package/property pass for items to be taken outside of the permises of the resort originating from inside the various facilities of the resort from your Manager.

Definition of the following words as used in this text:

Package: Includes all sorts of bags, pouch box, container, etc. containing any form of substance with volume.

Property: Includes anything owned by LeoPalace Resort (the company), any product made by staff for the company business, retail items sold within and by the company and any other company linked material.

Premises: Includes the buildings and surrounding grounds that are within the limits or confines of the resort boundaries.

Item(s) that would require package/property pass but not limited to the following are:
- Any item given as a gift by company or co-worker.
- Item given by guests as gratuity.
- Purchases with receipts from company outlets where employees are authorized to purchase.
- Company property to be taken outside the resort premises for any reason (i.e., repair, transfer, for use outside resort premises, etc.)

The following cannot be taken out from the premises of the resort:
- Employee meals
- Company refuse/trash
- Kitchen food scraps and all left-overs including those from parties and banquets
- Company property without reason to remove from the premises

5

LPR 00337

Items that do not require a package/property pass:
- Any item that is obvious and beyond the doubt personal-owned by the employee

All items in the guests' rooms abandoned or accidentally forgotten by departed guests must all be turned in to the Housekeeping Manager for proper disposal action. Lost & Found Procedures is to be complied with, if necessary.

Since employees are privileged to make purchases from the restaurant and store outlets of the resort, the employees must be able to show proof of their purchase or receipt in order to obtain a package/property pass.

Procedure:
1. Request for Package/Property take-out authorization form from your department Supervisor/Manager.

2. The department Supervisor/Manager issues the package/property pass depending upon the validity of the request for pass. The pass will serve as an authorization to take-out the item(s).

3. A record book for pass issuance must be maintained by the Manager for security verification or follow-up action.

4. The Security Officer will randomly check employees for authorization to carry/transport package(s) out of the premises. If the employee cannot show a pass, the Security Officer is authorized by management to ask for the employee's ID badge so that accurate information can be taken and necessary reporting can be made. The package/property pass must be surrendered to the Security Officer.

Failure to comply with these procedures grounds for disciplinary action – warning or immediate termination depending upon the severity of the misconduct.



LEOPALACE
· RESORT · PACKAGE/PROPERTY PASS          Ref:PKGPASS.WK3

| NAME | POSITION TITLE |
| BADGE NO. | DEPARTMENT |

| MOI EMPLOYEE | CONTRACTOR EMPLOYEE | COMPANY NAME |

The above – named individual has requested permission and is hereby authorized to take out/ remove from resort premises the following items on the date specified below:                    DATE

****** SAMPLE ONLY ******

REASON:
FOR TEMPORARY REMOVAL OF PROPERTY FROM PREMISES          EXPECTED RETURN DATE
AUTHORIZING DEPARTMENT MANAGER
(PRINT NAME)          (SIGNATURE)          (DATE)

6

Case 1:06-cv-00028     Document 62-5     Filed 09/10/2007     Page 8 of 33

# RULES OF CONDUCT

We have regulations for acceptable conduct to ensure orderly business operations for the benefit and protection of the rights and safety of everyone. Certain rules are made to promote uniform understanding of what is considered both acceptable and unacceptable conduct.

Acceptable conduct is basically good conduct, good character and good judgement coupled with good sense. Although you are free to resign at any time, with or without cause, here are some examples of conduct which will lead to IMMEDIATE disciplinary action up to and including termination.

The list of rules is not exhaustive, it is just a guide:

1. Insubordination - Refusal to obey instructions, disregarding of any order or directive to performance work as assigned or required, or willful slowdown or neglect of duty. If your Supervisor asks you to do something, and you disagree, obey the instructions at the time (unless it endangers equipment or poses the potential for injury to employees or guests) and discuss it later when both you and your Supervisor are out of hearing of customers and other employees.

2. Interference with others in the performance in their job, horseplay or disorderly conduct.

3. Pilferage, theft or misappropriation of company property or the property of others. Any attempt to pilfer, steal or misappropriate any such property; any unauthorized use of MDI Guam Corporation equipment and supplies.

4. Unauthorized or unreported absence from work. Leaving work or leaving the premises during working hours without prior notice and permission. Unreported or unexcused absence for three consecutive work days shall be considered a quit without notice.

5. Excessive absentees (even when caused by excused and justifiable illness or injury), tardiness in reporting to work, or in returning to duty following meal periods.

6. Careless, negligence or mischief that results in loss, damage, waste or destruction of any property, or which creates unsafe or unsanitary conditions, failure to follow safety rules, or engage in any unsafe conduct.

7. Threatening, fighting or engaging in any act of physical aggression (as well as any attempt or threat to engage in a fight or to provoke a fight), either by words or by actions.

8. Sleeping on duty or during working hours, inattention to duty.

9. Dishonesty in any form, including falsification of any records or reports, clocking in or out for another employee, giving a false reason for sick leave, leave of absence, or time off from work, supplying false or misleading information during employment or as part of the application process.

10. Revealing confidential information regarding customers, employees, or the business of MDI Guam Corporation and discussing confidential matters with unauthorized personnel. This includes the use of dissemination of confidential information except where authorized.

11. Failure to report loss, damage, breakage or breakdown of business property, failing to report any job related injury, illness or accident, falsifying information or refusing to give testimony or to cooperate in the investigation of accidents, employee misconduct or grievance which are being conducted by or on behalf of MDI Guam Corporation.

