# STATEMENT

In May 2004, Christine Camacho was hired to work as a front desk clerk at Leo Palace Resort ("Respondent"). I was hired by Respondent on May 13, 1994 and, at all times relevant herein, I worked as a front desk supervisor.

Since June 2004, I have been subjected to verbal and physical sexual harassment by a female co-worker, Christine Camacho because of her offensive language and harassing conduct at work. At first, I handled the problem by telling her that her language and actions were unwelcomed and inappropriate in the workplace. However, she continued to behave in the same way. I was aware that a written complaint about Ms. Camacho's behavior was made to the Human Resource Office on June 23, 2004 by Greg Perez, the night supervisor because Viviene Villanueva had been "sexually assaulted" by Ms. Camacho. On July 1, 2004, I still had not heard anything from Human Resources about the complaint on Ms. Camacho. Ms. Camacho continued to act offensively so I inquired to Human Resources about what action was being taken and I also made known my own complaints about Ms. Camacho. I told Human Resources Manager, May Paulino, about the offensive and sexually explicit behavior and offensive language of Ms. Camacho which was stressing all the employees at the front desk. However, Respondent took no action to address my complaints or Greg Perez's complaint. I was told by Ms. Paulino, after she consulted with Mr. Suzuki, a front desk manager, that the company was too "short of staff" to take action against Ms. Camacho

During her employment, Ms. Camacho consistently used vulgar language and sexual references in front of me and her co-workers and, on occasion, guests of the hotel. In June, July and August, I repeatedly told Ms. Camacho that she was not to swear or act out in the workplace. Ms. Jennifer Holbrook and Ms. Villanueva, other front desk employees, also told Ms. Camacho that her

constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech or behavior around her co-workers which created a severe and pervasive hostile environment whenever she worked.

After I complained in July about the sexual harassment of Viviene Villanueva and the hostile and tense environment at the front desk wherever Christine Camacho was working, I felt I couldn't say anything more because the response I received from Ms. Paulino was that "we were short of staff and the company wouldn't let Christina go unless the Company found a replacement." Other management personnel, Mr. Ijima and Mr. Hong knew of Ms. Camacho's behavior but also looked the other way as though it wasn't their problem. I and my co-workers were left to fend for ourselves in dealing with Ms. Camacho.

On August 10, 2004, at approximately 6:30 in the morning, Ms Camacho walked up behind me and slapped me hard on the buttocks. I was extremely upset by what happened and yelled at Ms. Camacho. It was the second time I had been slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Camacho and I were exiting one of the Company's vans that routinely transported the employees from the hotel to the parking area. The van incident was witnessed by co-employees, including Joseph Ishizaki, who still works for the Company. Thereafter, I complained again to Human Resources.

I believe I have been discriminated against because of my sex and national origin. I think the Company would have taken swift actions if the person complaining was a Japanese male. Although I worked for Respondent for ten (10) years, I felt I couldn't work there any longer because of what happened and I resigned in October.

I want this charge filed with the EEOC. I will advise the agency if I change my address or telephone number and cooperate fully with you in the processing of my charge in accordance with your procedures.

0056

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 16th day of December, 2004.

*[signature]*
_____
**ROSEMARIE TAIMANGLO**

08/17/2004 12:21 FAX 4710035     LEO PALACE HR     ☒002



**LEOPALACE**
**• RESORT •**

On August 10, 2004 around 2:20 PM RY CLUB
May Paulino HR Manager and Rose Taimanglo ( Front Desk Clerk)

Rose: May, It's about Cristina....this is going on too much. She slapped my butt.. I don't appreciate it. I have warned her several times. I have warned her verbally, that if she continues on that I will report her to HR office. May, I am concern. You know Jen (Jennifer Holbrook) she had made a comment that she can easily sue this company for sexual harassment with Cristina.

May: Does Mr. Suzuki know what 's going on? Did you report this to Mr. Suzuki?

