Anna Y. Park, Regional Attorney
Derek Li, Supervisory Trial Attorney
Gregory McClinton Senior Trial Attorney
Angela D. Morrison, Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1068
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

333 S. Las Vegas Blvd., Suite 8112
Las Vegas, NV 89101
Telephone: (702)894-5072
Facsimile: (702)894-5094
E-mail: angela.morrison@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

FILED
DISTRICT COURT OF GUAM
SEP 24 2007
JEANNE G. QUINATA
Clerk of Court

# UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br>v.<br><br>LEO PALACE RESORT,<br><br>Defendant.<br><br>JENNIFER HOLBROOK; VIVIENE VILLANUEVA; and ROSEMARIE TAIMANGLO,<br><br>Plaintiff-Intervenors,<br>v.<br><br>MDI GUAM CORPORATION d/b/a LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10,<br><br>Defendants. | Case No.: 2:06-CV-00028<br><br>DECLARATION OF ANGELA MORRISON IN SUPPORT OF PLAINTIFF EEOC'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT |

**ORIGINAL**

-1-

I, Angela D. Morrison, declare and state:

1. I am a Trial Attorney employed at the Las Vegas Local Office, Los Angeles District Office of the United States Equal Employment Opportunity Commission. I have personal knowledge of the facts stated herein, and if called as a witness to testify as to the matters stated herein, I could and would competently do so.

2. Attached hereto as Exhibit 1 are true and correct copies of documents Bates stamped numbers LPR 00002, 00003, 00004, 00006, 00028, 00039, 00058, 00091, 00134, 00139, 00182, 00183, 00184, 00185, 00186, 00187 provided to the EEOC by Defendant Leo Palace via discovery. The documents are redacted to protect personal information such as social security numbers, home addresses, home telephone numbers, and dates of birth. In addition LPR 00187 is redacted pursuant to Fed. R. Evid. 408.

3. Attached hereto as Exhibit 2 are true and correct copy of excerpts of the deposition transcript of Viviene Villanueva.

4. Attached hereto as Exhibit 3 are true and correct copy of excerpts of the deposition transcript of Jennifer Holbrook.

5. Attached hereto as Exhibit 4 are true and correct copy of excerpts of the deposition transcript of Rosemarie Taimanglo.

6. Attached hereto as Exhibit 5 are true and correct copy of excerpts of the condensed deposition transcript of Gregory Perez.

7. Attached hereto as Exhibit 6 are true and correct copy of excerpts of the deposition transcript of May Paulino.

8. Attached hereto as Exhibit 7 are true and correct copy of excerpts of the deposition transcript of Satoshi Suzuki.

9. Attached hereto as Exhibit 8 are true and correct copy of excerpts of the deposition transcript of Yutaka Maruyama.

10. Attached hereto as Exhibit 9 is a true and correct copy of the Treatment Summary for Rosemarie Taimanglo prepared by Dr. Lilli Perez Iyechad.

11. Attached hereto as Exhibit 10 is a true and correct copy of the Treatment Summary for Jennifer Holbrook prepared by Dr. Lilli Perez Iyechad.

12. Attached hereto as Exhibit 11 is a true and correct copy of the Treatment Summary for Jennifer Holbrook prepared by Tom Babauta, MSW.

13. Attached hereto as Exhibit 12 is a true and correct copy of the Treatment Summary for Viviene Villanueva prepared by Tom Babauta MSW.

14. Attached hereto as Exhibit 13 are true and correct copy of excerpts of the deposition transcript of Tom Babauta, MSW. The transcript is redacted to protect the privacy of a third-party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of September, 2007, at Las Vegas, Nevada.

_____
Angela D. Morrison

# Exhibit 1



Adolpho Palacios
President

# PALACIOS SECURITY AGENCY

P.O.Box 24433 GMF
Barrigada, GU 96921-4433

Tele/Fax: 477-0501

August 16, 2004

To:      Ms. Mae Paulino/HR

Subject:   Incident Report, Re: Terminated Employee

On 8/14/04, I was with Mr. Ijima at Condo-E, interviewing the Guest of #409, regarding a missing jewelry bag. After finishing at Condo-E, we went over to talk with Lito at Condo-C. A GPD Officer was with us.

