TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4
FACSIMILE: (671) 472-2601



**FILED**
DISTRICT COURT OF GUAM

NOV - 5 2007

**JEANNE G. QUINATA**
**Clerk of Court**

Attorneys for Plaintiff-Intervenors,
*Jennifer Holbrook, Rosemarie Taimanglo and Viviene Villanueva*

IN THE DISTRICT COURT OF GUAM

----------

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CIVIL CASE NO. 2:06-00028 |
| Plaintiff, | |
| vs. | |
| LEO PALACE RESORT, | |
| Defendant. | **PLAINTIFF-INTERVENORS' TRIAL BRIEF** |
| JENNIFER HOLBROOK, VIVIENE VILLANUEVA and ROSEMARIE TAIMANGLO, | |
| Plaintiff-Intervenors, | Trial date: December 4, 2007 |
| vs. | Trial time: 9:00 a.m. |
| MDI GUAM CORPORATION dba LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10, | |
| Defendants. | |

----------

/ / /

Plaintiff-Intervenors hereby files their Trial Brief pursuant to District Court of Guam Local Rue 16.7(b).

**FACTUAL BACKGROUND**

This case involves the Title VII and territorial claims that Ms. Rosemarie Taimanglo, Ms. Jennifer Holbrook and Ms. Viviene Villanueva have set forth against MDI Guam Corporation dba Leo Palace Resort Manenggon Hills ("Defendant"). The Equal Employment Opportunity Commission ("EEOC"), an agency of the United States of America, filed a Complaint against Defendant for violations of Title VII of the Civil Rights Act of 1964. On January 8, 2007, the Court issued an Order permitting Intervention and Plaintiff-Intervenors filed their Complaint on January 12, 2007. Plaintiff-Intervenors filed claims against Defendant for violations of their federally protected rights under Title VII of the Civil Rights Act of 1964 including, sexual harassment, discrimination and retaliation. Plaintiff-Intervenors also filed claims for discrimination under 22 Guam Code Annotated §3302, claims for emotional distress, wrongful termination, punitive damages and attorneys fees.

In 2004, Ms. Taimanglo was Defendant's front desk supervisor. She had worked for Defendant for ten (10) years. In June 2004, Ms. Holbrook had been employed by Defendant for two and a half (2½) months after having worked for it on a previous occasion. She was employed as a front desk clerk. By June 2004, Ms. Villanueva had been employed by Defendant for fourteen (14) months as a front desk clerk.

Defendant employed Christine Camacho as a front desk clerk starting in May 2004. She worked alongside other front desk clerks including Ms. Holbrook and Ms. Villanueva. They all worked under the front desk supervision of Ms. Taimanglo and corporate management. During her employment, Ms. Camacho repeatedly conducted herself in a sexually offensive and un-welcomed

manner when interacting with her co-workers, Ms. Taimanglo, Ms. Holbrook, Ms. Villanueva. The Company had knowledge that co-worker harassment was being perpetrated by Ms. Camacho on her fellow co-workers but it did nothing about it.

Mr. Greg Perez, the night time front desk supervisor, was told of a June 7th incident in which Ms. Villanueva was grabbed from the right side and then was "sexually humped" by Ms. Camacho. He realized that was inappropriate and talked to the staff that were on duty who had knowledge of the incident. Mr. Perez told May Paulino, the Human Resources Manager, about the problem and then followed up with a written report at Ms. Paulino's request. After conducting his investigation he wrote a letter dated June 23, 2004 to May Paulino about the incident. Notwithstanding the letter or her prior conversation with Mr. Perez, Ms. Paulino took no action.

On July 1, 2004, Ms. Taimanglo went to Ms. Paulino to follow-up on Mr. Perez's letter and to complain about Ms. Camacho's continuing offensive behavior which was creating an intolerable hostile environment behind the front desk counter. Ms. Paulino was aware that the area in which the front desk employees work is very small. There is no place to run, or escape, to avoid each other because of the close working quarters. Ms. Taimanglo explained her complaints in detail to Ms. Paulino.

