# ORIGINAL

1   ANNA Y. PARK, Regional Attorney
    GREGORY S. MCCLINTON, Supervisory Trial Attorney
2   DEREK LI, Senior Trial Attorney
    U.S. EQUAL EMPLOYMENT
3   OPPORTUNITY COMMISSION
    255 East Temple Street, 4th Floor
4   Los Angeles, CA 90012
    Telephone: (213) 894-1068
5   Facsimile: (213) 894-1301

6   ANGELA D. MORRISON, Trial Attorney
    333 S. Las Vegas Blvd., Suite 8112
7   Las Vegas, NV 89101
    Telephone: (702) 388-5072
8   Facsimile: (702) 388-5094
    Attorneys for Plaintiff
9   U.S. EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
10
    LEONARDO M. RAPADAS
11  United States Attorney
    MIKEL W. SCHWAB
12  Assistant U.S. Attorney
    Sirena Plaza, Suite 500
13  108 Hernan Cortez Avenue
    Hagatna, Guam 96910
14  Tel: (671) 472-7332
    Fax: (671) 472-7215
15
    Attorneys for the United States of America
16

17              UNITED STATES DISTRICT COURT

18                  TERRITORY OF GUAM

19

20  U.S. EQUAL EMPLOYMENT          )   CIVIL CASE NO. 06-00028
    OPPORTUNITY COMMISSION         )
21                                 )
              Plaintiff,           )
22                                 )   NOTICE OF LODGING OF
              vs.                  )   ORIGINAL SIGNATURE OF EEOC
23                                 )   COUNSEL ANGELA MORRISON
    LEO PALACE RESORT,             )
24                                 )
                                   )
25                                 )
              Defendant.           )
26  _____  )

27          COMES NOW the United States and lodges with the Court, the original signature, of the

28  government's Declaration of Angela Morrison in Support of Reply In Support of Plaintiff

FILED
DISTRICT COURT OF GUAM

NOV 19 2007

JEANNE G. QUINATA
Clerk of Court

1  EEOC's Motion for Partial Summary Judgment the above entitled matter, a facsimile copy of
2  which was previously filed on November 13, 2007.

3       DATED: November 14, 2007.

4

5                              LEONARD M. RAPADAS
                               United States Attorney
6                              Districts of Guam and NMI

7
                          BY: _____
8                              MIKEL W. SCHWAB
                               Assistant U.S. Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              -2-

# ORIGINAL

Anna Y. Park, Regional Attorney
Derek Li, Supervisory Trial Attorney
Gregory McClinton Senior Trial Attorney
Angela D. Morrison, Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1068
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

333 S. Las Vegas Blvd., Suite 8112
Las Vegas, NV 89101
Telephone: (702)894-5072
Facsimile: (702)894-5094
E-mail: angela.morrison@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

## UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | Case No.: 2:06-CV-00028 |
|---|---|---|
| Plaintiff, | ) ) ) ) | DECLARATION OF ANGELA MORRISON IN SUPPORT OF REPLY IN SUPPORT OF PLAINTIFF EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | ) ) | |
| LEO PALACE RESORT, | ) ) | |
| Defendant. | ) ) | |
| JENNIFER HOLBROOK; VIVIENE VILLANUEVA; and ROSEMARIE TAIMANGLO, | ) ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | |
| MDI GUAM CORPORATION d/b/a LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10, | ) ) ) ) | |
| Defendants. | ) ) | |

I, Angela D. Morrison, declare and state:

1. I am a Trial Attorney employed at the Las Vegas Local Office, Los Angeles District Office of the United States Equal Employment Opportunity Commission. I have personal knowledge of the facts stated herein, and if called as a witness to testify as to the matters stated herein, I could and would competently do so.

2. Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the deposition transcript of Viviene Villanueva.

3. Attached hereto as Exhibit 2 is a true and correct copy of excerpts of the condensed deposition transcript of Gregory Perez.

4. Attached hereto as Exhibit 3 is a true and correct copy of excerpts of the deposition transcript of Rosemarie Taimanglo.

5. Attached hereto as Exhibit 4 is a true and correct copy of excerpts of the deposition transcript of Satoshi Suzuki.

6. Attached hereto as Exhibit 5 is a true and correct copy of excerpts of the deposition transcript of Jennifer Holbrook.

7. Attached hereto as Exhibit 6 are true and correct copies of the EEOC Notice of Charge of Discrimination by Rosemarie Taimanglo, produced by Defendant in discovery and bates stamped numbers LPR 00355-00360; the EEOC Notice of Charge of Discrimination by Jennifer Holbrook, produced by Defendant in discovery and bates stamped numbers LPR 00361-00365; and the EEOC Notice of Charge of Discrimination by Viviene Villanueva, produced by Defendant in discovery and bates stamped numbers

LPR 00366-00370. Portions of the exhibit are redacted to protect personal information such as social security numbers, home addresses, and dates of birth.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of November, 2007, at Las Vegas, Nevada.

_Angela D. Morrison_
Angela D. Morrison

# Exhibit 1

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) CASE NO. 1:06-CV-00028 |
| Plaintiff, | ) |
| vs. | ) |
| LEO PALACE RESORT, | ) |
| Defendant. | ) |
| JENNIFER HOLBROOK, VIVIENE VILLANUEVA and ROSEMARIE TAIMANGLO, | ) |
| Plaintiff-Intervenors, | ) |
| vs. | ) |
| MDI GUAM CORPORATION dba LEO PALACE RESORT MANENGGON HILLS and DOES 1 through 10, | ) |
| Defendants. | ) |

🗋 **COPY**

## *DEPOSITION OF VIVIENE VILLANUEVA*

### *Taken on Behalf of the Defendant*

BE IT REMEMBERED That, pursuant to the Guam Rules of Civil Procedure, the deposition of Viviene Villanueva was taken before Veronica F. Reilly, Certified Shorthand Reporter, on Wednesday, the 21st day of March 2007, at 1:30 p.m. in the Law Offices of Dooley Roberts & Fowler, 865 South Marine Corps Drive, Suite 201, Orlean Pacific Plaza, Tamuning, Guam.

Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter
Tel: 671.734.1041 * Fax: 671.734.1045
E-mail: veronica_reilly@hotmail.com

APPEARANCES


Appearing on behalf of the plaintiff:

                TEKER TORRES & TEKER
                Suite 2A
                130 Aspinall Avenue
                Hagatna, Guam 96910
                By:  Mr. Philip Torres, Esq.
                Phone:  671.477.9891


Appearing on behalf of the defendant:

                DOOLEY ROBERTS & FOWLER
                Suite 201, Orlean Pacific Plaza
                865 S. Marine Drive
                Tamuning, Guam 96913
                By:  Mr. Tim Roberts, Esq.
                Phone:  671.646.1222


Appearing on behalf of the EEOC:

                U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                333 S. Las Vegas Boulevard
                Suite 300
                Las Vegas, Nevada 89101
                By:  Ms. Angela D. Morrison, Esq.
                Phone:  702.388.5072

                    ALSO PRESENT


Rosemarie Taimanglo, Plaintiff

May Paulino, Leo Palace

Nichiro Niikura, Leo Palace

Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter
Tel: 671.734.1041 * Fax: 671.734.1045
E-mail: veronica.reilly@hotmail.com

Case 1:06-cv-00028    Document 127    Filed 11/19/2007    Page 8 of 67

1    A.   May incident, June, so two weeks, less than three

2   weeks.

3    Q.   Do you remember when in June?

4    A.   I don't remember the date but it was somewhere

5   around the first week, sir.

6    Q.   Tell me what happened.

7    A.   I was -- I took off the front desk.  I was in the

8   computer, computer No. 3.  We had four computers.  Computer 1

9   being the Ving card to make keys, 2 for, you know -- 3 and 4,

10  and I was in the middle and I noticed that she -- you know,

11  from my view, side view, that she had entered from the door

12  and then she was approaching me and then all of a sudden, she

13  put her right hand to my stomach and her left to my back and

14  started to hump me and grind me.

15   Q.   And what did you do?

16   A.   I was shocked.  I told her, stop it, Christina,

17  you're scaring me.  And all she said was, you know, "Sorry, I

18  couldn't help myself," but she was laughing anyways.