7

LPR 00339

12. Drinking on the job, or reporting on the job or onto the premises any way affected by the consumption of alcohol, or working with the smell of alcoholic beverages on your breath.

13. Possession, distribution, sale, use or transporting on the job or onto the premises any controlled substance, drug or other mind altering substance, narcotic or drug paraphernalia, reporting for work in any way affected by the use of any drug, except those lawfully prescribed by a physician.

14. Possession of, or transporting onto our premises, any kind of weapon.

15. Discourtesy in any form or disrespect to guest or employees, use of vulgarity of failing to render the appropriate degree of service or courtesy to any customer.

16. Gambling or promoting gambling during working hours on our property at any time.

17. Loitering or unauthorized presence anywhere on our premises.

18. Smoking in prohibited areas.

19. Violating (or failing to enforce) our policy on solicitation and distribution. Reminder employees shall not distribute literature of any kind or solicit during working time or not. Employees shall not distribute literature of any kind in working areas in which guest are frequently in.

20. Non-employees are prohibited from soliciting employees or distributing literature on our premises. These rules apply to all locations and to distributions or solicitations for all purposes including miscellaneous raffle schemes, lottery tickets, magazine clubs, civic organizations, societies, lodges and the like.

21. Use of abusive, profane or obscene language directed at a customer, Supervisor or other members of management, similar conduct directed at fellow employees which causes or is intended to cause disruption of work or the peaceful atmosphere of MDI Guam Corporation.

22. Unauthorized possession, custody or use of any property that belongs to a guest, another employee, or MDI Guam Corporation, including any item (lost or otherwise) found on or present on our premises. All articles found on our premises MUST BE TURNED IN IMMEDIATELY to the Security Department.

23. Tampering with fire or safety equipment.

24. Abusing, defacing or destroying our equipment or property, or property of our customers or employees.

25. Altering any documentation including work or time records.

26. Failure to maintain accurate and proper accountability and controls of cash banks, excessive or continuous cash shortages/overages, or other irregularities are considered irresponsible, unacceptable or negligent.

27. Interfering with or hindering of work schedules. Failing to work on a shift scheduled; arranging to have someone work in your place without the permission of your Supervisor.

28. Failure to maintain proper standards of personal hygiene and grooming. Neat clean and safe clothing, including shoes must be worn.

8

LPR 00340

## SECURITY

To protect you, your fellow employees and our guests from personal injury or the loss or damage property, or false accusations of dishonest or unlawful conduct, we reserve the right to examine a person or object while on our property. As a condition of permit, on request we reserve the right to search:

* Any vehicle exiting the property.
* Any pocket, purse, briefcase, toolbox, lunch box or other containers brought on the premises.
* Any desk, file, locker or other stationery containers, whether locked or unlocked.

When we responsibly believe that an employee on our premises may be under the influence of drugs or alcohol (whether or not lawful), we reserve the right to relieve the employee from duty and to require the employee to satisfactorily complete an appropriate urine and blood test as determined by our physician.

All searches of an employee shall be conducted in private by a person of same sex and all urine and blood tests shall be performed at our expense. The results of any search, test shall be kept confidential and disclosed only to the persons performing the test or search and MDI Guam Corporation representatives responsible for the employee's supervision, security, employee safety and discipline, unless otherwise required by law.

We reserve the right to seize, either retain or destroy as appropriate, any property found on our premises which we determine to be stolen, illegal, or hazardous to the health and safety of our employees, customers and others.

## RESTRICTED AREAS

All employees should be at their designated area of work and are not to be hanging out in work areas not assigned.

In the garage (GOLF CART GARAGE) 24 hours a day, no one is allowed to rest/sleep or simply be taking a break. Definitely no smoking in the garage. Only the Manager and the Cart Attendants on duty and those who have business reasons to be there are allowed in the area. Since the garage is also a passage way to the back-of-house offices and employee lounge, it is to be used strictly for passing through.

The kitchen, especially inside where the stoves are, is off-limits to non-kitchen staff 24 hours a day. The telephone in the kitchen is for kitchen business and emergency call only. The kitchen night cleaners and maintenance personnel are authorized to be in the kitchen only when they are cleaning and doing maintenance work, respectively. The designated pick up area for employee meals, kitchen-prepared goods for Baiten and Golf Maintenance or anything coming from the kitchen is outside the kitchen counter facing the restaurant walls.

Immediate disciplinary action will be taken against any employee violating or breaking this regulation.

## CONFLICT OF INTEREST

We define "Conflict Of Interest" as a business activity or relationship with another company or person, that in our judgement, may result in questionable business ethics or a compromise in your loyalty to MDI Guam Corporation.

You, nor members of your immediate family, may serve as directors or officers of, or have a substantial investment in a business or personal relationship with a competitor, customer, supplier or employed by any organization which could create a divided loyalty.

9

LPR 00341

You, nor members of your immediate family, may solicit or accept from an outside concern that does business with, seeks to do business with, or competes with us, any compensation, gift or discount, which may cause embarrassment to, or jeopardize the interest of MDI Guam Corporation, interfere with its work schedules, or adversely affect our productivity or that of your co-workers.

These rules are not exhaustive. Check with your Supervisor for clarity of approval before you become involved in a situation that you may feel could be a conflict of interest.