Rose: You know May, Suzuki San is very busy. Always busy.

May: But he should be told. He has to know all these. You are the supervisor you have to tell him.

Rose: Yes.

May: Is Mr. Suzuki working today? I will have to talk with him and get back to you tomorrow.

August 11, 2004 around 7: 30 am. I called Rose via cell phone and asked her if Christina is working today. She said yes. I told her (Rose) to tell Cristina to clock out and go home that I will talk to her later.

Rose called me and said that Cristina wanted to talk to me, and that Cristina will not leave the premises, but will wait for me. (May)

August 11, 2004 11:25AM

May: Rose, Cristina told me that you folks at front desk jokes with her. That you had asked her, her personal life. Like who does she sleeps with. Like how does she make love to the other woman? And how does she eat pussy?

Rose: May, she tells us that herself.

May: When she makes sexual jokes/comments you ladies at front desk entertain her?

Rose: Yeah, we laughed.



FOR INTERNAL USE ONLY

EXHIBIT 13

May: So you entertain her. You as a supervisor should have told her to stop her acts...that it is not acceptable and to stop it. Then she would know. As long as no one is telling her, she will continue on.

Rose: May I told her several times. I warned her several times. So she knows.

May: Did you document those verbal warnings?

Rose: No.

May: Whenever you talk to your staffs you warned them verbally, always write it down in back and white. Get a notebook, make a bible for yourself. Whatever it is write is down. If you say You reported it to me or Mr. Suzuki, then if anything should happen, you would not be blamed for. It is out of your hands. Just anything document it down for your own protection. How do you feel if Cristina was to continue working at front desk.

Rose: May, I feel sorry for her. This is the only job she has. Her other job she is no longer working there. She tells us she still is..but really, she is not. I will forgive her for what she has done to me. I feel for her.

May: I will talk to Mr. Ijima and Mr. Suzuki about this. Then a decision will be made. I will keep you posted.



LAW OFFICES

# TEKER TORRES & TEKER, P.C.

Lawrence J. Teker
Phillip Torres
Samuel S. Teker

Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910-5018
Telephone: (671) 477-9891/4
Facsimile: (671) 472-2601
Email: L.teker@ttguamlawyers.com

Of Counsel:
Nagatomo Yamaoka

August 16, 2004

**VIA FACSIMILE NO.: 471-0035**

Mae Paulino
*Human Resources Manager*
Leo Palace Resort
Menenggon Hills, Yona, Guam

    Re:    *Rosemarie Taimanglo, Jennifer Holbrook and Viviene Villanueva - Sexual Harassment Claims Against Leo Palace Resort.*

Dear Ms. Paulino:

    This letter is to advise you of the very serious charges and sexual harassment claims that Ms. Rosemarie Taimanglo, Ms. Jennifer Holbrook and Ms. Viviene Villanueva have against the Leo Palace Resort ("the Company"). My office represents Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. As you know, Ms. Taimanglo is your front desk supervisor and has been with the company for ten (10) years. Ms. Holbrook has been employed with the company for the past two and a half (2½) months and was a previous employee of the company. She is employed as a front desk clerk. Ms. Villanueva has been employed by the company for fourteen (14) months as a front desk clerk. Ms Taimanglo earns Eleven Dollars and Fifty Cents ($11.50) an hour, Ms. Holbrook earns Six Dollars and Fifty Cents ($6.50) an hour and Ms. Villanueva earns Six Dollars ($6.00) an hour.

    Sexual harassment is a form of sexual discrimination in violation of Title VII of the Civil Rights Act of 1964. The United States Supreme Court has identified what types of conduct constitute sexual harassment and has ruled that employers have to show that they exercised reasonable care to prevent or promptly correct any sexually harassing behavior to avoid liability.