At 11:40AM, 8/14/04, we were at Condo-C to talk with Lito. While at Condo-C, the Cell phone of Mr. Ijima rang. Mr. Ijima was talking, in Japanese, and my impression is that he was talking with someone higher than him, because in the way he was talking. After finishing talking, Mr. Ijima remarked to the effect, about a terminated employee now being at the Hotel staying. I later gathered that it was Christina Camacho.

We went to the Hotel about 12:30PM. Mr. Ijima instructed me to placed a Security Guard on the Lobby Floor, because of the subject terminated employee. I instructed a Security Guard to remain on the Lobby Floor, until the Front Desk employees get off at 2:45PM.

While at the Lobby, I asked one of the Front Desk Clerk where is the subject employee staying. I was told that the Subject employee is staying at Condo-E, second, but as a Guest of an active Employee, who rented the room. I did not ask for the name of the Renter. I also asked the Front Desk Clerk what time they would be getting off. I was told it would be at 2:45PM. I told them that the Security Guard will accompany them to time-out, and that I will be Upstairs when they will board the Van to the Employee Parking Lot.

At 2:45PM, the three (3) Front Desk Clerk exited the Hotel and boarded the Van. I followed the Van to the Employee Parking Lot, where I saw all three employees entered their individual vehicles. Their vehicles were parked almost next to each other in the area outside the Employee Parking Lot. This is the area by the road.

All three vehicles left at the same time. I was behind the last car.

On this day, 8/14/04, Security did not receive any complaint about the subject employee. I hear on the commission. And I did not know of any incident occurring because of the subject terminated employee being on the premises. Until upon learning that the terminated employee was on premises, I took precautionery measures to make sure that the Front Desk Clerks are not disturbed by the subject. I also made sure that they are safe going home after work.

Submitted for your information and record.

Captain A. B. Palacios, MPA (Ret. GPD)
President, General Manager

PALACIOS SECURITY AGENCY

P.O. Box 24433 GMF
Barrigada, GU 96921-4433
Tele/Fax: 477-0501

Adolpho Palacios
President

FOR THE RECORD

On Friday (8/13/04), Human Resources (HR) requested my presence at their office, to escort an employee out of LPR premises, once the employee is served with a termination notice.

An employee named: Christina CAMACHO was served a termination notice in HR office. Upon receipt of the notice, the employee left, and was escorted by the Security Guard, from the HR office to the employee exit door upstairs. I was outside at the parking lot. The terminated employee boarded onto a Pickup Truck and headed towards the ARCH. I followed from behind, all the way to the ARCH. The employee exited the ARCH without incident.

It is a standard procedure that when LPR is serving a termination notice to an employee, that a Security Guard is requested to be present in the office. Then the Guard would escort the employee out of the premises.

Captain A.B. Palacios, MPA
Retired Guam Police
President/General Manager

AUG,18,2004

TO: MS. MAY POULINO, MANAGER
HUMAN RESOURCES DEPARTMENT.

FOR THE FIRST, I WAS DESAPPOINTED IN THIS CASE.
AS YOU KNOW I AM WORKING LEOPALACE MORE THAN 5 YEARS.
I TRY MY BEST TO COOPERATE WITH CO-WORKER FOR BEHAFE OF
COMPANY SINCE I WAS TRANSFERRED HERE FROM JAPAN.

IT WAS HAPPENED ABOUT END OF JUN THIS YEAR.
I RECEIVED A COMPLAINT FROM MS. ROSE WHO GOT A HARASSMENT
FROM MS. CHRISTINA.
AT JUN 30, MR GREG & MS ROSE HAD A MEETING REGARDING
THIS CASE. THEY WERE DECIDED COMPLAINT TO PARSONAL OFFICE
WITHOUT ME. THAT I HEARD.

WITHOUT ME MEANS I AM SO BUSY AND MY ENGLISH IS NOT WELL
AND THEY CAN MAKE A SETTLEMENT THEMSELVES.
THEY SAID. AFTER THAT I NEVER RECEIVE THIS COMPLAINT FROM
THEM AND OTHER CO-WORKER.
I THOUGHT THIS CASE WAS SETTLE IN MY JUDGMENT.