Management personnel including, Mr. Hong, the assistant sales manager, Mr. Suzuki, the front desk manager, and Mr. Ijima were aware of Ms. Camacho's offensive behavior. They did nothing to intervene or curtail Ms. Camacho's behavior or remove her from the hostile environment created by her actions and continued employment. Defendant took no action to separate Ms. Camacho from her fellow co-workers or left the Plaintiff-Intervenors to deal with Camacho's behavior. Human Resources unresponsiveness was especially disheartening to Ms. Taimanglo who felt that the Company would not question her veracity and immediately take action on the

complaints. Instead, Mr. Suzuki, the front desk manager, was consulted. He did not want to terminate or remove Ms. Camacho from the front desk. He told Paulino the company was "short of staff." Upset with the Company's response to their complaints but not wanting to jeopardize their job, Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva simply tried to ignore Ms. Camacho and endure. At no time did anybody from the Company inform Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva that their complaints would be taken care of nor were any written statements requested from the employees.

On numerous occasions between mid-June 2004 and August 11, 2004, Ms. Camacho made unwelcomed, rude and offensive sexually explicit comments and acted out in sexual ways towards Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. A brief summary of Camacho's workplace behavior during that time from are as follows:

(1) Ms. Camacho consistently used vulgar language and sexual references in front of Plaintiff-Intervenors and, on occasion, guests of the hotel. She was repeatedly warned by Ms. Taimanglo and her co-workers to stop swearing in the workplace. Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva also told Ms. Camacho that her constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her patterns of offensive speech and behavior.

(2) Ms. Camacho approached Ms. Holbrook and asked "Have you ever tried having oral sex during your period?, I have done it with Jessica (her girlfriend) and it doesn't taste so bad. Would you like me to try it on you?" Ms. Holbrook looked at her in disgust and told her to get away from her and to leave her alone. Notwithstanding the warnings, around the same period of time, Ms. Camacho approached Ms. Holbrook and stated "You make me wet!"

(3) Ms. Camacho made sexually explicit, offensive jokes and was told by Taimanglo, Holbrook and Villanueva to stop such behavior. They also told Ms. Camacho that they found her comments offensive.

(4) In early June, Ms. Camacho grabbed Ms. Holbrook's arm and raised it up to her breast. Ms. Holbrook yanked her arm away and yelled at Ms. Camacho to stop.

(5) Ms. Camacho would place towels into her pants and comment on her "penis" and try

     to rub against her co-workers.

 (6) Ms. Camacho's inappropriate comments were also hurled at guests. Ms. Camacho would make comments to guests like "Can I take your bags? Can I take your wife?" Once, when a wedding couple was checking out Ms. Camacho saw their wedding candle and told them that she thought it was a vibrator. Ms. Taimanglo told Ms. Paulino that the Japanese hotel guests understood her comments and were surprised and stunned. Ms. Taimanglo repeatedly apologized to the guests for Ms. Camacho's comment.

 (7) In June, while working at the front desk, Ms. Villanueva was grabbed from behind by Ms. Camacho who then proceeded to "sexually hump" Ms. Villanueva. Villanueva loudly objected to Camacho.

 (8) On July 7, 2004, Ms. Camacho walked up to Ms. Holbrook from behind and slapped her on her buttocks in an extremely hard manner. Ms. Holbrook screamed and was very upset. The sound of the slap and Ms. Holbrook's loud scream caused Mr. Hong, who was in the office behind the front desk, to come out to see what had happened. Mr. Hong asked what happened but despite being told what happened he did nothing. After she slapped Ms. Holbrook, Ms. Camacho told Ms. Holbrook "Sorry, I can't help myself."

 (9) On August 10, 2004, at approximately 6:30 a.m., Ms Camacho walked up behind Ms Taimanglo and slapped her hard on the buttocks. Ms. Taimanglo was extremely upset by what happened and yelled at Ms. Camacho. It was the second time Ms. Taimanglo was slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Taimanglo and Ms. Camacho were exiting the Defendant's shuttle bus.

  Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva often told Ms. Camacho that her actions and comments were offensive and un-welcomed. They did not know how else to handle the situation since their complaints went unheeded despite management being witness to, and aware of Ms. Camacho's behavior. The Plaintiff-Intervenors tried to ignore Ms. Camacho's behavior but the hostile environment created by both Ms. Camacho's actions and the Company's non-action to the employees complaints created stressful, fearful, tense and nearly unbearable work days behind the front desk because Plaintiff-Intervenors didn't know what would happen next.

  Defendant had the opportunity to stop Ms. Camacho's behavior but didn't. Instead it

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE. (671) 477-9891-4

escalated when she physically assaulted Ms. Taimanglo and Ms. Holbrook by slapping them hard on their buttocks and when she physically assaulted Ms. Villanueva by grabbing her and simulating a sex act.

On Wednesday, August 11, 2004, the Plaintiff-Intervenors complained again. Ms. Paulino summoned Ms. Camacho for a meeting and also summoned Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva. Ms. Paulino violated the confidential nature of the complaints and disclosed to Ms. Camacho that Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva were the complaining parties and what their complaints were. When they went back to work after the meeting, the atmosphere at the front desk was more hostile and more tense than before. Ms. Paulino's actions left Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva stressed, fearful, upset and confused about what to do since they were still working with Camacho.

## THE LAW AND DEFENDANT'S POLICIES

Defendants response to the numerous actions of Ms. Camacho have been fully deficient and do not come close to complying with the law or Defendant's rules. The Company's Employee Handbook states the Sexual Harassment Policy of the Company. The Policy states that if someone thinks they have been subjected to Sexual Harassment they should report it to the Human Resources Department and "the Human Resources Department will conduct a full investigation into all of the surrounding circumstances..." The policy also states "This is a sensitive area of concern and care will be taken to protect the privacy and reputation of all concerned. To the best extent possible, we will attempt to keep confidential the identity of the employee reporting the incident involving discrimination or harassment. If the report appears to have merit, appropriate disciplinary action will be taken against the offender... The final decision rests with the General Manager or his/her designated representative." Defendant's sexual harassment policy certainly was not followed in this

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477-9891-4

case. Defendant did nothing and, thus, failed to comply with Federal Law and provided no direction or relief for Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva to follow, instead throwing them back into the same hostile environment they sought relief from.

Defendant has a sexual harassment policy stated in its handbook. On September 26, 2003, the Defendant provided a four (4) hour training course entitled Preventing Sexual Harassment in the Workplace. The course was presented by Bill Borja and staff of the Guam Employers Council. Ms. Taimanglo and Ms. Paulino were attendees at the course. After one (1) hour, there was a break and Ms. Paulino left. According to Mr. Borja, she did not return for the remainder of the course. Rose Taimanglo attended the entire course and received a certificate for the training. Ms. Paulino may also have received a certificate despite her non-attendance.

The United States Supreme Court in 1998 clarified the law regarding sexual harassment claims in two cases, **Faragher v. City of Boca Raton**, 524 U.S. 775, and **Burlington Industries v. Ellerth**, 524 U.S. 742. The Supreme Court announced a three-step approach to be used in deciding liability in sexual harassment claims. First, if a supervisor's harassment results in a victim suffering a "tangible employer action," such as discharge, demotion or undesirable reassignment, the company is always liable for paying damages. Second, even if a victim has not suffered a job loss, the employer is strictly liable for its harassment, but can raise a defense as set forth in the third step of the analysis. Third, the company may head off liability or significant damages for a "hostile environment" harassment by proving its innocence. The employer must show that it took "reasonable care" to <u>prevent</u> and correct any "harassing behavior," that it responded promptly to any hints of trouble, **and** the plaintiff "unreasonably failed" to complain about abuse. The employer has the burden of proving both of the elements by preponderance of the evidence.

The Company failed to meet the requirements of the *Faragher* decision to avoid liability.

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4

The Company did not exercise reasonable care to prevent or correct the harassing conduct as required by *Faragher*. It was not until Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva complained again on August 11, 2004 that anything was done and then the Company's remedy was to send Ms. Camacho home for the day without any explanation to my clients of what was needed from them or what to expect next.