19   Q.   Did you push her away?

20   A.   I went like this.  I didn't push her away.

21   Q.   That looked like a side step?

22   A.   Yes.  Then --

23   Q.   Was anybody else behind the front desk when this

24  happened?

25   A.   My supervisor, Rose, was there but she didn't see

*March 21, 2007.  Vivielle Villanueva*

1   it.

2      Q.   Rose didn't see it?

3      A.   Yes.  Because she was kneeling down getting

4   something from the storage cabinet.

5      Q.   Did you tell Rose what had happened?

6      A.   Yes, I did.

7      Q.   What did Rose say?

8      A.   She said that she's crazy, she's going to get

9   herself in trouble.

10     Q.   By this time, June of 2004, you had known May

11  Paulino for about a year, right?

12     A.   Yes.

13     Q.   Did you ever think of reporting Christina's conduct

14  to May Paulino?

15     A.   No.  It didn't cross my mind, you know, at the time.

16  It didn't cross my mind.

17     Q.   Did you tell anybody else about this humping

18  incident?

19     A.   Yes, I did.

20     Q.   Who?

21     A.   Other than Rose?

22     Q.   Yeah.

23     A.   I told other supervisors, Jun Layug, which at the

24  time, he was Reception Center Front Desk Supervisor for B

25  Shift.

Q.   What's Jun's last name?

A.   Layug L-A-Y-U-G.

Q.   Layug.  And why did you tell Jun Layug?

A.   Because I felt uneasy.

Q.   What was Jun Layug's position?  Front Desk?

A.   I'm sorry.  Reception Center Supervisor for B shift.

Q.   For B shift?

A.   For swing shift.

Q.   Swing shift?

A.   Or I think that was C, C shift.

Q.   Did Jun say anything to you?

A.   He laughed.  He thought I was joking.

Q.   Who else did you tell about this humping incident other than Jun?

A.   I told Concierge Supervisor, Ray Ocasamora.  I believe he was the supervisor for the concierge back then and he works swing shift as well.

Q.   What did he say?

A.   Nothing.  He laughed.

Q.   Anybody else other than Jun, Ray and Rose?

A.   Yes.

Q.   Who?

A.   Han Jang Min.  He was the Assistant Night Manager for graveyard.

Q.   Can you spell that for the court reporter?

1   A.   H-A-N space J-A-N-G space M-I-N.

2   Q.   Did he say anything?

3   A.   No.  He laughed as well.

4   Q.   Who else did you tell?

5   A.   Greg Perez and he's the Night Manager, Graveyard

6   Night Manager.

7   Q.   So were you pretty angry as a result of this humping

8   incident?

9   A.   I wasn't angry but I was -- like I didn't understand

10  why they took it like a joke.

11  Q.   You're telling a lot of people.  You're telling

12  Rose, you're telling Jun, you're telling Ray, Han, Greg.  Why

13  were you telling all these people?

14  A.   Because to me, at that time, I felt like if I told

15  somebody, then they'd know that it really happened.

16  Q.   Why did you think it was important for somebody to

17  know that it really happened?

18  A.   Because at that time, they might think that it's a

19  joke.  So I figured if I told someone else, they might

20  believe.

21  Q.   Did you think it was important that somebody believe

22  you?

23  A.   Yes.

24  Q.   Why?

25  A.   Because I was violated.

1    Q.    Was she usually a nice person?

2    A.    Usually like in general?

3    Q.    Yeah, in general.

4    A.    She would -- she's a nice person, but in a way,

5    there's like a meaning to it; like she would say sexually --

6    sexual jokes.  I guess, you know, she would have been like --

7    continued on being nice if she stopped bothering people with

8    her sexual jokes.

9    Q.    Did you ever laugh at any of her jokes, even the

10   clean ones?

11   A.    Clean ones, yes.

12   Q.    Can you recall some clean jokes that she told or

13   jokes she made?

14   A.    No.

15   Q.    Did you consider Christina generally a happy person?

16   A.    Well --

17   Q.    Let me withdraw.  A better question is, was she

18   smiling a lot on the job?

19   A.    Sometimes.

20   Q.    After the mannequin incident, what's the next thing

21   that you saw happen that you would consider to be sexual

22   harassment?

23   A.    She would tell us about her sexual life, that she

24   had a girlfriend who worked at the Housekeeping Department

25   and she would describe how they have sex.

# REPORTER'S CERTIFICATE

I, Veronica F. Reilly, Certified Shorthand Reporter, hereby certify that Viviene Villanueva personally appeared before me at the time and place set forth in the caption hereof; that at said time and place I reported in stenotype all testimony adduced and other oral proceedings had in the foregoing matter; that thereafter my notes were reduced to typewriting under my direction; and the foregoing transcript, pages 1 to 87, both inclusive, constitutes a full, true, and correct record of such testimony adduced and oral proceedings had and of the whole thereof.

Witness my hand at Barrigada, Guam, this 25th day of April 2007.

/s/
_____
Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter

# Exhibit 2

UNITED STATES DISTRICT COURT

DISTRICT OF GUAM



---------------------------------------

U.S. EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION,

      Plaintiff,

      vs.     Case No. 1:06-CV-00028

LEO PALACE RESORT,

      Defendants.

---------------------------------------

JENNIFER HOLBROOK; VIVIENNE VILLANUEVA;

and ROSEMARIE TAIMANGLO,

      Plaintiff-Intervenors,

      vs.

LEO PALACE RESORT,

      Defendant.

---------------------------------------

DEPOSITION OF GREGORY PEREZ


Taken on behalf of the EEOC at Kessner, Duca, Umebayashi

Bain & Matsunaga, 220 S. King St., 19th Floor, Honolulu,

Hawaii 96813, commencing at 9:04 a.m., Thursday, March

8, 2007, pursuant to Notice.

BEFORE:   BARBARA ACOBA, CSR No. 412, RPR

       Notary Public, State of Hawaii

APPEARANCES:

For PLAINTIFF EEOC:

GREGORY McCLINTON, Esq.
U.S. EEOC
255 E. Temple St., Suite 4th Floor
Los Angeles, California 90012-3334

WILFREDO TUNGOL, Esq.
U.S. EEOC
Prince Kuhio Federal Bldg.
300 Ala Moana Blvd., Rm 7-127
Honolulu, Hawaii 96813

For PLAINTIFF-INTERVENORS:

PHILLIP TORRES, Esq.
TEKER TORRES & TEKER, P.C.
130 Aspinal Ave., Suite 2A
Hagatna, Guam 96910

For DEFENDANT LEO PALACE RESORT:

TIM ROBERTS, Esq.
DOOLEY ROBERTS & FOWLER
Orlean Pacific Plaza
865 S. Marine Corps. Dr., Suite 201
Tamuning, Guam 96913

INDEX

EXAMINATION BY:                              PAGE
MR. McCLINTON.............................4
MR. TORRES................................65
MR. ROBERTS...............................81
MR. MCCLINTON............................121
MR. TORRES...............................122

EXHIBITS

NO.    DESCRIPTION                  PAGE
1    Employee handbook...............81
2    Griffin report..................87
3    June 13, 2004 memo to Paulino
     from Perez, telephone policy...106
A    Front office work schedule......66
B    Page 3, Dec. 3, 2004 document...69

GREGORY PEREZ
called as a witness at the instance of the Plaintiff
being first duly sworn to tell the truth, the whole
truth, and nothing but the truth testified as follows:

EXAMINATION

BY MR. McCLINTON:

Q.   Mr. Perez --

MR. McCLINTON:  Why don't everybody introduce
themselves for the record.

MR. ROBERTS:  I'm Tim Roberts, counsel for Leo
Palace Resort.

MR. TORRES:  I'm Phil Torres, counsel for the
Plaintiff Intervenors.

MR. TUNGOL:  I'm Wilfredo Tungol, counsel
for -- co-counsel for EEOC.