## ACCEPTANCE OF GIFTS

Here is our policy regarding the giving and accepting of gifts and gratuities:

You and members of your immediate family may not give or accept any cash, gifts, special accommodations, favors or use of property or facilities to or from anyone with whom we do business.

Giving or accepting of anything of value to or by any of our suppliers, dealers, or customers is prohibited. This may violate certain criminal laws if it is done to influence you in the performance of your responsibility.

This policy applies to any employee who has or could be perceived as having potential for influencing business.

For example, it applies to the giving and acceptance of gifts or alcoholic beverages (and/or drugs or controlled substances) gift certificates, jewelry or money.

The policy does not preclude gifts of items of nominal value. These business gifts to you (or to members of your family) are limited to a total cost of $50.00 per year. Gifts bearing a logo or trademark and which are distributed generally and cost no more than $15.00, are not included in the $50.00 annual limitation.

This policy is not intended to eliminate participation in business-related functions and activities which occur in conjunction with seminars, exhibits, meetings and presentation which include lunches, dinners, and entertainment. Under the proper circumstances, these can be in MDI Guam Corporation's best interest, but these contracts are only permitted on an infrequent basis. Under no circumstances should you solicit invitations to these functions.

Functions that involve overnight stays or consecutive days (as examples: hunting, fishing, and golfing) can create obligations that are contrary to this policy. You must have **written approval before** attending any such functions.

If you are in doubt as to the possible property of gift of activity, it should be rejected as contrary to this policy. In making this judgement, the ultimate criteria must go beyond the questions whether the consideration of the unfavorable appearance or impressions might be placed on the action by a critical third party who has the advantage of hindsight.

NOTE: The existence of genuine friendship, even prior to employment, does not relieve you of the duty to conform with this policy at all times.

Any gift you receive that is a violation of this policy must be returned to the donor with an explanation of MDI Guam Corporation's policy, or donated to a charitable organization. Management is to be advised of such action in writing.

**This is a major operating policy of MDI Guam Corporation**. It should be clearly understood that violation of this policy may result in disciplinary action, including termination of employment. Similarly, a violation of this policy by a supplier or customer may result in termination of their relationship with others.

10

## SEXUAL HARASSMENT

We prohibit sexual harassment of any Employee by any Supervisor, co-workers, or customers. Sexual harassment is unlawful, bad or morale and counterproductive. It is also inconsistent with MDI Guam Corporation policies, practices and business philosophy. Sexual harassment can take many forms, including but not limited to:

1. Unwelcome sexual conduct, whether it be verbal or physical, that interfers with another person's work performance or creates an intimidating hostile environment (even for third parties not directly affected).

2. Personnel decisions (examples: promotion, raise, scheduling) made by a Supervisor' is based on the employee's submission to or rejection of sexual advances.

3. Submission to a sexual advance used as a condition of employment, whether expressed in explicit or implicit terms.

If you think you have been subjected to sexual harassment, or ANY form of discrimination, you should report it to your Supervisor or the Human Resources Department immediately. The Human Resources Office will conduct a full investigation into all of the surrounding circumstances Employees accused of sexual harassment, may be suspended during this investigation process. If the accusations can not be substantiated or unfounded, full wages and allowances will be paid for the period of suspension. This is a sensitive area of concern and care will be taken to protect the privacy and reputation of all concerned. To the best extent possible, we will attempt to keep confidential the identity of the employee reporting the incident involving discrimination or harassment. If the report appears to have merit, appropriate disciplinary action will be taken against the offender. Depending on the severity of the misconduct, and all the circumstances, the disciplinary action could vary from a warning to an immediate termination. The final decision rest with the General Manager or his/her designated representative.

## OUTSIDE EMPLOYMENT AND ACTIVITIES

We do not want to interfere with your outside activities, but we are entitled to have you put forth your best efforts in your job MDI Guam Corporation.

Outside employment already held at the time you were hired at MDI Guam Corporation must also be fully disclosed. Thereafter, before accepting outside employment, you must fully disclose your plans and obtain written permission from the Human Resources Department.

You may not continue to work at MDI Guam Corporation if you hold outside employment with any organization that is in direct competition with MDI Guam Corporation, unless you have written permission from the General Manager.

Outside activities that reflect unfavorably upon MDI Guam Corporation can lead to termination. Please refer to our Conflict of Interest Policy for further information. Political activities, community service, or other similar endeavors should be conducted after normal work hours and can not interfere with completion of your assigned work tasks. Any potential conflicts with thtis policy should immediately be brought to the attention of the General Manager for resolutions. It must be clearly understood that the General Manager's decision in all such matter is final.

11

LPR 00343

## EMPLOYMENT OF RELATIVES

MDI Guam Corporation does not usually hire relatives of current employees because that sometimes creates problems. Relatives include spouse, children, parents, in-laws, aunts, uncles, cousins, brothers, sisters, and their spouses children. Exceptions may only be approved by the General Manager.

If employees become "relatives" as a result of marriage, they should not normally work within the same unit. We may require these employees to decide which employee will remain in the work unit. If the two employees are unable to decide which one will be transferred, we will decide which employee will be moved.

## ACCESS TO COMPANY FACILITIES/EQUIPMENT

Company facilities were designed and constructed for paying guests. All employees are prohibited from utilizing company facilities unless they get written permission from the General Manager. Employees are prohibited from loitering around company facilities when they are not scheduled to work or for other than business reasons. Likewise, company equipment, including vehicles, office equipment, software, supplies, etc. is strictly for use in conducting company business. Use of company equipment or supplies for personal reasons could lead to disciplinary action including termination.