    The Company employed Christine Camacho as a front desk clerk since May 2004. She worked alongside other front desk clerks including Ms. Holbrook and Ms. Villanueva. They all worked under the supervision of Ms. Taimanglo or Greg, the night supervisor. Over the past ten (10) weeks, Ms. Camacho has repeatedly conducted herself in a sexually offensive and unwelcomed manner when interacting with Ms. Taimanglo, Ms. Holbrook, Ms. Villanueva and other Company


EXHIBIT 14

employees. Your front desk employees, including Greg, the night manager and Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva all complained to Mae Paulino in Human Resources more than six (6) weeks ago. On or about July 1, 2004, they complained about Ms. Camacho's sexual harassment conduct and *nothing* was done about their complaints. Management personnel including, Mr. Hong, who is an assistant sales manager, Mr. Suzuki and Mr. Ijima were aware of Ms. Camacho's offensive behavior, but they did nothing to intervene or curtail Ms. Camacho's behavior or remove her from the hostile environment created by her continued employment.

On numerous occasions over the past ten (10) weeks, Ms. Camacho made unwelcomed, rude, sexually explicit comments and acted out in a sexual way towards Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. A brief summary are as follows:

(A) Since Ms. Camacho was hired, she has consistently used vulgar language and sexual references in front of her co-workers and, on occasion, guests of the hotel. Obscene words are inappropriate in the workplace and she was repeatedly warned by Ms. Taimanglo and her co-workers to stop swearing in the workplace. Ms. Holbrook and Ms. Villanueva also told Ms. Camacho that her constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech.

(B) Two weeks ago, Ms. Camacho approached Ms. Holbrook and asked "Have you ever tried having oral sex during your period?, I have done it with Jessica (her girlfriend) and it doesn't taste so bad. Would you like me to try it on you?" Ms. Holbrook looked at her in disgust and told her to get away from her and to leave her alone. Notwithstanding the warnings, around the same period of time, Ms. Camacho approached Ms. Holbrook and stated "You make me wet!"

(C) On numerous occasions over the past (2) months, Ms. Camacho has made sexually explicit offensive jokes and has been told by Ms. Taimanglo and her co-workers to stop such behavior and that they find it offensive.

(D) In early June, Ms. Camacho grabbed Ms. Holbrook's arm and raised it up to her breast. Ms. Holbrook yanked her arm away and yelled at Ms. Camacho to stop.

(E) In June, while working at the front desk, Ms. Villanueva was grabbed from behind by Ms. Camacho who then proceeded to "sexually hump" Ms. Villanueva. That incident should have been captured by the security cameras. Despite Ms. Villanueva's loud objections, no one came to her assistance.

(F) On July 7, 2004, Ms. Camacho walked up to Ms. Holbrook from behind and slapped her on her buttocks in an extremely hard manner. Ms. Holbrook screamed and was very upset. The sound of the slap and Ms. Holbrook's loud scream caused Mr. Hong, who was in the office behind the front desk, to come out to see what had happened. Mr. Hong asked what happened but despite being told what happened he did nothing. After she slapped Ms. Holbrook, Ms. Camacho stated to Ms. Holbrook "Sorry, I can't help myself." The incident should have been seen by security and recorded on the surveillance cameras but no one responded to investigate the violent incident.

(G) On August 10, 2004, at approximately 6:30 a.m., Ms Camacho walked up behind Ms Taimanglo and slapped her hard on the buttocks. Ms. Taimanglo was extremely upset by what happened and yelled at Ms. Camacho. Ms. Taimanglo felt sick and scared because no one at the Company helped. It was the second time Ms. Taimanglo was slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Taimanglo and Ms. Camacho were exiting the van. That incident was witnessed by co-employees, including Joseph Ishizaki.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva brought their Complaints, on or about July 1, 2004, to Mae Paulino in Human Resources but no action was taken to separate Ms.