SOMEDAY MS. ROSE ASKED ME ABOUT MS. CHRISTINA FOR FIRE
WHATEVER THAT TIME, WE NEED MORE STAFF(SHORT STAFF) SO
I COULD SAY AS SOON AS POSSIBLE WHEN WE GET A NEW
CO-WORLER.
AND ALSO THAT TIME, I NEVER HEARD STILL CONTINUALLY
HARASSMENT.

AT JULY 30, I SAW THEM (ROSE & CHRISTINA) WORKING TOGHTHER
MS. ROSE REQUEST MS. CHRISTINA FOR WORK DURLING THE SHORT
STAFF.
BUT I NEVER THOUGHT STILL CONTINUALLY HARASSMENT.
I DECLARE THAT I WROTE TRUE AND BELIEF.

FRONT DESK
MANAGER
S. SUZUKI

LPR 00004



LEOPALACE
· RESORT ·
COUNTRY CLUB
MANENGGON HILLS

## PERSONNEL ACTION FORM
No.: 04-659

| CAMACHO, Christina M. | SOCIAL SE REDACTED | DATE OF BIRTH |
|---|---|---|
| NAME | | |
| REDACTED | MAILING ADDRESS | |
| 0000y | Front Desk | 31-5000 |
| EMPLOYEE NO. | DEPARTMENT | DEPARTMENT NO. |

| RELEASED | 08/13/04 | 05/10/04 |
|---|---|---|
| ACTION | EFFECTIVE DATE | DATE OF HIRE |

| Position: | Front Desk Clerk | Position: | |
|---|---|---|---|
| Department: | Front Desk | Department: | |
| Salary: | $6.00 | Exemption: | Salary: | Exemption: |

[ ] INTRODUCTORY PERIOD

Remarks:

[ ] Recommend Approval  [ ] Recommend Disapproval

| Requested by | | |
|---|---|---|
| DATE | | SIGNATURE |

| May Paulino | [signature] | 8/13/04 |
|---|---|---|
| PERSONNEL MANAGER | SIGNATURE | DATE |
| | | |
| DIRECTOR OF ADMINISTRATION | SIGNATURE | DATE |
| | | |
| GENERAL MANAGER | SIGNATURE | DATE |

FOR INTERNAL USE ONLY

LPR 00006

TO: LEO PALACE MANAGEMENT
FROM: JENNIFER HOLBROOK
RE: LETTER OF RESIGNATION
DATE: AUGUST 28, 2004

AUG 3 0 2004

    I WOULD LIKE TO INFORM THE LEO PALACE MANAGEMENT THAT I WILL BE RESIGNING AS OF TODAY **AUGUST 28, 2004**. I FEEL THAT MANAGEMENT DOES NOT APPROPRIATELY TAKE CARE OF THEIR STAFF IN MANY MATTERS. I AM SADEN TO LEAVE THIS COMPANY IN SUCH A WAY; THANK YOU FOR THE OPPORTUNITY.

Thank you,
Jennifer Holbrook

P.S.

To also find out about a immediate family member my mother having cancer (uterus) which needs immediate attention.

LPR 00028



LEOPALACE
· RESORT ·
COUNTRY CLUB
MANENGGON HILLS

## PERSONNEL ACTION FORM
No.: 04-552

| NAME | | DATE OF BIRTH |
|---|---|---|
| HOLBROOK, Jennifer Toyo | SS: REDACTED | |

| TELEPHONE NO. | MAILING ADDRESS | |
|---|---|---|
| 03606 | Front Desk | 31-5000 |
| EMPLOYEE NO. | DEPARTMENT | |

| ACTION | EFFECTIVE DATE | DATE OF HIRE |
|---|---|---|
| NEW HIRE TEMPORARY FULL TIME | 06/07/04 | 06/07/04 |

| FROM | TO |
|---|---|
| Position: | Position: FRONT DESK CLERK |
| Department: | Department: FRONT DESK |
| Salary:   Exemption:  [ ] ANNUAL | Salary: $8.50   Exemption:  [ ] INTRODUCTORY PERIOD |

| Remarks: | |
|---|---|
| | [ ] Recommend Approval  [ ] Recommend Disapproval |
| Requested by: | |
| DATE | SIGNATURE |

| May Paulino | (signature) | 6/7/04 |
|---|---|---|
| PERSONNEL MANAGER | SIGNATURE | DATE |
| DIRECTOR OF ADMINISTRATION | SIGNATURE | DATE |
| GENERAL MANAGER | SIGNATURE | DATE |

06/07/04
forwarded copy
to Javi

LPR 00039

October 11, 2004

Mr. Suzuki,

This is my letter of resignation. My last day will be on October 23, 2004. I'm sure you are aware of me being unhappy and disappointed in the management for the last couple of months. I have gone through so much emotional stress that it has caused me my health. The management has made me feel that if I cried for help because something was seriously wrong, they won't correct the problem and made me feel that I shouldn't have said anything. It's really sad to know that even how much time invested in the company or how much you have worked so hard and proven yourself trustworthy; they just take you for granted.