Ms. Taimanglo, Ms. Holbrook and Ms. Villanueva suffered direct economic harm by using sick leave because of Ms. Camacho's behavior. Because of the ongoing nature of this case they are still traumatized by Ms. Camacho's behaviors. Plaintiff-Intervenors emotional distress manifested itself in similar symptoms of loss of concentration, headaches, stress, sleeplessness, loss of appetite and anxiety.

Defendant's decision to ignore the complaints because they were "short of staff" demonstrates that Defendant does not have an actual sexual harassment policy, only words printed in Defendant's employee handbook. Despite receiving the letter from Mr. Perez on June 23, 2004, Ms. Paulino never went to the front desk after June 23, 2004 to check on how things were going. Defendant simply tolerated Ms. Camacho's behavior. Clearly, Paulino's non-action and the non-action by Defendant contradict any assertion they may have that Defendant has a zero tolerance policy for sexual harassment.

### **EMOTIONAL DISTRESS**

The hostile environment created by both Ms. Camacho's actions and the Company's non-action to the employees complaints created a stressful, fearful, tense and nearly unbearable work situation behind the front desk. At no time between June 23rd and August 10th, did the Company do anything to intervene on behalf of the complaining employees or deal with Ms. Camacho to curtail her offensive conduct despite knowledge of the situation.

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477 9891 4

-8-

Case 1:06-cv-00028   Document 106   Filed 11/05/2007   Page 8 of 13

Mr. Suzuki, Mr. Ijima, Mr. Hong and Ms. Paulino are all management personnel of the Company. They each failed to address the behaviors of Ms. Camacho against here co-workers until August 13, 2004 when Ms. Camacho was terminated. Ms. Camacho's termination did not resolve my Clients' problems. After her termination Plaintiff-Intervenors sought counseling because of stress and all were told by their counselors to take two (2) weeks off before returning to work. Ms. Holbrook chose to continue her employment while Ms. Taimanglo and Ms. Villanueva did take two (2) weeks off. However, the stress of what had happened and the continuing stress of the job in light of their claims caused them to eventually leave their employment.

The EEOC guidelines describe hostile work environment harassment as "conduct [which] has the purpose or effect of unreasonably creating an intimidating, hostile *or* offensive working environment." ***Ellison v. Brady***, 924 F.2d 872, 876 (9th Cir. 1991)(citing ***Rogers v. E.E.O.C.*** 454 F.2d 234 (5th Cir.1971) (See also ***29 CFR § 1604.11 (a)(3)***) . In ***Ellison*** the Ninth Circuit stated that to state a claim under Title VII, sexual harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. ***Id.*** It is the harasser's conduct which must be pervasive or severe, not the alteration in the conditions of employment. ***Id.*** at 878. The standard applied to establish a prima facie case of hostile environment sexual harassment is what a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. ***Id.*** at 889 ***(citing Andrews v. City of Philadelphia,*** 895 F.2d 611, 626. (3rd Cir. 1990). "In evaluating the severity and pervasiveness of sexual harassment, we should focus on the perspective of the victim." ***Ellison*** at 878. If we only examined whether a reasonable person would engage in allegedly harassing conduct, we would run the risk of reinforcing the prevailing level of discrimination. Harassers could continue to harass merely because a particular discriminatory practice was common, and victims of

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE (671) 477-9891-4

harassment would have no remedy. *Id.* The court does not evaluate what the harasser did, but instead focuses on the effect of the treatment by the harasser on a reasonable woman.

The Ninth Circuit would agree that Plaintiff-Intervenors' feelings of stress and emotional distress from working in what they reasonably perceived as an offensive working environment with hostility and intimidation from management, notwithstanding Camacho's termination, was a reasonable reaction to the treatment these women were subjected to at the hands of Leo Palace. The *Ellison* court discussed that by acknowledging and not trivializing the effects of sexual harassment on reasonable women, courts can work towards ensuring that neither men nor women will have to "run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living." *Ellison* at 879, 880 (citing *Henson v. Dundee,* 682 F.2d 897 (11th Cir. 1992)).