BY MR. McCLINTON:

Q.   Mr. Perez, I introduced myself to you earlier.
My name is Greg McClinton.  I'm an attorney for the
United States Equal Employment Opportunity Commission
and we're here today to take your deposition in the case
of EEOC versus Leo Palace Resorts.  The EEOC, or the
Government, is the Plaintiff in this case.  And we're
here to get your best testimony regarding events
surrounding sexual harassment allegations that occurred
around the 2003-2004 timeframe.

The questions that I ask you, that I'm going to
be asking you, I would ask that regarding the relevant
period, would be from 2003 to, let's say, December of
2000 -- we'll say till December of 2005, unless I give
you a different timeframe; do you understand that?

A.   Sure.

Q.   Now, I'd asked you earlier if you've had your
deposition taken before and I believe you said no; is
that correct?

A.   That's correct.

Q.   And my understanding is you're unrepresented
today; is that also correct?

A.   That's correct.

Q.   Then let me go over some ground rules for a
deposition.  Again, you were sworn under oath by the
court reporter and your testimony here is no different
than if you were testifying in a court of law.  The only
difference is is that we don't have a judge present.
Mr. Roberts, who represents Leo Palace Resorts, is
allowed to make objections and the objections are only
for the record.  So I would ask that when I ask you a
question, that you take a second or two before you
answer the question, allow time for Mr. Roberts to
express a objection, if he has one, and then answer the
question; do you understand that?

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com
108173d1-61e7-42a9-b634-0260dbf926e1

Case 1:06-cv-00028   Document 127   Filed 11/19/2007   Page 17 of 67

1  Palace Resort Employee Handbook.
2       Did it just have the logo on it or did it have
3  employee handbook on it?
4     A.  I remember the logo, and I remember seeing
5  employee handbook printed on it.
6     Q.  But you were never actually given one of these;
7  is that correct?
8     A.  No.  That's correct.
9     Q.  And was there any requirement during the time
10 that you were there that you were to read that list or
11 that stack of documents that had the logo on it that
12 said employee handbook?
13    A.  If I was required, I wasn't made aware of it.
14    Q.  Okay.  And do you know if any of the other
15 employees were required to read that stack of documents
16 that had the logo on it that said employee handbook?
17    A.  I'm not aware of it.
18    Q.  And by the way, if you need a break, just let
19 me know.  I didn't tell you that when I started, but
20 this isn't a marathon, so if you need a break, just say
21 so.
22       Now, I had asked you some -- well, you actually
23 testified regarding some complaints by Ms. Villanueva.
24 Did she ever describe to you an incident where
25 Ms. Camacho was -- supposedly humped her in a sexual

1  way?
2     A.  That's basically the incident that occurred.
3  It was -- yeah.  The incident that originally set this
4  off was she placed her hands on her butt and simulated
5  sex.
6     Q.  And is that where kind of the slapping incident
7  kind of came in?
8     A.  Well, I guess initially she used both hands or
9  something.
10    Q.  I gotcha.  Now, you also -- I asked you about
11 Ms. Taimanglo and you said you knew her.  She was a
12 front desk supervisor; is that correct?
13    A.  Yes.
14    Q.  And did she manage Ms. Camacho?  If you know.
15    A.  Supervise, yes.
16    Q.  And did Ms. Taimanglo ever talk to you about
17 any complaints that she may have had about Ms. Camacho's
18 sexual advances toward her?
19    A.  Yes.
20    Q.  And did Ms. Camacho ever tell you that -- I'm
21 sorry, Ms. Taimanglo, did she ever tell you that
22 Ms. Camacho felt her breasts?
23    A.  I don't recall.
24    Q.  Did she ever tell you that Ms. Camacho, that
25 she used to make this sexual slurping noise to her?

1     A.  I don't recall.
2     Q.  Did she ever tell you that Ms. Camacho had
3  rolled up some paper towels into the shape of a penis
4  and put it in her crotch area?
5        MR. ROBERTS:  Objection.  Leading.
6        THE WITNESS:  No.
7  BY MR. McCLINTON:
8     Q.  Is it no or you don't recall?
9     A.  She never told me about that.
10    Q.  Okay.  And what is it that Ms. Taimanglo, what
11 is it that she did tell you?
12    A.  Roughly her behavior with the customers were of
13 a sexual nature, especially one incident, and that the
14 other girls were complaining about her, about her
15 aggressiveness toward them.
16    Q.  And when you say "aggressiveness toward them,"
17 are you referring to sexual aggressiveness toward them?
18    A.  Yes.
19    Q.  And when you say the other girls, what other
20 girls are you referring to?
21    A.  All the girls at the front desk, specifically
22 Vivienne and Jennifer.  There was another young lady.
23    Q.  That's Jennifer Holbrook?
24    A.  Jennifer Holbrook.  And there was another young
25 lady there, but she went into the military.  I can't

1  remember her name.
2     Q.  Did Ms. Taimanglo, did she ever tell you that
3  she -- whether or not she had ever counselled
4  Ms. Camacho regarding her -- this aggressive sexual
5  behavior toward these other desk clerks?
6     A.  Yes.
7        MR. ROBERTS:  Objection.  Leading.
8  BY MR. McCLINTON:
9     Q.  I'm sorry, and your answer?
10    A.  Yes.
11    Q.  Did she tell you how many times she counselled
12 her?
13    A.  Numerous.  I remember the word numerous.
14    Q.  And did she ever tell you what Ms. Camacho's
15 response was?
16    A.  In one ear, out the other.
17    Q.  And do you know if Ms. Taimanglo ever reported
18 Ms. Camacho's inappropriate sexual behavior to
19 Ms. Paulino?
20    A.  She told me she did see May about it.
21       MR. ROBERTS:  Objection.  Hearsay.
22 BY MR. McCLINTON:
23    Q.  And did she tell you what Ms. Paulino's
24 response was?
25    A.  No.  Not -- I'm sorry.  I don't recall.

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com
108173d1-61e7-42a9-b634-0260dbf926e1
Case 1:06-cv-00028   Document 127   Filed 11/19/2007   Page 18 of 67

# Exhibit 3

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                Plaintiff,<br><br>    vs.<br><br>LEO PALACE RESORT,<br><br>              Defendant.<br>JENNIFER HOLBROOK,<br>VIVIENE VILLANUEVA and<br>ROSEMARIE TAIMANGLO,<br><br>    Plaintiff-Intervenors,<br><br>    vs.<br><br>MDI GUAM CORPORATION dba LEO<br>PALACE RESORT MANENGGON HILLS<br>and DOES 1 through 10,<br><br>        Defendants. | CASE NO. 1:06-CV-00028<br><br>◻ **COPY** |

### *DEPOSITION OF ROSEMARIE TAIMANGLO*

*Taken on Behalf of the Defendant*


BE IT REMEMBERED That, pursuant to the Guam Rules of Civil Procedure, the deposition of Rosemarie Taimanglo was taken before Veronica F. Reilly, Certified Shorthand Reporter, on Tuesday, the 20th day of March 2007, at 9:00 a.m. in the Law Offices of Dooley Roberts & Fowler, 865 South Marine Corps Drive, Suite 201, Orlean Pacific Plaza, Tamuning, Guam.

Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter
Tel: 671.734.1041 * Fax: 671.734.1045
Email: veronica.reilly@hotmail.com

Case 1:06-cv-00028   Document 127   Filed 11/9/2007   Page 20 of 67

APPEARANCES


Appearing on behalf of the Plaintiff-Intervenors:

        TEKER TORRES & TEKER
        Suite 2A
        130 Aspinall Avenue
        Hagatna, Guam 96910
        By:  Mr. Philip Torres, Esq.
        Phone:  671.477.9891


Appearing on behalf of the Defendant:

        DOOLEY ROBERTS & FOWLER
        Suite 201, Orlean Pacific Plaza
        865 S. Marine Drive
        Tamuning, Guam 96913
        By:  Mr. Tim Roberts, Esq.
        Phone:  671.646.1222


Appearing on behalf of the Plaintiff:

        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        333 S. Las Vegas Boulevard
        Suite 300
        Las Vegas, Nevada 89101
        By:  Ms. Angela D. Morrison, Esq.
        Phone:  702.388.5072

                ALSO PRESENT


Viviene Villanueva, Plaintiff

May Paulino, Leo Palace

Nichiro Niikura, Leo Palace

Veronica F. Reilly, CSR-RPR
Certified Shorthand Reporter
Tel: 671.734.1041 * Fax: 671.734.1045
Email: veronica_reilly@hotmail.com

Case 1:06-cv-00028   Document 127   Filed 11/19/2007   Page 21 of 67

1   too.