## SOLICITATION AND DISTRIBUTION

To maintain and promote efficient operations, an attractive appearance, employee discipline, and security, we have established rules that govern solicitation, distribution of written material, and entry into our buildings and work areas.

Solicitation for any reason or cause and distribution of any literature are prohibited at all times in areas open to the public, except for our sales effort.

No employee shall distribute any material in work areas. Non-employees are never permitted to distribute literature or solicit our employees at any time on our property. This rule applies to any solicitation, including lotteries, magazine clubs, sales of goods, unions or social, civic or fraternal organizations. Everyone is expected to comply fully with these rules. Violations may result in disciplinary action, including dismissal, and appropriate legal action. If you have any questions about this rule, talk to your Supervisor or the Human Resources Department.

Any violation of this policy should be reported to your supervisor. There shall be no distribution of literature or solicitation of our employee by other employees during work hours when either the employees doing the solicitation or distributing the literature, or the employee being solicited or given literature, is one working time. This rule applies to any solicitation, including lotteries, magazine clubs, labor or social organizations, lodges and the like.

The sale (or solicitation for sale) of commercial items such as plasticware, cosmetics, clothing, household sundries, or other similar products is strictly prohibited. The violation of any of the above rules may lead to disciplinary action, including discharge. All violations should be reported immediately to your supervisor.

12

LPR 00344

## UNIONS

One of the primary benefits in working for MDI Guam Corporation is that each member of the team deals directly with management in all matters concerning employment and advancement. It is not necessary for any of our employees to belong to a union in order to work at this company.

MDI Guam Corporation is a non-union company and has no union contracts. We consider this a high compliment to us and our employees, indicating that our people do not feel the need for third party, union agent representation.

We believe that all MDI Guam Corporation employees have a deep, mutual interest in the success of our company and that all of us have a tremendous interest in working together to meet our competition and succeed in the never-ending competitive race. When a third party is placed between management and employees, the thirds party must justify its position as an agent. Therefore, that agent has a vested interest in doing everything it can to separate employees from their management, thereby destroying that mutual interest.

What a paradox it is that in so many companies unions have actually been able to convince employees that their supervisors are their natural enemies and that they can somehow advance their own interests better by joining in unions with employees who are working for competitors.

The open shop has made possible the kinds of working relationships and operating methods that produce solid values for our customers and strengthen the competitive position of our company. In this way, the open shop has given us the opportunity to provide our employees with understanding earnings, benefits, working conditions, and job security. It is therefore our positive intention to oppose unionism in MDI Guam Corporation by all proper means and in particular by consistent treatment of each employee.

## POINTS TO REMEMBER ABOUT THE UNION AUTHORIZATION CARD

It is quite possible that you may be approached by a union organizer or sympathizer and asked to sign an authorization card. You will most likely be told (incorrectly) that:

1. The cards are used only for purposes of getting an election, and;

2. They are confidential and the employer will never know who signed.

This is most likely what you will not be told:

1. The card may be a legal application for membership in a union and can bind the signer to dues, fees, and union discipline immediately.

2. Where it is an application for membership, the union can use signed cards to call a strike at any time after cards are signed (even before an election is held) and signers are committed to strike, no matter what their intentions were when they originally signed the cards.

3. The cards may e used to try to obtain certification of the union without an election if more than half the workers in the unit sign.

4. Cards are not confidential and the employer will know who signed. If the organizer needs to prove he/she has a majority or if management initiates legal challenge to the validity of cards, management has the right to examine the cards and even question the individual employees who signed.

13

LPR 00345

5.  Signing of a card may be a permanent commitment. It is very difficult, if not possible, to get the card back once it has been turned in to the union.

## DISCIPLINARY PROCEDURES

Adherence to standards for performance and behavior if necessary in order for us to operate in the most effective manner possible. The employment policies outlined in this handbook (though not all inclusive) are intended to provide minimum standards and guidelines that will insure the well disciplined and effective staff that is required to run a five-star property. To be effective, these rules must be enforced. The following discipline measures will be utilized to enforce company policies and procedures:

- Counseling;
- Misconduct;
- Warnings;
- Suspensions;
- Terminations.

It is important to note that any disciplinary action will be tailored to the situation. Each situation will be handled on a case by case basis. Severe infractions, gross misconduct, negligence or other similar offenses may result in immediate suspension or termination. Please note that any disciplinary action administered by supervisor or management personnel may be appealed (where reasonable cause exists) to the General Manager. All cases will be final when reviewed and approved by the General Manager or his designated representative.

14

## LAYOFFS

All businesses have their busy and slow periods. We do not foresee any serious slowdown in visitor arrivals that might make it necessary for us to cut back on operations and layoff employes. But, if you are temporarily laid off due to lack of work (a break in service less than 60 days constitutes a layoff), we will conduct the layoff under terms of the Worker Adjustment and Retraining Notification Act.

## RESIGNATIONS

We ask resigning employees to give us at least two (2) weeks written notice. Employees who quit or resign "without notice" will be paid on the next regular payday. Any outstanding employee charges must be settled in full prior to your last day of work. Terminating employees must also turn in all keys, cashier banks, I.D. cards or other MDI Guam Corporation property.