Camacho from her fellow co-workers or to deal with the employee's complaints. That was especially disheartening to Ms. Taimanglo who felt that the Company would not question her veracity and immediately take action on the complaints. Instead, Mr. Suzuki was consulted and he did not want to terminate or remove Ms. Camacho from the front desk. He said the company was "short of staff." Upset with the Company's response to their complaints but not wanting to jeopardize their job, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva simply tried to ignore Ms. Camacho and endure, but it has finally become too much. At no time did anybody from the Company inform Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva that their complaints would be taken care of nor were any written statements requested from the employees.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva often told Ms. Camacho that her actions and comments were offensive and unwelcomed and that she had to stop. My clients did not know how else to handle the situation since their complaints went unheeded despite management being witness to, or aware of Ms. Camacho's behavior. My clients tried to ignore Ms. Camacho's behavior but the hostile environment created by both Ms. Camacho's actions and the Company's non-action to the employees complaints created a stressful, fearful, tense and nearly unbearable work days behind the front desk. After the initial formal complaints, Ms. Camacho's illegal actions escalated when she physically assaulted Ms. Taimanglo and Ms. Holbrook by slapping them hard on their buttocks and when she physically assaulted Ms. Villanueva by grabbing her and simulating a sex act.

Last Tuesday, my clients again took these complaints to Human Resources. On Wednesday, August 11, 2004, Ms. Paulino summoned Ms. Camacho for a meeting and also summoned Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. Ms. Paulino disclosed to Ms. Camacho that Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva were the complaining parties were and what their complaints were. When they all went back to work together, the atmosphere at the front desk was hostile and more tense than ever. Ironically, the complaints of sexual battery of Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva are easily verified because there are security cameras that record the activities behind the front desk. Those cameras would verify all of the physical actions and acting out of Ms. Camacho. Ms. Camacho was later sent home for the day but was not terminated, suspended or written up. No solid action was taken by the Company that day against Ms. Camacho. Ms. Camacho was told to leave for the day but one (1) hour later, despite the order to leave, she was still on the premises.

The comments and behavior of Ms. Camacho are extraordinary for their illegality in the workplace as well as their offensive and obscene nature. Her behavior does not belong in the workplace and I can't think of a situation where they do belong. Ms. Camacho's demeaning comments directed at Ms. Holbrook and other company employees were not misplaced attempts at humor and cannot be defended by any analysis. Ms. Camacho's actions left Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva stressed, fearful, upset and confused about what to do.

*The law and the Leo Palace Resort's policies.* The Company's response to the numerous actions of Ms. Camacho have been fully deficient and do not even come close to complying with the law. I reviewed the Company's Employee Handbook and it clearly states the Sexual Harassment Policy of the Company. The Policy states that if someone thinks they have been subjected to Sexual Harassment they should report it to the Human Resources Department and "the Human Resources Department will conduct a full investigation into all of the surrounding circumstances...". The policy also states "This is a sensitive area of concern and care will be taken to protect the privacy and reputation of all concerned. To the best extent possible, we will attempt to keep confidential the identity of the employee reporting the incident involving discrimination or harassment. If the report appears to have merit, appropriate disciplinary action will be taken against the offender... The final decision rests with the General Manager or his/her designated representative." The Company's sexual harassment policy certainly was not followed in this case. The Company failed to comply with Federal Law and provided no direction or relief for Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva to follow, instead throwing them back into the same hostile environment they knew.

The United States Supreme Court in 1998 clarified the law regarding sexual harassment claims in two cases, *Faragher v. City of Boca Raton*, 524 U.S. 775, and *Burlington Industries v. Ellerth*, 524 U.S. 742. The Supreme Court announced a three-step approach to be used in deciding liability in sexual harassment claims. First, if a supervisor's harassment results in a victim suffering a "tangible employer action," such as discharge, demotion or undesirable reassignment, the company is always liable for paying damages. Second, even if a victim has not suffered a job loss, the employer is strictly liable for its harassment, but can raise a defense as set forth in the third step of the analysis. Third, the company may head off liability or significant damages for a "hostile environment" harassment by proving its innocence. The employer must show that it took "reasonable care" to prevent and correct any "harassing behavior," that it responded promptly to any hints of trouble, and the plaintiff "unreasonably failed" to complain about abuse. The employer has the burden of proving both of the elements by preponderance of the evidence.