Rosemarie B. Taimanglo

CC: Human Resource



LEOPALACE
· RESORT ·
COUNTRY CLUB
MANENGGON HILLS

## PERSONNEL ACTION FORM
No.: 03-202

| NAME | SOCIAL SECURITY NO. | DATE OF BIRTH |
|---|---|---|
| TAIMANGLO, Rosemarie B. | REDACTED | REDACTED |

| TELEPHONE NO. | MAILING ADDRESS | |
|---|---|---|
| REDACTED | REDACTED | |

| EMPLOYEE NO. | DEPARTMENT | DEPARTMENT NO. |
|---|---|---|
| 4827 | FRONT DESK | 31-4000 |

| ACTION | EFFECTIVE DATE |
|---|---|
| PROMOTION / PAY INCREASE | 07/01/03 |

| FROM | | TO | |
|---|---|---|---|
| Position: | Front Desk Clerk | Position: | Supervisor, Front Desk |
| Department: | Front Desk | Department: | Front Desk |
| Salary: | $8.50  Exemption: | Salary: | $11.50  Exemption: |
| Remarks: | [ ] Merit   [ ] Annual   [ ] Introductory Period | | |

| Requested by: | [ ] Recommend Approval  [ ] Recommend Disapproval |
|---|---|
| | |

| PERSONNEL MANAGER | SIGNATURE | DATE |
|---|---|---|
| May Paulino | /s/ | 7/1/03 |
| DIRECTOR OF ADMINISTRATION | SIGNATURE | DATE |
| Jose Manzon IV | /s/ | 07/01/03 |
| GENERAL MANAGER | SIGNATURE | DATE |
| | | |

LPR 00091

OCT 1 8 2004

Viviene Villanueva
REDACTED

October 15, 2004

Mr. Satoshi Suzuki
Front Desk Manager
LeoPalace Resort
221 Lake View Dr.
Yona, Guam 96915

Re: Two-weeks Notice of Resignation

Dear Mr. Suzuki,

Greetings!

It has been a great honor working for you until bad things started happening one after the other. Many problems have been voiced out not only at Front Desk but as well as the poor management of LeoPalace Resort itself. Not only I see it but other staffs do too that none of the problems were resolved. I have tried so hard to stay. However, one has to make a tough and hard decision when too much stress and healthwise are at risks. In the light of this, I would like to inform you that I am tendering my resignation effective October 29, 2004.

I look forward for your understanding and consideration.

Sincerely yours,

*V. Villanueva*
Viviene Villanueva

LPR 00134



LEOPALACE
· RESORT ·
COUNTRY CLUB
MANENGGON HILLS

## PERSONNEL ACTION FORM
No.: 04-795

| NAME | SOCIAL SECURITY NO. | DATE OF BIRTH |
|---|---|---|
| VILLANUEVA, Viviene D.V. | REDACTED | REDACTED |

| TELEPHONE NO | MAILING ADDRESS | |
|---|---|---|
| REDACTED | | |

| EMPLOYEE NO. | DEPARTMENT | DEPARTMENT NO. |
|---|---|---|
| 03062 | Front Desk | 31-5000 |

| ACTION | EFFECTIVE DATE | DATE OF HIRE |
|---|---|---|
| RESIGNATION | 10/29/04 | 06/02/03 |

| FROM | TO |
|---|---|
| Position: FRONT DESK CLERK | Position: |
| Department: FRONT DESK | Department: |
| Salary: $6.00  Exemption: | Salary:   Exemption: |
|  | [ ] INTRODUCTORY PERIOD |

Remarks:

| Requested By | [ ] Recommend Approval  [ ] Recommend Disapproval |
|---|---|
| DATE | SIGNATURE |

| PERSONNEL MANAGER | SIGNATURE | DATE |
|---|---|---|
| May Paulino | [signature] | 10/29/04 |
| DIRECTOR OF ADMINISTRATION | [signature] | 10/29/04 |
| GENERAL MANAGER | SIGNATURE | DATE |

Removed from A&M.