Instead, Holbrook's work schedule was changed and Plaintiff-Intervenors were basically shunned by management. They were forced to work with supervisors who were treating them differently as if they were the problem. When viewing the totality of the circumstances as they existed, reasonable women in a similar situation would feel as though the conditions of their employment were altered and offensive and they were being retaliated against. As such, the hostile work environment continued. The firing of Camacho did not remove the hostile work environment, it simply changed it. The offenders became the managers and supervisors.

Conduct can unreasonably interfere with work performance without causing debilitation and without seriously affecting an employees well-being. *Ellison* at 878. A hostile work environment can exist when the emotional and psychological stability of the worker is not completely destroyed. *Id.* Plaintiff-Intervenors sought psychological treatment in August 2004 and their therapists recommended that all three take two weeks medical leave to help their psychological well being. However, all three have financial obligations and only two actually took time off.

## WRONGFUL TERMINATION

Defendant contends that Plaintiff-Intervenors were not constructively terminated. This a question of fact for the jury to decide. However, the facts will show that after Camacho was fired, Plaintiff-Intervenors continued to work for Leo Palace because they wanted to keep their jobs. They worked with the same employees and for the same managers and supervisors who initially failed to take any action to investigate their claims. Management offered no training of any sort to the managers and supervisors. Plaintiff-Intervenors were under an extreme amount of stress at work and felt isolated and overwhelmed. Plaintiff-Intervenors working conditions should have improved. Unfortunately, due to the unlawful actions by management they did not. In fact, Mr. Maruyama confronted Ms. Holbrook and in a loud voice demanded to know why she was suing the company. On another occasion, after returning from a two week leave that was recommended by her therapist, Mr. Maruyama asked her if there were any sexual harassment reports. The conditions of employment become intolerable and defendant's overall behavior towards Plaintiff-Intervenors was grossly negligent or intentional. The sexual harassment they suffered at the hands of Camacho, the delayed action on the part of Defendant's management and the continued hostile work environment perpetuated by management left them with no choice but to resign. Ms. Holbrook testified in deposition that she "just wanted to get out of there" and Ms. Taimanglo testified that "she had enough and could not take it anymore." The Defendants retaliation and the subsequent resignations constituted wrongful termination.

## EEOC'S TRIAL BRIEF ARGUMENTS

The Plaintiff-Intervenors further adopt the EEOC's arguments of the EEOC in this case since the facts and analysis for the federal claims overlap the Plaintiff-Intervenors local claims with the exception of the attorneys fees analysis. The Law Office of Teker Torres & Teker has represented

the Plaintiff-Intervenors for more than three years. That representation has included pre-litigation negotiations, pursuit of all administrative remedies and all aspects of litigating this case. Representation in this case was undertaken on a contingent fee basis but if analyzed in a traditional manner attorneys fees and costs are approaching one hundred thousand dollars.

## ABANDONMENT OF ISSUES

Plaintiff-Intervenors do not abandon any issues in their Complaint.

*Respectfully submitted* this 5th day of November, 2007.

TEKER, TORRES & TEKER, P.C.

By: _____
PHILLIP TORRES, ESQ.
Attorneys for Plaintiff-Intervenors,
*Jennifer Holbrook, Rosemarie Taimanglo and Viviene Villanueva*

M:\COMMON\USERS\PHIL\#DRAFTS\TRIAL BRIEF.wpd

# CERTIFICATE OF SERVICE

I, Phillip Torres, Esq., declare as follows:

1. I am over the age of majority and am competent to testify regarding the matters stated herein.

2. I hereby certify that on November 5, 2007, Plaintiff-Intervenors' Trial Brief was served by hand delivery on:

> Thomas L. Roberts, Esq.
> **Dooley, Roberts & Fowler, LLP**
> 865 S. Marine Corps. Dr., Ste. 201
> Orlean Pacific Plaza
> Tamuning, Guam 96913

and via electronic mail on:

> Angela Morrison, Esq.
> Trial Attorney
> **United States Equal Employment Opportunity Commission**

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 5th day of November, 2007.

*/s/ Phillip Torres*
PHILLIP TORRES

TEKER TORRES & TEKER, P.C.
SUITE 2A, 130 ASPINALL AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891-4