2       Q.    So you had a concern about her actual job

3   performance aside from the matters of a sexual nature?

4       A.    It's mostly her sexual behavior, sir.

5       Q.    But that's not my question.  As Christine's

6   supervisor, you thought she was a lousy employee, right?

7       A.    She slacks off.

8       Q.    On the job?

9       A.    Yes, sir.

10      Q.    She wasn't doing her job right, you felt?

11      A.    Yes, sir.

12      Q.    And that was one of the reasons that you wrote what

13  you wrote in this exhibit, right?

14      A.    Yes.

15      Q.    When you spoke to May Paulino on July 1 regarding

16  Christine Camacho, is that about her sexual behavior?  Is

17  that what you talked about with May, sexual behavior?

18      A.    Yes, sir.

19      Q.    Is that the first time you ever spoke with May

20  Paulino about it?

21      A.    Yes, sir.

22      Q.    What did you say to May?

23      A.    I told her on July 1st that Christina had sexually

24  humped Viviene and she acknowledged that she knows about it

25  because of Greg's letter of concern, complaint.

1    Q.    Yeah, what you know.

2    A.    I actually spoke to Suzuki the ending of June.

3    Q.    And what did you tell Suzuki?

4    A.    About Christina sexually harassing the employees.

5    Q.    What did you tell him specifically?

6    A.    I told him about Viviene's incident.

7    Q.    The humping incident?

8    A.    Yes, sir.  And with Christina using sexual language

9    to employees, including myself, and that he -- he also had

10   witnessed Christina Camacho putting paper towel in her pants

11   to shape it like a penis.  He had witnessed that.

12   Q.    How do you know?

13   A.    Because I was there and he actually got mad at her.

14   Q.    Suzuki did?

15   A.    Yes.

16   Q.    How did he manifest his anger?

17   A.    He went to her and he gestured his hand like -- like

18   stop it.  He called her *baka*.

19   Q.    What's *baka* mean?

20   A.    Stupid in Japanese.  Then I remember Christina left

21   to go to the rest room and I guess remove the paper towels

22   from her pants.

23   Q.    Okay.  You speak a little Japanese, right?

24   A.    Yes.

25   Q.    You were learning on the job, I think?

1   know, place my hand on her breast.  I pulled it away and I

2   said, you better stop that, and then same thing, she would be

3   laughing.

4       Q.   And the first time that she did this, did you report

5   it to management?

6       A.   I had report it to Suzuki, this is ending of

7   sometime in June, ending of June.

8       Q.   Did you ever --

9       A.   The same time when I asked for the approval, if I

10  can go see May and report the incident to May.

11      Q.   Tell me about this conversation.  What happened in

12  this first conversation with Mr. Suzuki with Christine

13  Camacho?

14           MS. MORRISON:  Objection; misstates her

15  testimony.

16  BY MR. ROBERTS:  (Continuing)

17      Q.   You were describing a conversation you had with

18  Mr. Suzuki about going to May?

19      A.   Yeah.

20      Q.   When did this conversation take place?

21      A.   Ending of June.

22      Q.   Had you spoken with Mr. Suzuki about Ms. Camacho's

23  conduct prior to the ending of June meeting with Mr. Suzuki?

24      A.   I think I spoke to him once in June.  Once.

25      Q.   Once before -- well, all right.  On this one

1  occasion in June that you spoke to Mr. Suzuki, what did you

2  talk about with him?

3      A.    I told him that Christina is not only harassing the

4  employees but also our hotel guests, so I asked him if I can

5  go -- have the permission to go see May and report it to May.

6      Q.    What did he tell you?

7      A.    He said that I could go and talk to May, report it

8  to May about Christina's sexual behavior at the front desk.

9      Q.    And did you tell Suzuki that's what you were going

10 to do?

11     A.    Yes.

12     Q.    Was Greg Perez with you in this conversation?

13     A.    No.

14     Q.    So what did you do, if anything, as a result of this

15 conversation with Mr. Suzuki?

16     A.    I went to see May. I called her first if I could

17 talk to her.

18     Q.    What did she say to you?

19     A.    Yes, that I can come down and talk to her.

20     Q.    When you say down, that would mean --

21     A.    Downstairs to her office.

22     Q.    Yeah. You'd go down the lobby, down the stairs at

23 end of the lobby, right?

24     A.    No, you take the back, there's an elevator in the

25 back.

1     Q.   Behind the front desk?

2     A.   Yes.

3     Q.   How many feet is it to the elevator from the front

4  desk?

5     A.   Or we can take the staircase going down.  It's much

6  faster.  Do you want me to explain.

7     Q.   What's the quickest way to get to May's office from

8  the front desk?

9     A.   From the staircase, the staircase going toward the

10  Human Resources office.

11     Q.   How long would it take to get to her office?

12     A.   Less than five minutes about, less than five

13  minutes.

14     Q.   Did May ever come up and say hi to the front desk

15  clerks while you were working there, after the hotel opened?

16     A.   I don't recall.

17     Q.   Well, okay, anyway, May said, yeah, come on down.

18  So did you go down to her office and talk to her?

19     A.   Yes.

20     Q.   And this is in late June or are we on --

21     A.   July.

22     Q.   July 1?

23     A.   July 1st, yes.

24     Q.   And what did you tell her?

25     A.   I told her that -- about Christina's sexual behavior

 1   regarding Viviene's incident and she had told me she --

 2        Q.   Wait.  When you say she had told me?

 3        A.   May had told me that she is aware of it --

 4        Q.   I'm sorry.  I'm confused on the word had.  What did

 5   May tell you at this meeting?

 6        A.   On July 1st?

 7        Q.   Yeah.

 8        A.   May had told me that she is aware of Viviene's

 9   incident because Greg's letter of complaint.

10        Q.   When you say May had told me, you don't mean May had

11   told you before July 1, you mean May told you on July 1?

12        A.   Yes, on July 1.

13        Q.   Okay.  What else did she say?

14        A.   Then I told her about other incidents that had

15   happened on June.

16        Q.   Did May say she was aware of those incidents as

17   well?

18        A.   No.

19        Q.   So you're saying that May told you she was aware of

20   the Viviene Villanueva incident?

21        A.   Yes.

22        Q.   And what was that incident again?

23        A.   About Christina Camacho sexually humping Viviene.

24        Q.   When you say humping, I know this is embarrassing to

25   talk about, but when you say humping, you mean --

1    A.    Riding her.

2    Q.    Simulating or grinding, right?

3    A.    Yes.

4    Q.    And so you told May that there were other incidents

5 as well; correct?

6    A.    Yes.

7    Q.    What incidents did you mention?

8    A.    About Christina grabbing Jennifer's hand to try to

9 put it on her breast and it also happened to me and also the

10 incident with the hotel guests, when they came to check out

11 at the front desk and what Christina had said to our hotel

12 guests when they checked out.

13    Q.    What was that?

14    A.    There was a box which the Bridal Department had

15 given the front desk to give to the hotel guest when they

16 check out.  It was in a box, it's a candle.  And when

17 Christina had hand over the candle to the -- the box to the

18 hotel guest, the customer had asked *nani*, meaning what's

19 this, and Christina said, oh, it's a vibrator and the

20 customer was -- they understood because they were shocked,

21 then they --

22    Q.    How do you know that?  How do you know the -- how do

23 you know the Japanese guest -- The customer was Japanese?

24    A.    Yes.

25    Q.    How do you know the guest spoke English?

1    A.    Because they repeated it and then when we --

2    Q.    In English?

3    A.    Yes.  And then I -- because I was there and I was

4    the supervisor, so what I did is I said, I'm sorry, it's a

5    candle, and Christina at the same time kept laughing about it

6    and then I said, I'm really sorry, it's your candle from your

7    wedding.