## TERMINATION

All terminations are approved by the General Manager. Termination of employment is a serious matter which normally, but not always, may occur after corrective discipline has failed.
Remember, you, or MDI Guam Corporation, may terminate the employment relationship at any time - - - with or without cause and with or without notice. If you want to discuss your termination, an appointment may be scheduled with the General Manager or his/ her Rep.

15





LEOPALACE
• RESORT •

On August 11, 2004 2:45 PM  COUNTRY CLUB
May Paulino HR Manager and Jennifer Holbrook ( Front Desk Clerk)

**May:**  Okay, Tell me what's going on with Cristina.

**Jennifer:**  Am sure that she was brief regarding sexual harassment when she
first worked. Yes, she knows her work.. Like all the girls. She knows
how to make the keys, etc.....

**May:**  Yes, All employees are brief regarding sexual harassment on the first
day of employment. Sexual harassment is a very sensitive matter, and
It has to be corrected immediately.

**Jennifer:**  She is weak in her customer service , too much on the telephone she
uses profanity in front of all of us. One day she spanked my butt and
I was so uncomfortable. I told her no one touches body. She has no
right to spanked my behind. She at one time pulled out her breast to
one of the bell staff, she flashes her kotex to Mr. Ijima she is very
disrespectful.

**May:**  Did Mr. Ijima say anything when she flashed her kotex in front of him?
she was told not to do that. You folks (Front Desk Staff) jokes with
her. You folks entertained her sexual jokes?.

**Jennifer:**  Yes, at times we laughed about it..

**May:**  That's the mistake.  If she makes sexual comments/ jokes and you
folks don't appreciate. You should tell her to stop immediately.
tell her to stop.. And then she knows that you really don't like
her comments/jokes. As long as you don't tell her she will continue
on to make those comments.

**Jennifer:**  Yes!

**May:**  How do you feel if she was to continue working at front desk. No
decision has been made yet. I just want to hear your from you.

**Jennifer:**  I am very uncomfortable... when I heard what she did the past day
I feel so disgusted with her. She is very disrespectfull She spends too
much time on the phone.



LPR-00029

<u>Christina</u>:

* as a worker she was briefed about sexual harassment matters during orientation week.

- She is ~~rude weak~~ weak in her customer service area.

- she continues to use profanity around us.

- she has inquired to wanting to spank my rear a day before in which I openly told her not my personal feelings about it.

- the next day I was working on things at the front computer station when she just did it. I felt disrespected & harassed. I yelled in teh to what had happened. She laughed & commented that she could not help herself; there was no remorse but laughter that prolonged the day.

  I told her she had no right to do anything as such. I threatened her that the next time or any other time I will report her in..

  I ~~felt~~ emphatized w/ Roce when she spoke to me yesterday I feel disgusted when she acts silly verbally w/ all of us.

  ⑥


EXHIBIT

LPR 00030

LAW OFFICES

# TEKER TORRES & TEKER, P.C.

Lawrence J. Teker
Phillip Torres
Samuel S. Teker

Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910-5018
Telephone: (671) 477-9891/4
Facsimile: (671) 472-2601
Email: L.teker@tttguamlawyers.com

Of Counsel:
Nagatomo Yamaoka

August 16, 2004

## VIA FACSIMILE NO.: 471-0035

Mae Paulino
*Human Resources Manager*
Leo Palace Resort
Menenggon Hills, Yona, Guam

Re:  *Rosemarie Taimanglo, Jennifer Holbrook and
Viviene Villanueva - Sexual Harassment Claims
Against Leo Palace Resort.*

Dear Ms. Paulino:

This letter is to advise you of the very serious charges and sexual harassment claims that Ms. Rosemarie Taimanglo, Ms. Jennifer Holbrook and Ms. Viviene Villanueva have against the Leo Palace Resort ("the Company"). My office represents Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. As you know, Ms. Taimanglo is your front desk supervisor and has been with the company for ten (10) years. Ms. Holbrook has been employed with the company for the past two and a half (2½) months and was a previous employee of the company. She is employed as a front desk clerk. Ms. Villanueva has been employed by the company for fourteen (14) months as a front desk clerk. Ms Taimanglo earns Eleven Dollars and Fifty Cents ($11.50) an hour, Ms. Holbrook earns Six Dollars and Fifty Cents ($6.50) an hour and Ms. Villanueva earns Six Dollars ($6.00) an hour.

Sexual harassment is a form of sexual discrimination in violation of Title VII of the Civil Rights Act of 1964. The United States Supreme Court has identified what types of conduct constitute sexual harassment and has ruled that employers have to show that they exercised reasonable care to prevent or promptly correct any sexually harassing behavior to avoid liability.

The Company employed Christine Camacho as a front desk clerk since May 2004. She worked alongside other front desk clerks including Ms. Holbrook and Ms. Villanueva. They all worked under the supervision of Ms. Taimanglo or Greg, the night supervisor. Over the past ten (10) weeks, Ms. Camacho has repeatedly conducted herself in a sexually offensive and unwelcomed manner when interacting with Ms. Taimanglo, Ms. Holbrook, Ms. Villanueva and other Company



EXHIBIT

1

employees. Your front desk employees, including Greg, the night manager and Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva all complained to Mae Paulino in Human Resources more than six (6) weeks ago. On or about July 1, 2004, they complained about Ms. Camacho's sexual harassment conduct and *nothing* was done about their complaints. Management personnel including, Mr. Hong, who is an assistant sales manager, Mr. Suzuki and Mr. Iijima were aware of Ms. Camacho's offensive behavior, but they did nothing to intervene or curtail Ms. Camacho's behavior or remove her from the hostile environment created by her continued employment.