The Company failed to meet the requirements of the *Faragher* decision to avoid liability. The Company did not exercise reasonable care to prevent or correct the harassing conduct as required by *Faragher*. It was not until Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva complained again on August 10, 2004 that anything was done and then the Company's remedy was to send Ms. Camacho home for the day without any explanation to my clients of what was needed from them or what to expect next.

It is not my clients' present desire to take this matter to Court but if that happens there are many issues that the Company would be forced to deal with in a courtroom response to these claims. Where is the sexual harassment training? Why wasn't the Company's sexual harassment policy followed? Where is female sensitivity training? Where was the proper investigation and

response? Why was Ms. Camacho hired? How many bites of the apple does Ms. Camacho get? Why was her known behavior tolerated? Why is being "short of staff" considered a defense by the Company.

The Company has clearly failed to comply with the Title VII standards as set out in the *Faragher* and *Burlington Industries* cases. It also failed to comply with its own sexual harassment policy. This may well be a very embarrassing situation for all and Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva, through no fault of their own, have had to bear the brunt of Ms. Camacho's illegal conduct. Although Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva want to put this behind them, they still experience anger and anxiety about Ms. Camacho. In fact Ms. Camacho was allowed to linger on the premises after she was told to go home and also was allowed to be a guest of the hotel last Sunday. Her actions were intimidating to the front desk staff.

Nonetheless, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva would like to resolve their claims with the Company in a quiet, non-disclosed, confidential manner. They have suffered direct economic harm by using sick leave because of Ms. Camacho's behavior, and are still traumatized by Ms. Camacho's behaviors. They all complain of similar symptoms that they have been suffering from, including loss of concentration, headaches, stress, sleeplessness, loss of appetite and anxiety. They each have families and need their jobs and incomes, but it may well be that any settlement may result in their leaving their position. However, at this point, they wish to retain their positions with the Company.

The Company must take responsibility for Ms. Camacho's actions and its own inactions. It should provide renewed sexual harassment training for its Company management and employees since they were aware of, and condoned, the actions of Ms. Camacho. Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva also believe that some female sensitivity training is necessary with the Company because they don't seem to appreciate the nature of the harm that has been dealt to my clients. Finally, my clients seek a combined monetary compensation, as a settlement of their claims against the Company, of damages in the amount of Three Hundred Thirty-Five Thousand Dollars ($335,000).

I have discussed this case with the EEOC in Hawaii but have not filed a formal complaint, as yet. We would prefer to resolve this matter without that formality. Please review this letter with the necessary parties and get back to me within the next seven (7) days, if possible.

Sincerely,

Phillip Torres

C:\File3\Holbrook et al. - Leo Palace\001.ltr.wpd

AUG 24 2004

# Family Pacific

Licensed Individual, Marriage & Family Therapist - Play Therapist

Lilli Perez Iyechad, PhD; Tom Babauta, MSW, ACSW; LisaLinda Natividad, MSI

## THIS INFORMATION IS CONFIDENTIAL

August 19, 2004

To:  Mr. Satoshi Suzuki
     Front Office Manager
     MDI – Leo Palace

From:  Lilli Perez Iyechad, PhD
       Individual, Marriage & Family Therapist

Subject:  Verification of Treatment Schedule
          RE: Taimanglo, Rosemarie B.

Please note that Ms. Taimanglo is under my care and I am recommending that she be given a two-week leave of absence from work, to commence on August 19 and conclude on September 2, 2004. Ms. Taimanglo will remain in my care during her absence from work.

If you have any questions about this matter please feel free to contact me at the address and number provided. In advance, I thank you for your cooperation and attention to this matter.

Lilli Perez Iyechad, PhD
Individual, Marriage & Family Therapist

cc: file copy



EEOC 0134