FOR INTERNAL USE ONLY

LPR 00139

LAW OFFICES

# TEKER TORRES & TEKER, P.C.

Lawrence J. Teker  
Phillip Torres  
Samuel S. Teker

Suite 2A, 130 Aspinall Avenue  
Hagåtña, Guam 96910-5018  
Telephone: (671) 477-9891/4  
Facsimile: (671) 472-2601  
Email: L.teker@ttguamlawyers.com

Of Counsel:  
Nagatomo Yamaoka

August 16, 2004

**VIA FACSIMILE NO.: 471-0035**

Mae Paulino  
*Human Resources Manager*  
Leo Palace Resort  
Menenggon Hills, Yona, Guam

        *Re:   Rosemarie Taimanglo, Jennifer Holbrook and Viviene Villanueva - Sexual Harassment Claims Against Leo Palace Resort.*

Dear Ms. Paulino:

        This letter is to advise you of the very serious charges and sexual harassment claims that Ms. Rosemarie Taimanglo, Ms. Jennifer Holbrook and Ms. Viviene Villanueva have against the Leo Palace Resort ("the Company"). My office represents Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. As you know, Ms. Taimanglo is your front desk supervisor and has been with the company for ten (10) years. Ms. Holbrook has been employed with the company for the past two and a half (2½) months and was a previous employee of the company. She is employed as a front desk clerk. Ms. Villanueva has been employed by the company for fourteen (14) months as a front desk clerk. Ms Taimanglo earns Eleven Dollars and Fifty Cents ($11.50) an hour, Ms. Holbrook earns Six Dollars and Fifty Cents ($6.50) an hour and Ms. Villanueva earns Six Dollars ($6.00) an hour.

        Several of the actions is a form has been deemed unlawful in violation of Title VII of the Civil Rights Act of 1964. The United States Supreme Court has identified what types of conduct constitute sexual harassment and has ruled that employers have to show that they exercised reasonable care to prevent or promptly correct any sexually harassing behavior to avoid liability.

        The Company employed Christine Camacho as a front desk clerk since May 2004. She worked alongside other front desk clerks including Ms. Holbrook and Ms. Villanueva. They all worked under the supervision of Ms. Taimanglo or Greg, the night supervisor. Over the past ten (10) weeks, Ms. Camacho has repeatedly conducted herself in a sexually offensive and unwelcomed manner when interacting with Ms. Taimanglo, Ms. Holbrook, Ms. Villanueva and other Company

employees. Your front desk employees, including Greg, the night manager and Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva all complained to Mae Paulino in Human Resources more than six (6) weeks ago. On or about July 1, 2004, they complained about Ms. Camacho's sexual harassment conduct and *nothing* was done about their complaints. Management personnel including, Mr. Hong, who is an assistant sales manager, Mr. Suzuki and Mr. Ijima were aware of Ms. Camacho's offensive behavior, but they did nothing to intervene or curtail Ms. Camacho's behavior or remove her from the hostile environment created by her continued employment.

On numerous occasions over the past ten (10) weeks, Ms. Camacho made unwelcomed, rude, sexually explicit comments and acted out in a sexual way towards Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. A brief summary are as follows:

> (A) Since Ms. Camacho was hired, she has consistently used vulgar language and sexual references in front of her co-workers and, on occasion, guests of the hotel. Obscene words are inappropriate in the workplace and she was repeatedly warned by Ms. Taimanglo and her co-workers to stop swearing in the workplace. Ms. Holbrook and Ms. Villanueva also told Ms. Camacho that her constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech.
>
> (B) Two weeks ago, Ms. Camacho approached Ms. Holbrook and asked "Have you ever tried having oral sex during your period?, I have done it with Jessica (her girlfriend) and it doesn't taste so bad. Would you like me to try it on you?" Ms. Holbrook looked at her in disgust and told her to get away from her and to
>
> around the same period of time, Ms. Camacho approached Ms. Holbrook and stated "You make me wet!"
>
> (C) On numerous occasions over the past (2) months, Ms. Camacho has made sexually explicit offensive jokes and has been told by Ms. Taimanglo and her co-workers to stop such behavior and that they find it offensive.