8    Q.    In Japanese or in English?

9    A.    In English.

10   Q.    And did the guest respond to you?

11   A.    Yes, and they opened the box actually in front of

12   us.  And at the time, I was already worried because hotel

13   guests don't really complain when they're in a hotel.  They

14   don't complain until they get back home and I was scared

15   because I'm working at that time and, you know, most likely

16   the guest will complain, so that's why I also reported that

17   to May and also Mr. Ijima.

18   Q.    We've heard before this incident but I'd always

19   understood that the candle was out of the box when the

20   comment was made.  The candle was still in the box?

21   A.    It was still in the box.

22   Q.    And so you told this to May on this July 1 meeting?

23   A.    Yes.

24   Q.    And I hate to get away from the July 1 meeting, so

25   don't forget about it.  When did you tell Ijima about the

1  vibrator and candle-in-the-box incident?

2     A.    On June.  On June, before I went down to see May.

3     Q.    In June?

4     A.    Yes.

5     Q.    Beginning of June?  Middle of June?  Late June?

6     A.    I don't remember.

7     Q.    Did Ijima respond to your comment in any way?

8     A.    Yes.

9     Q.    What did he say?

10    A.    At first he said -- I guess he said what, he asked

11  me what, what did she say?  I guess he was taken by surprise

12  what I had said, then I repeated myself, then he started to

13  laugh and he shook his head and he was laughing also.

14    Q.    Did he say anything other than what did she say?

15    A.    He called her, in Japanese, *baka*.

16    Q.    Did he say anything else to you?

17    A.    That's all I remember.

18    Q.    What else did you tell May on this meeting of July

19  1?

20    A.    That's all I can remember.

21    Q.    Okay.  Have you ever had a conversation with

22  Mr. Suzuki about Ms. Camacho?

23    A.    After I spoke to May in July?

24    Q.    I'll strike the question.  Withdraw the question.

25  After July 1, what's the next incident of sexual harassment

1   you on August 10 at 2:20 and then again on August 11 at 11:25

2   in the morning.  I think that you looked at this during one

3   of the earlier depositions last week.

4       A.   Yes.

5       Q.   Did you have a chance to read it or were you just

6   looking at it to pass the time in the depo?

7       A.   Yeah, just looked, briefly read it.  But I didn't --

8       Q.   All right.  Just to speed things up, May interviewed

9   you on the 10th and 11th of August, right, about Christine

10  Camacho?

11      A.   Yes.

12      Q.   And they fired Christine on the 13th of August;

13  correct?

14      A.   Yes.

15      Q.   Did Christine Camacho joke around a lot on the job?

16      A.   Yes, she always joked.

17      Q.   And did she sometimes make jokes of a sexual nature?

18      A.   Yes.

19      Q.   And did she sometimes make jokes of a nonsexual

20  nature?

21      A.   Yes.

22      Q.   Did you ever laugh at any of her jokes?

23           MS. MORRISON:  Objection; vague.

24           THE WITNESS:  Nonsexual jokes, yes.

25  BY MR. ROBERTS: (Continuing)

1    Q.   You never laughed at a joke that was sexual in

2  nature made by Christine Camacho?

3    A.   No.

4    Q.   Did you laugh at every single one of her nonsexual

5  jokes?

6    A.   I don't remember.

7    Q.   Was she a funny person?

8    A.   Funny, sometimes.

9    Q.   Was she a nice person?

10   A.   What do you mean by nice?

11         MR. TORRES:  Do you like Mr. Roberts?

12         MR. ROBERTS:  I was looking for someone other

13  than me.

14  BY MR. ROBERTS: (Continuing)

15   Q.   Is Viviene a nice person?

16   A.   Yes.

17   Q.   Is Phil Torres a nice person?

18   A.   Yes.

19   Q.   Was Christine a nice person?

20   A.   No.  Where --

21   Q.   Well, go ahead.  If you want to answer that, go

22  ahead.

23   A.   No.

24   Q.   Was she usually a nice person?

25   A.   No.  I would say no.  She didn't care how you felt.

1    A.    I'm sorry, can you repeat the question, sir?  I'm

2 sorry.

3    Q.    Did you ever go directly to Mr. Suzuki to complain

4 about Christina Camacho?

5    A.    Yes.

6    Q.    When?

7    A.    June 2004.

8    Q.    About when in June?

9    A.    About ending of June already.

10    Q.    What did you say?

11    A.    I told them about Viviene's incident, also, that

12 she's been harassing other employees, including myself, and

13 the incident about the candle and the -- he gave me approval

14 to go and report it to May.

15    Q.    Did he say anything else?

16    A.    That's all I can remember.

17    Q.    After this conversation, did you ever have another

18 conversation with Mr. Suzuki about Christine Camacho?

19    A.    Yes.

20    Q.    When was this next conversation?

21    A.    I spoke to him at least once every week on July

22 because she was still sexually harassing us and I also asked,

23 you know, when she'll be terminated, when are we going to let

24 her go, then in one of the conversation that I have in

25 July --

# Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>LEO PALACE RESORT,<br><br>Defendant. | ) CASE NO. 1:06-CV-00028<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| JENNIFER HOLBROOK, VIVIENE VILLANUEVA, and ROSEMARIE TAIMANGLO,<br><br>Plaintiff-Intervenors,<br><br>vs.<br><br>LEO PALACE RESORT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEPOSITION TRANSCRIPT

OF

# SATOSHI SUZUKI

March 14, 2007

PREPARED BY:     GEORGE B. CASTRO
**DEPO RESOURCES**
#49 Anacoco Lane
Nimitz Hill Estates
Piti, Guam 96915
Tel:(671)688-**DEPO** * Fax:(671)472-3094

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) CASE NO. 1:06-CV-00028 |
| Plaintiff, | ) |
| vs. | ) |
| LEO PALACE RESORT, | ) |
| Defendant. | ) |

JENNIFER HOLBROOK. VIVIENE
VILLANUEVA, and ROSEMARIE
TAIMANGLO,

      Plaintiff-Intervenors,

      vs.

LEO PALACE RESORT,

      Defendant.

Deposition of **Satoshi Suzuki**, taken on Wednesday, March 14, 2007, at the hour of 9:02 a.m., at the U.S. Attorney's Office, District of Guam, Sirena Plaza, 108 Hernan Cortez Avenue, Hagatna, Guam before George B. Castro, pursuant to Notice. That at said time and place there transpired the following:

## APPEARANCES

For the Plaintiff

U.S. EQUAL OPPORTUNITY
COMMISSION
By: **Gregory L. McClinton, Esq.**

For the Plaintiff-Intervenors

TEKER, TORRES & TEKER, P.C.
By: **Phillip Torres, Esq.**

For the Defendant

DOOLEY, ROBERTS & FOWLER, LLP
By: **Tim Roberts, Esq.**

Also present

Morihiro Arasaki (Interpreter)
Michiro Niikura
Viviene Villanueva
Rosemarie Taimanglo

1 BY MR. McCLINTON:

2     Q    You could answer.

3     A    I knew, because Rose had reporting

4 once.

5     Q    Okay.

6     A    Since I have spoken to her once, I

7 wasn't sure it was continuing on.

8     Q    Okay. And when was it that Rose told

9 you that she was being sexually harassed by Ms.

10 Camacho?

11       INTERPRETER: One more time. Rose --

12     Q    That's Rose Tamayo.

13       MR. TORRES: Taimanglo.

14       MR. McCLINTON: Taimanglo.

15     A    Taimanglo.

16       MR. McCLINTON: Taimanglo.

17       INTERPRETER: Taimanglo had told that

18 she's being harassed?

19       MR. McCLINTON: That's correct.

20     A    I believe it at the end of June I heard

21 -- had the report from Rose and Greg and

22 somewhere in end of June, toward the end of

23 June.

24 BY MR. McCLINTON:

25     Q    Okay. And when you heard from Rose and

1     Q    Okay.

2     A    -- that's why she was fired.

3     Q    Right. And you knew as early as June

4 of 2004 that Rose had complained that she was

5 being sexually harassed by Ms. Camacho. Isn't

6 that true?

7     A    Yes, I heard one report from end of

8 June. Yes.

9     Q    All right. And in fact, you didn't

10 hear, you knew because Rose told you. Isn't

11 that true? I said it's not that you heard, you

12 knew because Rose told you?