On numerous occasions over the past ten (10) weeks, Ms. Camacho made unwelcomed, rude, sexually explicit comments and acted out in a sexual way towards Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. A brief summary are as follows:

(A)    Since Ms. Camacho was hired, she has consistently used vulgar language and sexual references in front of her co-workers and, on occasion, guests of the hotel. Obscene words are inappropriate in the workplace and she was repeatedly warned by Ms. Taimanglo and her co-workers to stop swearing in the workplace. Ms. Holbrook and Ms. Villanueva also told Ms. Camacho that her constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech.

(B) Two weeks ago, Ms. Camacho approached Ms. Holbrook and asked "Have you ever tried having oral sex during your period?, I have done it with Jessica (her girlfriend) and it doesn't taste so bad. Would you like me to try it on you?" Ms. Holbrook looked at her in disgust and told her to get away from her and to leave her alone. Notwithstanding the warnings, around the same period of time, Ms. Camacho approached Ms. Holbrook and stated "You make me wet!"

(C) On numerous occasions over the past (2) months, Ms. Camacho has made sexually explicit offensive jokes and has been told by Ms. Taimanglo and her co-workers to stop such behavior and that they find it offensive.

(D) In early June, Ms. Camacho grabbed Ms. Holbrook's arm and raised it up to her breast. Ms. Holbrook yanked her arm away and yelled at Ms. Camacho to stop.

(E) In June, while working at the front desk, Ms. Villanueva was grabbed from behind by Ms. Camacho who then proceeded to "sexually hump" Ms. Villanueva. That incident should have been captured by the security cameras. Despite Ms. Villanueva's loud objections, no one came to her assistance.

(F) On July 7, 2004, Ms. Camacho walked up to Ms. Holbrook from behind and slapped her on her buttocks in an extremely hard manner. Ms. Holbrook screamed and was very upset. The sound of the slap and Ms. Holbrook's loud scream caused Mr. Hong, who was in the office behind the front desk, to come out to see what had happened. Mr. Hong asked what happened but despite being told what happened he did nothing. After she slapped Ms. Holbrook, Ms. Camacho stated to Ms. Holbrook "Sorry, I can't help myself." The incident should have been seen by security and recorded on the surveillance cameras but no one responded to investigate the violent incident.

(G) On August 10, 2004, at approximately 6:30 a.m., Ms Camacho walked up behind Ms Taimanglo and slapped her hard on the buttocks. Ms. Taimanglo was extremely upset by what happened and yelled at Ms. Camacho. Ms. Taimanglo felt sick and scared because no one at the Company helped. It was the second time Ms. Taimanglo was slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Taimanglo and Ms. Camacho were exiting the van. That incident was witnessed by co-employees, including Joseph Iahizaki.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva brought their Complaints, on or about July 1, 2004, to Mae Paulino in Human Resources but no action was taken to separate Ms.

Camacho from her fellow co-workers or to deal with the employee's complaints. That was especially disheartening to Ms. Taimanglo who felt that the Company would not question her veracity and immediately take action on the complaints. Instead, Mr. Suzuki was consulted and he did not want to terminate or remove Ms. Camacho from the front desk. He said the company was "short of staff." Upset with the Company's response to their complaints but not wanting to jeopardize their job, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva simply tried to ignore Ms. Camacho and endure, but it has finally become too much. At no time did anybody from the Company inform Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva that their complaints would be taken care of nor were any written statements requested from the employees.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva often told Ms. Camacho that her actions and comments were offensive and unwelcomed and that she had to stop. My clients did not know how else to handle the situation since their complaints went unheeded despite management being witness to, or aware of Ms. Camacho's behavior. My clients tried to ignore Ms. Camacho's behavior but the hostile environment created by both Ms. Camacho's actions and the Company's non-action to the employees complaints created a stressful, fearful, tense and nearly unbearable work days behind the front desk. After the initial formal complaints, Ms. Camacho's illegal actions escalated when she physically assaulted Ms. Taimanglo and Ms. Holbrook by slapping them hard on their buttocks and when she physically assaulted Ms. Villanueva by grabbing her and simulating a sex act.

Last Tuesday, my clients again took these complaints to Human Resources. On Wednesday, August 11, 2004, Ms. Paulino summoned Ms. Camacho for a meeting and also summoned Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. Ms. Paulino disclosed to Ms. Camacho that Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva were the complaining parties were and what their complaints were. When they all went back to work together, the atmosphere at the front desk was hostile and more tense than ever. Ironically, the complaints of sexual battery of Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva are easily verified because there are security cameras that record the activities behind the front desk. Those cameras would verify all of the physical actions and acting out of Ms. Camacho. Ms. Camacho was later sent home for the day but was not terminated, suspended or written up. No solid action was taken by the Company that day against Ms. Camacho. Ms. Camacho was told to leave for the day but one (1) hour later, despite the order to leave, she was still on the premises.