Mae Paulino
August 16, 2004
Page 3

(D) In early June, Ms. Camacho grabbed Ms. Holbrook's arm and raised it up to her breast. Ms. Holbrook yanked her arm away and yelled at Ms. Camacho to stop.

(E) In June, while working at the front desk, Ms. Villanueva was grabbed from behind by Ms. Camacho who then proceeded to "sexually hump" Ms. Villanueva. That incident should have been captured by the security cameras. Despite Ms. Villanueva's loud objections, no one came to her assistance.

(F) On July 7, 2004, Ms. Camacho walked up to Ms. Holbrook from behind and slapped her on her buttocks in an extremely hard manner. Ms. Holbrook screamed and was very upset. The sound of the slap and Ms. Holbrook's loud scream caused Mr. Hong, who was in the office behind the front desk, to come out to see what had happened. Mr. Hong asked what happened but despite being told what happened he did nothing. After she slapped Ms. Holbrook, Ms. Camacho stated to Ms. Holbrook "Sorry, I can't help myself." The incident should have been seen by security and recorded on the surveillance cameras but no one responded to investigate the violent incident.

(G) On August 10, 2004, at approximately 6:30 a.m., Ms Camacho walked up behind Ms Taimanglo and slapped her hard on the buttocks. Ms. Taimanglo was extremely upset by what happened and yelled at Ms.

because no one at the Company helped. It was the second time Ms. Taimanglo was slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Taimanglo and Ms. Camacho were exiting the van. That incident was witnessed by co-employees, including Joseph Ishizaki.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva brought their Complaints, on or about July 1, 2004, to Mae Paulino in Human Resources but no action was taken to separate Ms.

LPR 00184

Camacho from her fellow co-workers or to deal with the employee's complaints. That was especially disheartening to Ms. Taimanglo who felt that the Company would not question her veracity and immediately take action on the complaints. Instead, Mr. Suzuki was consulted and he did not want to terminate or remove Ms. Camacho from the front desk. He said the company was "short of staff." Upset with the Company's response to their complaints but not wanting to jeopardize their job, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva simply tried to ignore Ms. Camacho and endure, but it has finally become too much. At no time did anybody from the Company inform Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva that their complaints would be taken care of nor were any written statements requested from the employees.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva often told Ms. Camacho that her actions and comments were offensive and unwelcomed and that she had to stop. My clients did not know how else to handle the situation since their complaints went unheeded despite management being witness to, or aware of Ms. Camacho's behavior. My clients tried to ignore Ms. Camacho's behavior but the hostile environment created by both Ms. Camacho's actions and the Company's non-action to the employees complaints created a stressful, fearful, tense and nearly unbearable work days behind the front desk. After the initial formal complaints, Ms. Camacho's illegal actions escalated when she physically assaulted Ms. Taimanglo and Ms. Holbrook by slapping them hard on their buttocks and when she physically assaulted Ms. Villanueva by grabbing her and simulating a sex act.

Last Tuesday, my clients again took these complaints to Human Resources. On Wednesday, August 11, 2004, Ms. Paulino summoned Ms. Camacho for a meeting and also summoned Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. Ms. Paulino disclosed to Ms. Camacho that Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva were the complaining parties were and what their complaints were. When they all went back to work together, the atmosphere at the front desk was hostile and more tense than ever. Ironically, the complaints of sexual battery of Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva are easily verified because there are security cameras that record the activities behind the front desk. Those cameras would verify all of the physical actions and acting out of Ms. Camacho. Ms. Camacho was later sent home for the day but was not terminated, suspended or written up. She left the day over an (1) hour later, despite the order to leave, she was still on the premises.

The comments and behavior of Ms. Camacho are extraordinary for their illegality in the workplace as well as their offensive and obscene nature. Her behavior does not belong in the workplace and I can't think of a situation where they do belong. Ms. Camacho's demeaning comments directed at Ms. Holbrook and other company employees were not misplaced attempts at humor and cannot be defended by any analysis. Ms. Camacho's actions left Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva stressed, fearful, upset and confused about what to do.