13     A    Yes.

14     Q    Okay. Now after Ms. Camacho had been

15 fired, were you aware of an incident where Ms.

16 Camacho had threatened these three women while

17 they were at work at Leo Palace?

18     A    No, I have not heard. I don't

19 remember.

20     Q    Did Mr. Iijima ever tell you about an

21 incident where security had to be called

22 because Ms. Camacho had threatened these three

23 women on or around August 15 2004?

24     A    I believe there's some kind of report

25 but I don't remember the details.

1    Q    Do you remember that Rose came to you,

2  went to you, and said she wanted to go to HR to

3  complain about Christina Camacho on sexual

4  harassment?

5    A    Yes, I do.

6    Q    And you remember telling her it was

7  okay with you for her to go to HR, to May?

8    A    Yes, I did.

9    Q    Okay.  You remember Greg coming to you

10 even before that time saying that he had heard

11 a complaint about Christina Camacho, and did he

12 want to go and talk to HR about it?

13    A    I'm not sure about that.

14    Q    Okay.  What you remember telling Greg,

15 it was okay for him to go and talk to May

16 Paulino about his concerns?

17    A    My memory does not agree but if they

18 ask me I could have done a thing to go to HR.

19    Q    Okay.  And as manager, you felt that HR

20 would deal with any problems that they were

21 told about?

22    A    As they have talked today, HR director,

23 I think HR would handle the problems.

24    Q    I have nothing further.

25    MR. TORRES:  Thank you.

# Exhibit 5

1    IN THE DISTRICT COURT OF GUAM

2

U.S. EQUAL EMPLOYMENT          )    CASE NO. 1:06-CV-00028
3  OPPORTUNITY COMMISSION,       )
                                 )
4            Plaintiff,          )
                                 )
5        vs.                     )
                                 )        DEPOSITION OF
6  LEO PALACE RESORT,            )     JENNIFER HOLBROOK
                                 )        SATURDAY,
7                                )      MARCH 17, 2007
            Defendant.           )
8  _____)
   JENNIFER HOLBROOK,            )
9  VIVIENE VILLANUEVA and        )
   ROSEMARIE TAIMANGLO,          )
10                               )
         Plaintiff-Intervenors,  )
11                               )
        vs.                      )
12                               )
   MDI GUAM CORPORATION dba LEO  )
13 PALACE RESORT MANENGGON HILLS )
   and DOES 1 through 10,        )
14                               )
            Defendants.          )
15 _____)

16
         The deposition of Jennifer Holbrook, called by
17 the Defendants, pursuant to Notice and pursuant to the
   Guam Rules of Civil Procedure, taken at the offices of
18 Dooley Roberts & Fowler, LLP, Suite 201, Orlean Pacific
   Plaza, 865 South Marine Corps Drive, Tamuning, Guam
19 96913, on Saturday, March 17, 2007, at the hour of 7
   o'clock a.m.

20
         That at said time and place, there transpired the
21 following:

22

23
                Cecilia F. Flores
24       Freelance Stenotype Reporter
              Tel: (671) 632-0727
25            Fax: (671) 632-5353
         Email: chilangflores@hotmail.com

COPY

1                    A P P E A R A N C E S:

2

3   For Plaintiff          Angela D. Morrison
                           U.S. EQUAL EMPLOYMENT OPPORTUNITY
4                          COMMISSION
                           333 S. Las Vegas Boulevard, Suite 300
5                          Las Vegas, Nevada 89101

6

7   For Plaintiff-
       Intervenors         Phillip Torres, Esq.
                           TEKER TORRES & TEKER, P.C.
8                          130 Aspinall Avenue, Suite 2A
                           Hagatna, Guam 96910

9

10  For Defendant
       LeoPalace           Tim Roberts, Esq.
11                         DOOLEY ROBERTS & FOWLER, LLP
                           Suite 201, Orlean Pacific Plaza
12                         865 South Marine Corps Drive
                           Tamuning, Guam 96913

13

14  Also Present:          Michiro Niikura, Director, LeoPalace
                                     Administration
15                         May Paulino, HR Manager, LeoPalace
                           Viviene Villanueva, Plaintiff-Intervenor

16

17

18

19

20

21

22

23

24

25

1    to do it. Tell me exactly what she did.

2       A.      She tried to go under my skirt to see if I was

3    wet, she tried to reach for me in my genital area.

4       Q.      Okay. Did she actually touch your genital

5    area?

6       A.      No.

7       Q.      Why not?

8       A.      Because I pushed her down with my hand and I

9    said, "Stop!"

10      Q.      Did Viviene see this?

11      A.      I believe so.

12      Q.      Did Rose see this?

13      A.      I believe so.

14      Q.      So what did Christine do when you pushed her

15   hand away and said stop?

16      A.      Christina laughed at it and I ran ahead of the

17   group.

18      Q.      Ran?

19      A.      Well, I went further ahead of the group.

20      Q.      You walked a little faster, right?

21      A.      Yes.

22      Q.      And so did you have lunch with Christina and

23   Rose and Viviene that day?

24      A.      Yes.

25      Q.      Anything unusual happen during the lunch that

1    *A.*    Yes, there's two doors at the front.

2    *Q.*    One on each side?

3    *A.*    Yes.

4    *Q.*    So what happened?

5    *A.*    I was working on the computer and all I

6    remember -- what I remember is working on the computer,

7    doing some work so I guess getting ready for check-out

8    time, all I get is this big slap, bam! right on me.

9              MR. ROBERTS: The record should indicate

10   the witness has clapped her hands.

11   *A.*    And I yelled.

12   *Q.*    What did you say?

13   *A.*    I reacted by screaming. My face was red, I

14   could feel my -- the anger, my ears were tipped red

15   also.

16   *Q.*    You had this reaction before you knew who did

17   that to you?

18   *A.*    I knew who -- I knew Christina slapped me

19   because I was --

20   *Q.*    How? I mean, did you see her coming?

21   *A.*    No, I didn't see her coming.

22   *Q.*    Okay.

23   *A.*    She was behind me, she slapped me on my butt, I

24   turned around really quickly, I felt red, I felt angry.

25   I told her -- I screamed really loud and I said, "What

1  are you" -- I don't remember, I believe I said, "What

2  are you doing?"  And she giggled and she said, "I'm

3  sorry.  I can't help myself."  I said, "No, that wasn't

4  nice at all."  And I told her, I said, "Don't you ever

5  do that again to anybody.  And if I find out that you do

6  that to anybody else, I will report you in."  And Hong

7  came out also.

8      Q.    But he came out after -- did he come out while

9  you were screaming?

10      A.    Right after I was done getting mad with

11  Christina, and I told her.

12      Q.    After you had got done telling off Christina?

13      A.    Yes.

14      Q.    So Mr. Hong didn't see what had happened?

15      A.    He asked me what happened.

16      Q.    What did you tell him?

17      A.    I told him, "Christina just came up to me and

18  hit me on my butt really hard, and she laughed about

19  it."

20      Q.    Who's Mr. Hong?

21      A.    Mr. Hong, I believe, was the sales supervisor.

22      Q.    Sales supervisor?

23      A.    I believe so.

24      Q.    And the sales supervisor was in charge of

25  coordinating J Pax from Japan?

1   why I count three days is because Wednesday, Thursday,

2   Friday.

3       *Q.*     Okay.

4               THE WITNESS:  May I take a break?

5               MR. ROBERTS:  Yes, please.  Let us take a

6   break.

7                               (Recess was taken.)

8                               (Back on the record.)

9               MR. ROBERTS:  Okay, we're back on the

10  record, we had just taken a short break.

11      *Q.*     (By Mr. Roberts)  Jennifer, did you ever make

12  any jokes that could be considered of a sexual nature

13  towards Christine?

14      *A.*     No.

15      *Q.*     Did you ever hear any other employees make any

16  jokes that could be considered of a sexual nature to

17  Christine?  For example, Rose or Viviene.

18      *A.*     I don't remember.

19      *Q.*     Did you ever laugh at any jokes that Christine

20  made?

21      *A.*     What kind of jokes?

22      *Q.*     Jokes of a sexual nature?

23      *A.*     No.