The comments and behavior of Ms. Camacho are extraordinary for their illegality in the workplace as well as their offensive and obscene nature. Her behavior does not belong in the workplace and I can't think of a situation where they do belong. Ms. Camacho's demeaning comments directed at Ms. Holbrook and other company employees were not misplaced attempts at humor and cannot be defended by any analysis. Ms. Camacho's actions left Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva stressed, fearful, upset and confused about what to do.

*The law and the Leo Palace Resort's policies.* The Company's response to the numerous actions of Ms. Camacho have been fully deficient and do not even come close to complying with the law. I reviewed the Company's Employee Handbook and it clearly states the Sexual Harassment Policy of the Company. The Policy states that if someone thinks they have been subjected to Sexual Harassment they should report it to the Human Resources Department and "the Human Resources Department will conduct a full investigation into all of the surrounding circumstances..." The policy also states "This is a sensitive area of concern and care will be taken to protect the privacy and reputation of all concerned. To the best extent possible, we will attempt to keep confidential the identity of the employee reporting the incident involving discrimination or harassment. If the report appears to have merit, appropriate disciplinary action will be taken against the offender..." The final decision rests with the General Manager or his/her designated representative." The Company's sexual harassment policy certainly was not followed in this case. The Company failed to comply with Federal Law and provided no direction or relief for Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva to follow, instead throwing them back into the same hostile environment they knew.

The United States Supreme Court in 1998 clarified the law regarding sexual harassment claims in two cases, *Faragher v. City of Boca Raton*, 524 U.S. 775, and *Burlington Industries v. Ellerth*, 524 U.S. 742. The Supreme Court announced a three-step approach to be used in deciding liability in sexual harassment claims. First, if a supervisor's harassment results in a victim suffering a "tangible employer action," such as discharge, demotion or undesirable reassignment, the company is always liable for paying damages. Second, even if a victim has not suffered a job loss, the employer is strictly liable for its harassment, but can raise a defense as set forth in the third step of the analysis. Third, the company may head off liability or significant damages for a "hostile environment" harassment by proving its innocence. The employer must show that it took "reasonable care" to prevent and correct any "harassing behavior," that it responded promptly to any hints of trouble, and the plaintiff "unreasonably failed" to complain about abuse. The employer has the burden of proving both of the elements by preponderance of the evidence.

The Company failed to meet the requirements of the *Faragher* decision to avoid liability. The Company did not exercise reasonable care to prevent or correct the harassing conduct as required by *Faragher*. It was not until Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva complained again on August 10, 2004 that anything was done and then the Company's remedy was to send Ms. Camacho home for the day without any explanation to my clients of what was needed from them or what to expect next.

It is not my clients' present desire to take this matter to Court but if that happens there are many issues that the Company would be forced to deal with in a courtroom response to these claims. Where is the sexual harassment training? Why wasn't the Company's sexual harassment policy followed? Where is female sensitivity training? Where was the proper investigation and

Mae Paulino
August 16, 2004
Page 5

response? Why was Ms. Camacho hired? How many bites of the apple does Ms. Camacho get?
Why was her known behavior tolerated? Why is being "short of staff" considered a defense by the
Company.

The Company has clearly failed to comply with the Title VII standards as set out in
the *Faragher* and *Burlington Industries* cases. It also failed to comply with its own sexual
harassment policy. This may well be a very embarrassing situation for all and Ms. Taimanglo, Ms.
Holbrook and Ms. Villanueva, through no fault of their own, have had to bear the brunt of Ms.
Camacho's illegal conduct. Although Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva want to
put this behind them, they still experience anger and anxiety about Ms. Camacho. In fact Ms.
Camacho was allowed to linger on the premises after she was told to go home and also was allowed
to be a guest of the hotel last Sunday. Her actions were intimidating to the front desk staff.

Nonetheless, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva would like to resolve
their claims with the Company in a quiet, non-disclosed, confidential manner. They have suffered
direct economic harm by using sick leave because of Ms. Camacho's behavior, and are still
traumatized by Ms. Camacho's behaviors. They all complain of similar symptoms that they have
been suffering from, including loss of concentration, headaches, stress, sleeplessness, loss of appetite
and anxiety. They each have families and need their jobs and incomes, but it may well be that any
settlement may result in their leaving their position. However, at this point, they wish to retain their
positions with the Company.

The Company must take responsibility for Ms. Camacho's actions and its own
inactions. It should provide renewed sexual harassment training for its Company management and
employees since they were aware of, and condoned, the actions of Ms. Camacho. Ms. Taimanglo,
Ms. Holbrook and Ms. Villanueva also believe that some female sensitivity training is necessary with
the Company because they don't seem to appreciate the nature of the harm that has been dealt to my
clients. Finally, my clients seek a combined monetary compensation, as a settlement of their claims
against the Company, of damages in the amount of Three Hundred Thirty-Five Thousand Dollars
($335,000).

I have discussed this case with the EEOC in Hawaii but have not filed a formal
complaint, as yet. We would prefer to resolve this matter without that formality. Please review this
letter with the necessary parties and get back to me within the next seven (7) days, if possible.