*The law and the Leo Palace Resort's policies.* The Company's response to the numerous actions of Ms. Camacho have been fully deficient and do not even come close to complying with the law. I reviewed the Company's Employee Handbook and it clearly states the Sexual Harassment Policy of the Company. The Policy states that if someone thinks they have been subjected to Sexual Harassment they should report it to the Human Resources Department and "the Human Resources Department will conduct a full investigation into all of the surrounding circumstances..." The policy also states "This is a sensitive area of concern and care will be taken to protect the privacy and reputation of all concerned. To the best extent possible, we will attempt to keep confidential the identity of the employee reporting the incident involving discrimination or harassment. If the report appears to have merit, appropriate disciplinary action will be taken against the offender... The final decision rests with the General Manager or his/her designated representative." The Company's sexual harassment policy certainly was not followed in this case. The Company failed to comply with Federal Law and provided no direction or relief for Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva to follow, instead throwing them back into the same hostile environment they knew.

The United States Supreme Court in 1998 clarified the law regarding sexual harassment claims in two cases, *Faragher v. City of Boca Raton*, 524 U.S. 775, and *Burlington Industries v. Ellerth*, 524 U.S. 742. The Supreme Court announced a three-step approach to be used in deciding liability in sexual harassment claims. First, if a supervisor's harassment results in a victim suffering a "tangible employer action," such as discharge, demotion or undesirable reassignment, the company is always liable for paying damages. Second, even if a victim has not suffered a job loss, the employer is strictly liable for its harassment, but can raise a defense as set forth in the third step of the analysis. Third, the company may head off liability or significant damages for a "hostile environment" harassment by proving its innocence. The employer must show that it took "reasonable care" to prevent and correct any "harassing behavior," that it responded promptly to any hints of trouble, and the plaintiff "unreasonably failed" to complain about abuse. The employer has the burden of proving both of the elements by preponderance of the evidence.

The Company failed to meet the requirements of the Faragher decision to avoid harassing conduct as required by *Faragher*. It was not until Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva complained again on August 10, 2004 that anything was done and then the Company's remedy was to send Ms. Camacho home for the day without any explanation to my clients of what was needed from them or what to expect next.

It is not my clients' present desire to take this matter to Court but if that happens there are many issues that the Company would be forced to deal with in a courtroom response to these claims. Where is the sexual harassment training? Why wasn't the Company's sexual harassment policy followed? Where is female sensitivity training? Where was the proper investigation and

response? Why was Ms. Camacho hired? How many bites of the apple does Ms. Camacho get? Why was her known behavior tolerated? Why is being "short of staff" considered a defense by the Company.

The Company has clearly failed to comply with the Title VII standards as set out in the *Faragher* and *Burlington Industries* cases. It also failed to comply with its own sexual harassment policy. This may well be a very embarrassing situation for all and Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva, through no fault of their own, have had to bear the brunt of Ms. Camacho's illegal conduct. Although Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva want to put this behind them, they still experience anger and anxiety about Ms. Camacho. In fact Ms. Camacho was allowed to linger on the premises after she was told to go home and also was allowed to be a guest of the hotel last Sunday. Her actions were intimidating to the front desk staff.

Nonetheless, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva would like to resolve their claims with the Company in a quiet, non-disclosed, confidential manner. They have suffered direct economic harm by using sick leave because of Ms. Camacho's behavior, and are still traumatized by Ms. Camacho's behaviors. They all complain of similar symptoms that they have been suffering from, including loss of concentration, headaches, stress, sleeplessness, loss of appetite and anxiety. They each have families and need their jobs and incomes, but it may well be that any settlement may result in their leaving their position. However, at this point, they wish to retain their positions with the Company.

The Company must take responsibility for Ms. Camacho's actions and its own inactions. It should provide renewed sexual harassment training for its Company management and employees since they were aware of, and condoned, the actions of Ms. Camacho. Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva also believe that some female sensitivity training is necessary with the Company because they don't seem to appreciate the nature of the harm that has been dealt to my clients. Finally, my clients seek a combined monetary compensation, as a settlement of their claims against the Company, of damage REDACTED

I have discussed this case with the EEOC in Hawaii but have not filed a formal complaint, as yet. We would prefer to resolve this matter without that formality. Please review this letter with the necessary parties and get back to me within the next seven (7) days, if possible.

Sincerely,

Phillip Torres

C:\File3\Holbrook et al. - Leo Palace\001.ltr.wpd