24      *Q.*     Did you ever hear Rose or Viviene laugh at

25  anything Christine might have said of a sexual nature?

1    *A.*    I don't remember.

2    *Q.*    So if Christine Camacho testified under oath

3    last Thursday that you and Rose and Viviene would laugh

4    when she made jokes of a sexual nature, was she lying?

5    *A.*    I did not laugh at Christina's sexual jokes.

6    If they were clean jokes, I laughed at them, but once I

7    felt that the jokes were offensive in any sexual way, I

8    didn't laugh at it I just walked away and felt

9    disgusted.

10    *Q.*    Can you remember any sexual jokes that

11    Christina made of an oral nature?

12    *A.*    No.

13    *Q.*    And I think you testified you never told Yutaka

14    Maruyama after he came onboard about any of these first

15    three incidents that we were talking about earlier,

16    right?

17    *A.*    Correct.

18    *Q.*    After this third incident where Christina

19    slapped your buttocks, did you ever tell anyone in

20    management or any supervisor that you didn't want to

21    work with Christine anymore?

22    *A.*    I believe I told Rose.

23    *Q.*    Do you remember what Rose said to you?

24    *A.*    No.

25    *Q.*    Do you remember exactly what words you said to

1                    REPORTER'S CERTIFICATE

2

3         I, Cecilia F. Flores, Freelance Stenotype

4    Reporter, hereby certify the foregoing 154 pages to be a

5    true and correct transcript of the stenographic

6    shorthand notes and audio recording taken by me in the

7    within-entitled and numbered case at the time and place

8    as set forth herein.

9         Dated at Hagatna, Guam, this 14th day of April,

10   2007.

11                        _____
                              Cecilia F. Flores

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CLERK'S CERTIFICATE

2  Superior Court Of Guam:

3       I, Cecilia F. Flores, Special Deputy Clerk,

4  Superior Court of Guam, do hereby certify that on

5  Saturday, the 17th day of March, 2007 at the hour of 7

6  o'clock a.m. there appeared before me **Jennifer Holbrook**

7  at the law offices of Dooley Roberts & Fowler, LLP,

8  Suite 201, Orlean Pacific Plaza, 865 South Marine Corps

9  Drive, Tamuning, Guam 96913, the deponent herein,

10 produced pursuant to Notice to give her deposition in

11 the within-entitled and numbered CIVIL CASE NO.

12 1:06-CV-00028; that prior to the examination the

13 deponent was by me duly sworn upon her oath; that

14 thereafter the deposition transcript was prepared by me,

15 and the Certified Original Transcript was presented to

16 Mr. Torres' office for the deponent's review,

17 corrections, if any, and execution.

18      I further certify that I am not a relative,

19 employee, attorney or counsel of any of the parties, nor

20 a relative or employee of such attorney or counsel, and

21 that I am not directly or indirectly interested in the

22 matters in controversy.

23      In testimony whereof, I have hereunto set my hand

24 and seal of Court this 14th day of April, 2007.

25 _____

# Exhibit 6

# U. S. Equal Employment Opportunity Commission

| | |
|---|---|
| Mr Yusuke Miyama<br>President<br>LEO PALACE RESORT<br>221 Lakeview Drive<br>Yona, GU 96915 | **PERSON FILING CHARGE**<br><br>**Rosemarie B. Taimanglo** |

**THIS PERSON** *(check one or both)*

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**378-2005-00176**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act        [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act      [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **18-JAN-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____
If you **DO NOT** wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| | |
|---|---|
| **Emily Mauga,**<br>**Administrative Clerk**<br>*EEOC Representative*<br>Telephone *(808) 541-3120* | **Honolulu Local Office**<br>**300 Ala Moana Blvd**<br>**Room 7-127**<br>**Honolulu, HI 96850** |

[ ] copy of charge

**CIRCUMSTANCES OF ALLEGED DISCRIMINATION**

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [X] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [X] RETALIATION   [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Dec 28, 2004 | Timothy A. Riera,<br>Director | *Sr* |

LPR 00355

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised ... ...

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

## EEOC SUPPLEMENTAL DECLARATION OF ROSEMARIE TAIMANGLO

Rosemarie Taimanglo

# REDACTED

**CHARGING PARTY'S CONTACT INFORMATION:**

Phillip Torres, Esq.
TEKER TORRES & TEKER, P.C.
Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

**RESPONDENT'S INFORMATION:**

LEO PALACE RESORT
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

RECEIVED
DEC 2 4 2004
EEOC HLO

**RESPONDENT'S CONTACT INFORMATION:**

Mr. Miyama, *President*
Yutaka Maruyama, *General Manager*
MDI GUAM CORPORATION
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

**Number of Employees:** 300+

**Earliest Date of Violation:** On or before June 7, 2004.
**Latest Date of Violation:** On or before August 13, 2004.

# STATEMENT

In May 2004, Christine Camacho was hired to work as a front desk clerk at Leo Palace Resort ("Respondent"). I was hired by Respondent on May 13, 1994 and, at all times relevant herein, I worked as a front desk supervisor.

Since June 2004, I have been subjected to verbal and physical sexual harassment by a female co-worker, Christine Camacho because of her offensive language and harassing conduct at work. At first, I handled the problem by telling her that her language and actions were unwelcomed and inappropriate in the workplace. However, she continued to behave in the same way. I was aware that a written complaint about Ms. Camacho's behavior was made to the Human Resource Office on June 23, 2004 by Greg Perez, the night supervisor because Viviene Villanueva had been "sexually assaulted" by Ms. Camacho. On July 1, 2004, I still had not heard anything from Human Resources about the complaint on Ms. Camacho. Ms. Camacho continued to act offensively so I inquired to Human Resources about what action was being taken and I also made known my own complaints about Ms. Camacho. I told Human Resources Manager, May Paulino, about the offensive and sexually explicit behavior and offensive language of Ms. Camacho which was stressing all the employees at the front desk. However, Respondent took no action to address my complaints or Greg Perez's complaint. I was told by Ms. Paulino, after she consulted with Mr. Suzuki, a front desk manager, that the company was too "short of staff" to take action against Ms. Camacho

During her employment, Ms. Camacho consistently used vulgar language and sexual references in front of me and her co-workers and, on occasion, guests of the hotel. In June, July and August, I repeatedly told Ms. Camacho that she was not to swear or act out in the workplace. Ms. Jennifer Holbrook and Ms. Villanueva, other front desk employees, also told Ms. Camacho that her

constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech or behavior around her co-workers which created a severe and pervasive hostile environment whenever she worked.

After I complained in July about the sexual harassment of Viviene Villanueva and the hostile and tense environment at the front desk wherever Christine Camacho was working, I felt I couldn't say anything more because the response I received from Ms. Paulino was that "we were short of staff and the company wouldn't let Christina go unless the Company found a replacement." Other management personnel, Mr. Ijima and Mr. Hong knew of Ms. Camacho's behavior but also looked the other way as though it wasn't their problem. I and my co-workers were left to fend for ourselves in dealing with Ms. Camacho.

On August 10, 2004, at approximately 6:30 in the morning, Ms Camacho walked up behind me and slapped me hard on the buttocks. I was extremely upset by what happened and yelled at Ms. Camacho. It was the second time I had been slapped on the buttocks by Ms. Camacho. The first time occurred a month earlier when Ms. Camacho and I were exiting one of the Company's vans that routinely transported the employees from the hotel to the parking area. The van incident was witnessed by co-employees, including Joseph Ishizaki, who still works for the Company. Thereafter, I complained again to Human Resources.

I believe I have been discriminated against because of my sex and national origin. I think the Company would have taken swift actions if the person complaining was a Japanese male. Although I worked for Respondent for ten (10) years, I felt I couldn't work there any longer because of what happened and I resigned in October.

I want this charge filed with the EEOC. I will advise the agency if I change my address or telephone number and cooperate fully with you in the processing of my charge in accordance with your procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 16th day of December, 2004.

ulotamiangho

**ROSEMARIE TAIMANGLO**

LPR 00360

# U. S. Equal Employment Opportunity Commission

1

| | PERSON FILING CHARGE |
|---|---|
| Mr Yusuke Miyama<br>President<br>LEO PALACE RESORT<br>221 Lakeview Drive<br>Yona, GU 96915 | **Jennifer T. Holbrrok** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.