Sincerely,

Phillip Torres

C:\Files\Holbrook et al. - Leo Palace\001.ltr.wpd

9600

# FRONT OFFICE WORK SCHEDULE

C (EXHIBIT)

FRONT:

| SHIFT CODE: | |
|---|---|
| A | 06:15 – 14:45 |
| B | 08:15–16:40 |
| C | 12:45–21:15 |
| D | 08:00 – 17:30 |
| N | 21:15–06:15 |
| J | 20:30–10:30 |
| E | 2830–0930 |
| Q | 1400–2330 |

PAY PERIOD : JUL 25 – AUG 07 2004

| NAME OF EMPLOYEE | SU | M | TU | W | TH | F | SA | SU | M | TU | W | TH | F | SA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| SUZUKI | O | O | OFF | D | D | D | D | D | B | D | D | OFF | D | D |
| ROSE | OFF | O | A | OFF | OFF | O | A | D | A | A | OFF | A | A | A |
| LOUISA | O | O | Q | A | A | A | A | O | A | Q | OFF | OFF | A | OFF |
| VIVIENE | A | OFF | A | A | A | | OFF | A | A | A | A | A | A | A |
| RALPH | | OFF | OFF | O | D | O | | N | OFF | OFF | | | O | N |
| GERT | O | OFF | O | O | OFF | O | | O | OFF | OFF | O | O | O | A |
| JENNIFER | A | A | O | A | OFF | OFF | | A | A | | | | OFF | OFF |
| CHRISTINA | | | OFF | OFF | OFF | | | | | | OFF | | | |
| BIANG | N | N | N | N | N | N | N | N | OFF | N | N | OFF | N | N |
| GRACE | | | N | | | | N | | OFF | | | | | |
| GUADALUPE | OFF | | | | | | | | | | | | | |
| SIMONE | N | N | N | N | N | N | N | N | VL | VL | VL | VL | OFF | N |
| RUDY | OFF | OFF | OFF | N | N | OFF | N | OFF | | | | | N | N |
| RONALD | N | N | N | N | N | N | N | N | | OFF | | | A | O |
| RODNEY | N | | OFF | OFF | | | O | | | OFF | OFF | D | O | Q |
| NEL | | | | | | | | | | | | | | |

PENCIL-Syrent, E. I.

EXHIBIT C

Nov-16-06 18:38 From-U.S. EEOC 808-541-3380 T-806 P.003/006 F-560

Case 1:06-cv-00028    Document 62-5    Filed 09/10/2007    Page 30 of 33

4600

1998 — Traffic Ticket
(Shipping Receiver)

# FRONT OFFICE WORK SCHEDULE

@ 2 or 3 more Traffic one



FRONT

| SHIFT CODE | |
|---|---|
| A | 06:15 – 14:45 |
| B | 08:15 – 16:30 |
| D | 12:45 – 21:15 |
| G | 09:00 – 17:30 |
| N | 21:15 – 05:15 |
| I | 21:30 – 06:00 |
| E | 20:30 – 08:00 |
| R | 14:00 – 23:00 |

B 0800–1700
B 0800–1700 app/2

12:45 ~ 16:45 ©

PAY PERIOD : AUG.08 – AUG.21 2004

| NAME OF EMPLOYEE | SU 8 | M 9 | TU 10 | W 11 | TH 12 | F 13 | SA 14 | SU 15 | M 16 | TU 17 | W 18 | TH 19 | F 20 | SA 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SUZUKI | D | D | B | OFF | D | D | A | D | D | D | D | OFF | A | E |
| ROSE | OFF | A | A | A | A | A | A | A | A | A | A | OFF | OFF | |
| LOUISA | G | Q | Q | OFF | At | A | OFF | A | Q | A | Q | A | A | A |
| VIVIENNE | A | A | Q | OFF | CA | Q | OFF | A | A | A | A | OFF | OFF | N |
| RALPH | OFF | OFF | N | N | N | N | OFF | N | OFF | OFF | OFF | N | N | N |
| JENNIFER | A | A | B | A | A | OFF | G | A | SX | A | A | A | A | A |
| QTEO | N | N | B | I | I | N | I | N | N | N | N | N | I | I |
| OSABARANARA | OFF | OFF | I | I | I | OFF | I | OFF | OFF | OFF | OFF | X | X | I |
| HIROSHI | I | I | OFF | OFF | N | OFF | I | N | OFF | I | I | I | I | I |
| RUDY | VL | VL | VL | VL | VL | N | N | N | N | N | N | N | OFF | N |
| RONALD | OFF | N | N | N | N | N | N | N | OFF OFF | OFF | OFF OFF | OFF | OFF | OFF |
| RODNEY | N | N | OFF | OFF | N | N | N | N | OFF | OFF | N | N | O | O |
| NL | I | I | I | OFF | O | I | I | N | N | N | N | N | O | O |
| DALEING | | | | | | | | N | N | N | N | N | N | N |

Where T indicates B
the time is 6:15 to 1:00 pm
Why is Thursday scratched

# FRONT OFFICE WORK SCHEDULE

**PAY PERIOD : AUG 22 – SEP 04 2004**

FRONT

**SHIFT CODE**

| | | |
|---|---|---|
| A | 06:15 – 14:45 | |
| B | 08:15 – 21:10 | 6:15 |
| C | 12:45 – 21:10 | |
| D | 09:30 – 17:30 | |
| N | 21:15 – 05:15 | |
| I | 21:15 – 05:30 | |
| E | 13:30 – 22:00 | |
| G | 14:30 – 23:00 | |



Handwritten notes (right margin):

Maybe for sufficient purpose we should request for my paycheck stub copy.

or he put me on sick leave

Handwritten notes (bottom):

I did not take off on these days that show SL because Rose & Vivene were off a Christina was gone. So we were short staff.

MITSUE