**378-2005-00175**

## NOTICE OF CHARGE OF DISCRIMINATION
(See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act

[ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **18-JAN-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by ____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Emily Mauga,**
**Administrative Clerk**

EEOC Representative

Telephone: (908) 541-3120

**Honolulu Local Office**
**300 Ala Moana Blvd**
**Room 7-127**
**Honolulu, HI 96850**

Enclosure(s): Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Dec 28, 2004 | Timothy A. Riera,<br>Director | |

LPR 00361

*Enclosure with EEOC*
*Form 131 (5/01)*

# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment of, rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

## EEOC SUPPLEMENTAL DECLARATION OF JENNIFER HOLBROOK

Jennifer Holbrook

# REDACTED

**CHARGING PARTY'S CONTACT INFORMATION:**

Phillip Torres, Esq.
TEKER TORRES & TEKER, P.C.
Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

```
RECEIVED
DEC 2 4 2004
EEOC HLO
```

**RESPONDENT'S INFORMATION:**

LEO PALACE RESORT
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

**RESPONDENT'S CONTACT INFORMATION:**

Mr. Miyama, *President*
Yutaka Maruyama, *General Manager*
MDI GUAM CORPORATION
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

**Number of Employees:** 300+

**Earliest Date of Violation:** On or before June 7, 2004.
**Latest Date of Violation:** On or before August 13, 2004.

## STATEMENT

In May 2004, Christine Camacho was hired to work as a front desk clerk at Leo Palace Resort ("Respondent"). I was hired by Respondent in May 2004 and worked as a front desk clerk. We were co-workers at the front desk. During the time that we worked together, Ms. Camacho consistently used vulgar language and sexual references in front of me and other front desk co-workers and, on occasion, guests of the hotel.

Since June 2004, I have been subjected to verbal and physical sexual harassment by Christine Camacho. Ms. Camacho also engaged in sexually assaultive behavior at the workplace. In early June, Ms. Camacho grabbed my arm and raised it up to her breast. She was not fooling around and I was offended. I yanked my arm away and angrily yelled at Ms. Camacho to stop behaving that way.

On July 7, 2004, Ms. Camacho walked up behind me and slapped me across the buttocks in an extremely hard manner. I screamed and was very upset. The sound of the slap and my loud scream caused Mr. Hong, the assistant sales manager for the Company, to come out of his office behind the front desk to see what had happened. Mr. Hong asked what happened and despite being I told him what had occurred. He did nothing! After Ms. Camacho slapped me she told me, "Sorry, I just can't help myself around you."

I complained to Rosemarie Taimanglo about the harassing behavior of Ms. Camacho. She told me that she has repeatedly warned Ms. Camacho about her conduct and that the Respondent was aware. I was told that they wouldn't take any action, that we all had to deal with Christina. Whenever I worked with Christina things were extremely stressful. She consistently used foul language and wanted to relay vulgar stories about here and her gay lover. I tried to ignore her but it just became a pervasively tense time whenever we worked together.

After I complained about the sexual harassment, I was harassed and intimidated by the General Manager, Yutaka Maruyama, . Mr. Maruyama yelled at me in front of another co-worker, Rosemarie Taimanglo. Also, after I complained on August 16, 2004, my work hours were reduced from five (5) days a week to four (4) days a week.

This Declaration supplements my Claim for Sexual Harassment and my belief that I have been a victim of sexual harassment by my co-worker, Christine Camacho. The hostile environment at the front desk was severe and pervasive and even though Respondent knew of my complaints, and the complaints of others, it acted unreasonably by doing nothing to help us or to change the situation.

I want this charge filed with the EEOC. I will advise the agency if I change my address or telephone number and cooperate fully with it in the processing of my charge in accordance with its procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 16th day of December, 2004.

JENNIFER HOLBROOK

LPR 00365

# U. S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr Yusuke Miyama<br>President<br>LEO PALACE RESORT<br>221 Lakeview Drive<br>Yona, GU 96915 | **Viviene D. Villanueva** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**378-2005-00174** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act               [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act        [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **18-JAN-05** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____
If you <u>DO NOT</u> wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| Timothy A. Riera,<br>Local Office Director | Honolulu Local Office |
|---|---|
| *EEOC Representative* | 300 Ala Moana Blvd |
| Telephone: **(808) 541-3120** | Room 7-127 |
| | Honolulu, HI 96850 |

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

## See enclosed copy of charge of discrimination.

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Dec 28, 2004 | Timothy A. Riera,<br>Director | |



# INFORMATION ON CHARGES OF DISCRIMINATION

## EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

## NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

## EEOC SUPPLEMENTAL DECLARATION OF VIVIENE VILLANUEVA

Viviene Villanueva

# REDACTED

**CHARGING PARTY'S CONTACT INFORMATION:**

Phillip Torres, Esq.
TEKER TORRES & TEKER, P.C.
Suite 2A, 130 Aspinall Avenue
Hagåtña, Guam 96910
Telephone: (671) 477-9891
Facsimile: (671) 472-2601

```
_  RECEIVED  _
DEC 2 4 2004
`  EEOC HLO  ˉ
```

**RESPONDENT'S INFORMATION:**

LEO PALACE RESORT
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

**RESPONDENT'S CONTACT INFORMATION:**

Mr. Miyama, *President*
Yutaka Maruyama, *General Manager*
MDI GUAM CORPORATION
221 Lakeview Drive
Yona, Guam 96915
Telephone: (671) 471-0001
Facsimile: (671) 471-0025

**Number of Employees:** 300+

**Earliest Date of Violation:** On or before June 7, 2004.
**Latest Date of Violation:** On or before August 13, 2004.

# STATEMENT

In May 2004, Christine Camacho was hired to work as a front desk clerk at Leo Palace Resort ("Respondent"). I was hired by Respondent on June 6, 2003 and worked as a front desk clerk. We were co-workers at the front desk. During her employment Ms. Camacho consistently used vulgar language and sexual references in front of me and her co-workers and, on occasion, guests of the hotel.

From June 2004, I was subjected to verbal and physical sexual harassment by Christine Camacho. On or about June 7, 2004, while working at the front desk, I was grabbed from behind, on the right side, by Ms. Camacho who then proceeded to "sexually hump" me. I was appalled and offended and yelled loudly at Ms. Camacho and told her to stop. I immediately reported the matter to Ms. Taimanglo who had not witnessed it. Ms. Camacho then told me she was "Sorry but I just couldn't help myself." Mr. Greg Perez, the night supervisor was told of the assault on me and he prepared a report after conducting an investigation. It was given to the Human Resources Department on or about June 23, 2004

On or about July 1, 2004, I again complained to my immediate supervisor, Rosemarie Taimanglo about Ms. Camacho's behavior. The front desk area is a small area and Ms. Camacho's offensive comments and actions could not be escaped. Ms. Taimanglo followed up with the Human Resources Manager, May Paulino. However, Ms. Taimanglo later told me that Respondent would not be taking any action to address my complaint. I was very upset by Respondent's response.

After I complained about the sexual harassment and nothing was done, I felt increased stress and fear. Ms. Camacho did not temper her actions and they became severe and pervasive. All I could do was try to ignore her. Ms. Taimanglo repeatedly told Ms. Camacho that she was not to swear in the workplace. Ms. Jennifer Holbrook and I also told Ms. Camacho that her constant swearing and sexual references offended them and told her to stop. Regardless, Ms. Camacho never changed her pattern of offensive speech.

I submit this Declaration to supplement the Claims for Sexual Harassment submitted by my attorney earlier this month and I incorporate the statements therein. I believe I have been a victim of sexual harassment by my co-worker, Christine Camacho, and there was also ongoing Respondent knew of my complaints, and the complaints of others, it acted unreasonably by doing nothing to help us or change the situation between June and August.

I want this charge filed with the EEOC. I will advise if I change my address or telephone number and will cooperate fully in the processing of my charge in accordance with its procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 16th day of December, 2004.

_V. Villanueva_
**VIVIENE VILLANUEVA**